# Exhibit 14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TOWN OF OYSTER BAY,

                Plaintiff,

   -against-

NORTHROP GRUMMAN CORPORATION and THE
UNITED STATES NAVY

                Defendants.
-------------------------------------------------------------X

**CV-05 1945**

**COMPLAINT**
**JURY TRIAL DEMANDED**

Civ. No.

PLATT, J.
J. ORENSTEIN, M.J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
APR 21 2005
LONG ISLAND OFFICE

The Town of Oyster Bay (the "Town" or "Plaintiff"), by its attorneys, Rivkin Radler LLP, as and for its complaint, alleges as follows:

### NATURE OF THE COMPLAINT

1. This is an action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601, *et seq.*, and State common law to recover costs that have been and will be incurred by the Town in responding to the release or threatened release of hazardous substances at or from real property known as the Bethpage Community Park (the "Park Property"), located in Bethpage, Town of Oyster Bay, Nassau County, New York. Upon information and belief, the defendants or their predecessors in interest owned or operated the Park Property at the time hazardous substances were released at the Park Property, and\or arranged for the disposal of such hazardous substances at the Park Property. The release of hazardous substances thereby caused and continue to cause the Town to incur response costs in connection with removal and remedial actions at the Park Property under an Administrative Order issued to the Town by the New York State Department of Environmental Conservation ("DEC"), as well as other damages. In this action, the Town seeks a judgment to recover response costs incurred

to date and a declaratory judgment that defendants are liable for future response costs and damages, together with related equitable relief.

## PARTIES

2. Plaintiff is a municipal corporation, organized and existing under the laws of New York, with its principal offices located at 54 Audrey Hall, Oyster Bay, New York, 11771.

3. Plaintiff is the current owner of approximately 18 acres of real property known as the Park Property.

4. Upon information and belief, defendant Northrop Grumman Corporation, a/k/a Northrop Grumman Systems Corporation, is a corporation organized under the laws of the State of Delaware, whose principal place of business is located at 1840 Century Park East, Los Angeles, California 90067, and is successor in interest to Northrop Grumman Aircraft Engineering Corporation.

5. Upon information and belief, from approximately 1930 to 1962, Northrop Grumman Corporation, and/or its predecessors in interest, (hereinafter referred to collectively as "Grumman") was the owner, occupant, tenant, and/or operator of the Park Property and/or conducted operations on the Park Property.

6. Upon information and belief, defendant United States Navy ("Navy") is a Department of the United States Federal Government, whose principal office is located at 1322 Patterson Avenue Suite 3000, Washington Navy Yard, D.C. 20374-5066.

7. Upon information and belief, from approximately 1930 to 1962, the Navy was the owner, occupant, and/or operator of the Park Property and/or conducted operations on the Park Property.

## JURISDICTION AND VENUE

8.      Plaintiff seeks to recover costs, pursuant to CERCLA, 42 U.S.C. §§ 9601, *et seq.*, that have been incurred by the Plaintiff in responding to the release or threatened release of hazardous substances at Park Property. This Court has jurisdiction over the subject matter of this action pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 42 U.S.C. § 9613(b), which states, in pertinent part, that "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this Act, without regard to citizenship of the parties or the amount in controversy," and 28 U.S.C. § 1331.

9.      Plaintiff seeks a declaration, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. §§ 9607 and 9613, that defendants are liable for response costs to be incurred by Plaintiff in responding to the release or threatened release of hazardous substances at Park Property.

10.     Plaintiff seeks damages from Grumman under State law for negligence, strict liability, unjust enrichment/restitution and contribution, pursuant to the Court's diversity jurisdiction, 28 U.S.C. § 1332, in that the matter in controversy exceeds $75,000 and is between citizens of different states, as well as the Court's pendent jurisdiction, 28 U.S.C. § 1367, to recover costs incurred as a result of Grumman's tortious conduct.

11.     Plaintiff seeks damages from the Navy under State law for negligence, strict liability, unjust enrichment/restitution and contribution, pursuant to 28 U.S.C. § 1346, which grants exclusive jurisdiction to the district courts for civil actions on claims against the United States for money damages for injury or loss of property caused by the negligence and/or wrongful act or omission of any government employee, to recover past, present and/or future costs incurred to investigate and remediate the Park Property as a result of the Navy's tortious conduct.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that this is the district where the causes of action arose, and 42 U.S.C. §§ 9613(b) by reason of the fact that the releases and threatened releases of hazardous substances and damages therefrom occurred within this District.

13. A copy of this Complaint has been provided to the Attorney General of the United States and to the Administrator of the United States Environmental Protection Agency in accordance with section 113(l) of CERCLA, 42 U.S.C. § 9613(l).

## GENERAL ALLEGATIONS

14. Upon information and belief, during the 1930s the Navy and Grumman entered into one or more contracts to conduct operations at Grumman's Bethpage Facility, located at Hicksville Road, Bethpage, Nassau County, New York, which operations also involved use of the Park Property.

15. Upon information and belief, the Navy and Grumman conducted operations at the Park Property from approximately 1943 to 1962, including but not limited to operating the Park Property as a waste water settling pond(s), in connection with the Grumman Bethpage Facility, and as a fire training area.

16. On or about October 17, 1962, the Park Property was donated by Grumman to the Town.

17. At the time the Town took title to the Park Property, the Town did not know and had no reason to know that any hazardous substances had been disposed of on Park Property.

18. Upon information and belief, and as part of the operations conducted by defendants on Park Property, the Navy and Grumman generated, used, handled, transported, stored and/or disposed of, on Park Property, hazardous waste and hazardous substances, which included, but are not limited to, arsenic, cadmium, chromium, lead, mercury, and polychlorinated biphenyls ("PCBs").

19. As a result of the defendants' generation, use, handling, transportation, storage, and/or disposal of hazardous waste and hazardous substances on Park Property, the Park Property is contaminated.

20. In or around June 2002, Grumman issued a reported entitled "Town of Oyster Bay Bethpage Community Park Soil Sampling Program," which revealed the presence of arsenic, cadmium, chromium, lead, mercury and PCBs in the soil on the Park Property.

21. By letter dated June 11, 2002, the DEC informed Grumman that there were elevated levels of PCBs on the Park Property that required abatement.

22. By letter dated July 26, 2002, the DEC identified the Navy and Grumman as potentially responsible parties with respect to the presence of arsenic, cadmium, chromium, lead, mercury and PCBs in the soil on the Park Property.

23. On or about May 21, 2004, the Town sent a Notice of Claim, pursuant to the Federal Tort Claims Act ("FTCA"), to the Navy seeking damages to the Park Property as a result of the presence of hazardous substances on Park Property.

24. By letter dated February 2, 2005, the Navy denied the Town's claim set forth in the Notice of Claim.

25. On March 18, 2005, the DEC signed an Administrative Order on Consent with the Town that became effective March 28, 2005, and that requires and obligates the Town to develop and implement a remedial program to undertake a clean-up of Park Property because of the presence of hazardous waste and contamination at the Park Property.

26. Grumman and the Navy have refused to accept responsibility for contamination of the Park Property by hazardous substances, and have refused to cleanup the Park Property which thereby has caused a further release of hazardous substances from the Park Property.

27. As a result of the Administrative Order on Consent, the Town has expended and will continue to expend response costs in connection with the release or threatened release by Grumman and the Navy of hazardous substances and contamination at Park Property.

28. As a result of the contamination of the Park Property by Grumman and the Navy, the Town has incurred damages with respect to the Park Property, including loss of revenue and damage to the reputation and value of the Park Property, in excess of $75,000.00.

## AS AND FOR A FIRST CAUSE OF ACTION
## CERCLA § 107

29. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "28" above.

30. Each defendant is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

31. The Park Property is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

32. Arsenic, cadmium, chromium, lead, mercury, and polychlorinated biphenyls ("PCBs") are hazardous substances with the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

33. There has been a "release" of hazardous substances within the meaning of 42 U.S.C. § 9601(22) into the environment at and from the Park Property, as well as the threat of continuing releases of hazardous substances into the environmental from the Park Property.

34. Each defendant is a person who owned or operated the Park Property at the time of the release of hazardous substances at the Park Property within the meaning of 42 U.S.C. § 9607(a)(2), or is a person who by contract, agreement or otherwise, arranged for disposal or

treatment of hazardous substances at the Park Property within the meaning of 42 U.S.C. § 9607(a)(3).

35. The Town has incurred costs associated with "response," as that term is defined in sections 101(24) and (25) of CERCLA, 42 U.S.C. § 9601(24) and § 9601(25), in connection with the release or threatened release of hazardous substances by the defendants at the Park Property.

36. The costs incurred by the Town in undertaking response actions at the Park Property are necessary costs of response that were and are being incurred in a manner consistent with the national contingency plan.

37. Accordingly, defendants Grumman and the Navy are jointly and severally liable to Plaintiff pursuant to 42 U.S.C. § 9607 for all response costs, in an amount to be determined at trial, incurred by the Town in responding to the release or threatened release of hazardous substances at or from Park Property.

## AS AND FOR A SECOND CAUSE OF ACTION
## CERCLA § 113

38. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "37" above.

39. The Administrative Order on Consent that the Town entered into with the DEC in settlement of any civil action by the DEC against the Town with respect to matters covered under the Administrative Order on Consent, obligates the Town to develop and implement a remedial program to undertake response actions in connection with the release or threatened release of hazardous substances.

40. Accordingly, in the event the Town is for any reason found to be precluded from asserting a claim under 42 U.S.C. § 9607 against Grumman and/or the Navy, Grumman and/or the

Navy are liable to the Town pursuant to 42 U.S.C. § 9613(f)(1) and/or 42 U.S.C. § 9613(f)(2) for contribution of all response costs incurred, and to be incurred by Plaintiff, in connection with the Administrative Order on Consent, which are in excess of the fair and equitable amount attributable to Plaintiff's acts or omissions, in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION:
### DECLARATORY RELIEF

41. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "40" above.

42. In light of the foregoing, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. §§ 9607 and 9613, Plaintiff is entitled to a declaratory judgment holding defendants liable to Plaintiff for all response costs and damages to be incurred in connection with the release or threatened release by Grumman and the Navy of hazardous substances at the Park Property.

### AS AND FOR A FOURTH CAUSE OF ACTION:
### NEGLIGENCE

43. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "28" above.

44. Each defendant had a duty to exercise reasonable care to prevent risks to Plaintiff, human health, and the environment caused by the handling, storage, use, spillage, discharge, and/or disposal of hazardous substances at the Park Property by defendants and/or their agents, employees, contractees, tenants, and/or invitees.

45. Each defendant breached its duty to exercise reasonable care by releasing and/or permitting the release of hazardous substances at the Park Property and/or by failing to remove and/or remediate the contamination of the Park Property caused by the defendants' release of hazardous substances.

46. Each of the defendant's breach of the duty to exercise reasonable care proximately caused, and/or will proximately cause Plaintiff to incur damages and expenditures arising from the contamination of the Park Property, as well as the cost and consequences of other activities and circumstances related to contamination of the Park Property, including but not limited to diminution in property value.

47. As a result of the aforementioned negligence of the defendants, the Town has suffered and continues to suffer damages, including but not limited to the cost of investigation and cleanup of the contamination at the Park Property, as well as the cost of any consequences of, and any other activities and circumstances related to, contamination of the Park Property, including but not limited to diminution in property value, for which defendants are liable to the Town, in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

## AS AND FOR A FIFTH CAUSE OF ACTION: STRICT LIABILITY

48. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "28" and "43" through "47" above.

49. Each of the defendant's acts and omissions at the Park Property in relations to the handling, storage, use, spillage, discharge, and/or disposal of hazardous substances on the Park Property constitutes an ultrahazardous and/or abnormally dangerous activity.

50. Each of the defendant's ultrahazardous and/or abnormally dangerous activity contaminated the Park Property with hazardous substances that pose a danger to public health and safety.

51. As a result of the contamination caused by each of the defendant's ultrahazardous and/or abnormally dangerous conduct, the Town has suffered and continues to suffer damages,

including but not limited to the cost of investigation and cleanup of the contamination at the Park Property, as well as the cost of any consequences of, and any other activities and circumstances related to, contamination of the Park Property, including but not limited to diminution in property value, for which defendants are liable to the Town, in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

## AS AND FOR SIXTH CAUSE OF ACTION:
## UNJUST ENRICHMENT/RESTITUTION

52. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "28" and "43" through "51" above.

53. For all of the foregoing reasons, each defendant had and continues to have duties and obligations to the Town to investigate and abate the contamination at the Park Property.

54. To date, each defendant has refused to accept responsibility for contamination at the Park Property and have refused to perform their lawful duty or satisfy their obligations to investigate and remediate contamination at the Park Property.

55. As a result of each of the defendant's refusal to accept responsibility for contamination at the Park Property, the Town has and will expend sums to investigate and remediate contamination at the Park Property that was caused by each of the defendant's conduct in order to protect the health, safety and welfare of Town residents as well as others who use the Park Property.

56. In expending sums to investigate and remediate the Park Property, the Town has performed a duty that in law, equity and fairness ought to have been borne by each of the defendants, whose conduct caused the contamination.

57. By failing to take responsibility for their actions and instead avoiding all costs associated with the investigation and remediation of contamination at the Park Property by diverting said costs to the Town, Grumman and the Navy have been and will be unjustly enriched.

58. It is inequitable and against good conscience to permit Grumman and the Navy to retain the benefit of avoiding all costs associated with investigation and remediation of the Park Property.

59. The Town therefore demands that Grumman and the Navy make restitution to the Town for injury and damages caused by each of the defendant's failure to perform their lawful duty as set forth above, including but not limited to the cost of investigating and cleaning up contamination on the Park Property, as well as the cost of any consequences of, and any other activities and circumstances related to, contamination of the Park Property, including but not limited to diminution in property value, for which defendants are liable to the Town, in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

### AS AND FOR A SEVENTH CAUSE OF ACTION: CONTRIBUTION

60. Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "28" and "43" through "59" above.

61. Because of the failure to use proper care in generating, transporting, handling, storage, treatment, and/or disposal of hazardous substances on the Park Property by defendants and/or their agents, employees, contractees, tenants and/or invitees, the Town, through no fault of its own, has been and will lawfully be compelled to incur substantial expenses and damages to investigate and clean up the contamination caused by the activities of defendants, their agents, employees, contractees, tenants and/or invitees on the Park Property.

62. As a result, the Town is entitled to contribution from the defendants for all such expenses and damages which exceed the amount, if any, attributable to Plaintiff's own conduct.

## JURY DEMAND

63. The Town of Oyster Bay, by its attorneys, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, hereby demands a trial by jury of all issues triable of right by a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief:

(a) On the First Cause of Action, pursuant to 42 U.S.C. § 9607, a judgment holding defendants jointly and severally liable to Plaintiff for all response costs incurred by Plaintiff in connection with the release or threat of release of hazardous substances at the Park Property, plus interest.

(b) On the Second Cause of Action, pursuant to 42 U.S.C. § 9613, a judgment holding defendants liable for contribution of all response costs incurred in connection with the Administrative Order on Consent arising from the release or threat of release of hazardous substances at the Park Property, that Plaintiff may be obligated to pay in excess of the fair and equitable amount attributable to Plaintiff's acts or omissions.

(c) On the Third Cause of Action seeking declaratory relief, a judgment holding defendants liable to Plaintiff for all future response costs and damages in connection with the release or threatened release by Grumman and the Navy of hazardous substances at the Park Property.

(d) On the Fourth Cause of Action based on defendants' negligence, a judgment holding defendants liable for damages including but not limited to the cost of investigation and cleanup of the property, as well as the cost of any consequences of, any other

activities and circumstances related to, contamination of the Park Property, including but not limited to diminution in property value, in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

(e) On the Fifth Cause of Action based on strict liability for defendants' ultrahazardous and/or abnormally dangerous activities, a judgment holding defendants liable for damages including but not limited to the cost of investigation and cleanup of the Park Property, as well as the cost of any consequences of, and any other activities and circumstances related to, contamination of the Park Property, including but not limited to diminution in property value, in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

(f) On the Sixth Cause of Action for restitution based on the unjust enrichment of defendants, a judgment holding defendants liable for damages including but not limited to the cost of investigation and cleanup of the property, as well as the cost of any consequences of, and any other activities and circumstances related to, contamination of the Park Property, including but not limited to diminution in property value, in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

(g) On the Seventh Cause of Action for contribution, a judgment holding defendants liable for contribution of all expenses and damages related to contamination of the Park Property which exceed the amount, if any, attributable to Plaintiff's own conduct, in an amount to be determined at trial, but in no event less than one million dollars ($1,000,000.00).

(h) Together with fees, expenses, costs and whatever further relief this Court deems just and proper.

Dated: Uniondale, New York
April 20, 2005

By: /s/ Jay Kenigsberg
William M. Savino (WMS-5578)
Jay D. Kenigsberg (JK-1739)
Rosemarie Bruno (RB-3719)
RIVKIN RADLER LLP
Attorneys for Plaintiff
TOWN OF OYSTER BAY
926 EAB Plaza
Uniondale, NY 11556-0926
(516) 357-3000

Theodore W. Firetog (TWF-3387)
Of Counsel
111 Thomas Powell Boulevard
Farmingdale, New York 11735-2251
(516) 845-8087

1852653