# Exhibit 1

# LAWS

OF THE

# STATE OF NEW YORK

PASSED AT THE

## ONE HUNDRED AND NINETY-FOURTH SESSION

OF THE

# LEGISLATURE

## CONVENED JANUARY SIXTH AND ADJOURNED JUNE SIXTH

1971

### AT THE CITY OF ALBANY

**ALSO OTHER MATTERS REQUIRED BY LAW TO BE PUBLISHED WITH THE SESSION LAWS**

## VOLUME I



**ALBANY**
**1971**

HeinOnline  --  1970 i 1970

Case 1:12-cv-03040-KBF   Document 83-1   Filed 02/01/13   Page 3 of 48

approved by the commissioner, and conforms to minimum specifications established by him, which minimum shall not be less than the minimum established by the interstate commerce commission for buses and trucks in interstate commerce. When any such vehicle or a combination of vehicles, except an omnibus which stops for the purpose of taking on or discharging passengers, is parked or left standing on a public highway except within a city or incorporated village, during the period from one-half hour after sunset to one-half hour before sunrise, the operator of such vehicle or combination of vehicles shall cause at least one light, or reflector or lighted flare to be placed on the highway in front of such vehicle or combination of vehicles, and at least one light, reflector or lighted flare on the highway in the rear of such vehicle or combination of vehicles at a distance of approximately one hundred feet in the front of and at the rear of such vehicle or combination of vehicles, provided that if such vehicle is parked or left standing within three hundred feet of a curve, crest of hill, or other obstruction, the flare, candle, torch, lantern, or reflector in that direction shall be so placed as to afford ample warning to other highway users but in no case less than approximately one hundred feet or more than approximately three hundred feet from the stopped vehicle.

§ 3. This act shall take effect on the first day of January next succeeding the year on which it shall have become a law.

---

# CHAPTER 765

### AN ACT to amend the insurance law, in relation to prohibiting coverage against environmental pollution

Became a law June 25, 1971, with the approval of the Governor. Passed by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision thirteen of section forty-six of the insurance law, as last amended by chapter two hundred ninety-eight of the laws of nineteen hundred fifty-two, is hereby amended to read as follows:

13. "Personal injury liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, and including an obligation of the insurer to pay medical, hospital, surgical and disability benefits to injured persons, and funeral and death benefits to dependents, beneficiaries or personal representatives of persons who are killed, irrespective of legal liability of the insured, arising out of the death or injury of any person, or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service, but not

including any kind of insurance specified in paragraph fifteen. *Policies issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.*

§ 2. Subdivision fourteen of section forty-six of such law is hereby amended to read as follows:

14. "Property damage liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, arising out of the loss or destruction of, or damage to, the property of any other person, but not including any kind of insurance specified in paragraph thirteen or fifteen. *Policies issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.*

§ 3. This act shall take effect on the first day of September next succeeding the date on which it shall have become a law and shall be applicable to policies issued or renewed thereafter.

---

# CHAPTER 766

AN ACT to amend the insurance law, in relation to nuclear facilities and federal financial responsibility requirements

Became a law June 25, 1971, with the approval of the Governor. Passed on message of necessity pursuant to article III, section 14 of the Constitution by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision thirteen of section forty-six of the insurance law, as last amended by a chapter of the laws of nineteen hundred seventy-one, entitled: "An act to amend the insurance law, in relation to prohibiting coverage against environmental pollution," is hereby amended to read as follows:

EXPLANATION — Matter in *italics* is new: matter in brackets [ ] is old law to be omitted.

# Exhibit 2

# LAWS

OF THE

# STATE OF NEW YORK

PASSED AT THE

## ONE HUNDRED AND NINETY-FOURTH SESSION

OF THE

# LEGISLATURE

## CONVENED JANUARY SIXTH AND ADJOURNED JUNE SIXTH

1971

### AT THE CITY OF ALBANY

**ALSO OTHER MATTERS REQUIRED BY LAW TO BE PUBLISHED WITH THE SESSION LAWS**

## VOLUME I



**ALBANY**
**1971**

including any kind of insurance specified in paragraph fifteen. *Policies issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.*

§ 2. Subdivision fourteen of section forty-six of such law is hereby amended to read as follows:

14. "Property damage liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, arising out of the loss or destruction of, or damage to, the property of any other person, but not including any kind of insurance specified in paragraph thirteen or fifteen. *Policies issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.*

§ 3. This act shall take effect on the first day of September next succeeding the date on which it shall have become a law and shall be applicable to policies issued or renewed thereafter.

---

# CHAPTER 766

AN ACT to amend the insurance law, in relation to nuclear facilities and federal financial responsibility requirements

Became a law June 25, 1971, with the approval of the Governor. Passed on message of necessity pursuant to article III, section 14 of the Constitution by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision thirteen of section forty-six of the insurance law, as last amended by a chapter of the laws of nineteen hundred seventy-one, entitled: "An act to amend the insurance law, in relation to prohibiting coverage against environmental pollution," is hereby amended to read as follows:

EXPLANATION — Matter in *italics* is new: matter in brackets [ ] is old law to be omitted.

HeinOnline -- 1970 1967 1970

13. "Personal injury liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, and including an obligation of the insurer to pay medical, hospital, surgical and disability benefits to injured persons, and funeral and death benefits to dependents, beneficiaries or personal representatives of persons who are killed, irrespective of legal liability of the insured, arising out of the death or injury of any person, or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service, but not including any kind of insurance specified in paragraph fifteen. Policies, *except those covering nuclear facilities licensed by the atomic energy commission of the United States as meeting federal standards of radiological health and safety and nuclear facilities licensed by the state as meeting such federal standards, and except those purchased to satisfy the financial responsibility requirements of any federal law,* issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

§ 2. Subdivision fourteen of section forty-six of such law, as amended by such chapter, is hereby amended to read as follows:

14. "Property damage liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, arising out of the loss or destruction of, or damage to, the property of any other person, but not including any kind of insurance specified in paragraph thirteen or fifteen. Policies, *except those covering nuclear facilities licensed by the atomic energy commission of the United States as meeting federal standards of radiological health and safety and nuclear facilities licensed by the state as meeting such federal standards, and except those purchased to satisfy the financial responsibility requirements of any federal law,* issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

§ 3. This act shall take effect on the first day of September next succeeding the date on which it shall have become a law.

# Exhibit 3

# McKINNEY'S
# CONSOLIDATED LAWS
OF
# NEW YORK
### ANNOTATED

DIV. LIBRARY

DEC 10 1981

ROCHESTER, N.

**Book 27**

## Insurance Law
### §§ 1 to 166

## Cumulative Annual Pocket Part

*For Use In 1981-1982*

**Replacing prior pocket part in back of volume**

*Always Consult*
**Your Latest McKinney's Session Law News**

ST. PAUL, MINN.
WEST PUBLISHING CO.

COPYRIGHT © 1966 through 1980 WEST PUBLISHING CO.

COPYRIGHT © 1981
By
WEST PUBLISHING CO.

27 McKinney §§ 1 to 166
1981 P.P.

company is not required to designate county within state in which its principal office is to be located. Providence Washington Ins. Co. v. Squier Corp., 1968, 31 A.D.2d 514, 294 N.Y. S.2d 835.

Incorporated alien insurers are not required to designate a residence of-

fice in application for authority to do business filed with Secretary of State. General Acc. Fire & Life Assur. Corp. v. Allcity Ins. Co., 1967, 53 Misc.2d 596, 279 N.Y.S.2d 422.

### § 44-a. Limited exemption for health maintenance organizations

1. An organization which is in compliance with the provisions of article forty-four of the public health law and which would, but for the provisions of this section, be engaged in the business of insurance, may operate without being licensed under this chapter and without being subject to any other provisions of this chapter relating to capital reserves, corporate structure or otherwise.

2. An organization which provides health care services in exchange for a periodic fee paid in advance but which is not subject to the provisions of article forty-four of the public health law shall be deemed to be engaged in the business of insurance and may not operate without being licensed under this chapter.

3. A violation of paragraph one of this section shall subject the organization to the provisions of article sixteen of this chapter.

4. A health maintenance organization may invest in any investment permitted to be made by a health service corporation which is organized pursuant to article nine-c of this chapter[3] provided that the superintendent, after consultation with the commissioner of health, may modify such investment requirements, if such modification would permit the health maintenance organization to more effectively implement its program without incurring undue risk to its subscribers.

5. The superintendent shall be empowered to promulgate regulations in effectuating the purposes and provisions of this chapter and article forty-four of the public health law. In addition, the superintendent may modify requirements applicable to the contracts between a health maintenance organization and its subscribers, subject to such limitations as the superintendent shall deem necessary or proper in order to insure the performance of contracts with subscribers.

Added L.1976, c. 938, § 7.

**Effective Date.** Section effective July 27, 1976, pursuant to L.1976, c. 938, § 14.

### § 46. Kinds of insurance authorized

The kinds of insurance which may be authorized in this state, subject to the other provisions of this chapter, are set forth in the following paragraphs. Nothing herein contained shall require any insurer to insure every kind of risk which it is authorized to insure. The power to do any kind of insurance against loss of or damage to property shall include the power to insure all lawful interests in such property and to insure against loss of use and occupancy, rents and profits resulting therefrom; but no kind of insurance shall be deemed to include life insurance, title insurance or insurance against legal liability for personal injury or death unless specified herein. In addition to any power to engage in any other kind of business than an insurance business which is specifically conferred by the provisions of this chapter, any insurer authorized to do business in this state may engage in such other kind or kinds of business to the extent necessarily or properly incidental to the kind or kinds of insurance business which

it is authorized to do in this state. Each of the following paragraphs indicates the scope of the kind of insurance business specified therein;

1. "Life insurance," meaning every insurance upon the lives of human beings and every insurance appertaining thereto. The business of life insurance shall be deemed to include the granting of endowment benefits; additional benefits in the event of death by accident or accidental means; additional benefits operating to safeguard the contract from lapse, or to provide a special surrender value, in the event of total and permanent disability of the insured; and optional modes of settlement of proceeds. Amounts paid to the insurer for life insurance and proceeds applied under optional modes of settlement or under dividend options may be allocated by the insurer to one or more separate accounts pursuant to section two hundred twenty-seven.

2. "Annuities," meaning all agreements to make periodical payments where the making or continuance of all or of some of a series of such payments, or the amount of any such payment, is dependent upon the continuance of human life, except payments made under the authority of paragraph one. Amounts paid to the insurer to provide annuities and proceeds applied under optional modes of settlement or under dividend options may be allocated by the insurer to one or more separate accounts pursuant to section two hundred twenty-seven.

[See main volume for text of 3 and 4]

5. "Miscellaneous property insurance," meaning loss of or damage to property resulting from

[See main volume for text of (a) to (d)]

(e) lateral or vertical subsidence of the earth caused by past or present mining operations.

[See main volume for text of 6 to 12]

13. "Personal injury liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, and including an obligation of the insurer to pay medical, hospital, surgical and disability benefits to injured persons, and funeral and death benefits to dependents, beneficiaries or personal representatives of persons who are killed, irrespective of legal liability of the insured, arising out of the death or injury of any person, or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service, but not including any kind of insurance specified in paragraph fifteen. Policies, except those covering nuclear facilities ←
licensed by the atomic energy commission of the United States as meeting federal standards or radiological health and safety and nuclear facilities licensed by the state as meeting such federal standards, those purchased to satisfy the financial responsibility requirements of any federal law, and those issued to satisfy financial responsibility requirements pursuant to section 33-0905 of the environmental conservation law, issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

14. "Property damage liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, arising out of the loss or destruction of, or damage to, the property of any other person, but not including any kind of insurance specified in paragraph thirteen or fifteen. Policies, except those covering nuclear facilities licensed by the ←

37

atomic energy commission of the United States as meeting federal standards of radiological health and safety and nuclear facilities licensed by the state as meeting such federal standards, those purchased to satisfy the financial responsibility requirements of any federal law, and those issued to satisfy financial responsibility requirements of the state pursuant to section 33–0905 of the environmental conservation law, issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

*[See main volume for text of 15 and 16]*

17. "Credit insurance," meaning indemnifying merchants or other persons extending credit against loss or damage resulting from the non-payment of debts owed to them; and including the incidental power to acquire and dispose of debts so insured, and to collect any debts owed to such insurer or to any person so insured by him; or indemnifying any person for expenses disbursed or to be disbursed under a contract in connection with the cancellation of a catered affair; or indemnifying any person for tuition expenses disbursed or to be disbursed under a contract in connection with the dismissal or withdrawal of such person from an educational institution; or indemnifying elementary or secondary schools, whether public, private, profit or non-profit, providing education in consideration of a tuition charge or fee against loss or damage in the event of the non-payment of the tuition charges or fees of a student or pupil who is dismissed, withdrawn or leaves before the end of the school year for which such insurance is written. An educational institution may not require the person or persons responsible for the payment of a student's or pupil's tuition charge or fee to pay for tuition refund insurance.

[17–a. Repealed].

*[See main volume for text of 18 to 22]*

23. "Mortgage guaranty insurance" means the kind of insurance specified in section three hundred.

24. "Substantially similar kind of insurance," meaning such insurance which in the opinion of the superintendent is determined to be substantially similar to one of the foregoing kinds of insurance and thereupon for the purposes of this chapter shall be deemed to be included in that kind of insurance.

As amended L.1968, c. 601, § 1; L.1970, c. 508, § 1; L.1971, c. 765, §§ 1, 2; L.1971, c. 766, §§ 1, 2; L.1973, c. 321, §§ 1, 2; L.1973, c. 903, § 2; L.1974, c. 630, § 1; L.1980, c. 97, §§ 1, 3; L.1981, c. 936, § 1; L.1981, c. 940, § 1.

**1981 Amendments.** Subd. 5, par. (e). L.1981, c. 940, § 1, eff. July 31, 1981, added par. (e).

Subd. 17. L.1981, c. 936, § 1, eff. July 31, 1981, inserted "or indemnifying any person for expenses disbursed or to be disbursed under a contract in connection with the cancellation of a catered affair; or indemnifying any person for tuition expenses disbursed or to be disbursed under a contract in connection with the dismissal or withdrawal of such person from an educational institution;".

**1980 Amendment.** Subd. 17. L. 1980, c. 97, § 1, eff. May 1, 1980, expanded definition to include indemnification of schools for tuition losses and added sentence beginning "An educational institution".

Subd. 17–a. L.1980, c. 97, § 3, eff. May 1, 1980, repealed subd. 17–a defining tuition refund insurance. Subject matter is now covered in subd. 17.

**1974 Amendment.** Subd. 17–a. L. 1974, c. 630, § 1, eff. May 30, 1974, added subd. 17–a.

**1973 Amendments.** Subds. 13, 14. L.1973, c. 321, §§ 1, 2, eff. May 14, 1973, added the exception in both subdivisions relating to policies issued to satisfy financial responsibility requirements pursuant to section 33–

0905 of the Environmental Conservation Law.

Subd. 23. L.1973, c. 903, § 2, eff. July 1, 1973, added subd. 23. Former subd. 23 renumbered 24.

Subd. 24. L.1973, c. 903, § 2, eff. July 1, 1973, renumbered subd. 23 as 24.

**Historical Notes through 1971**

Subd. 1 amended L.1970, c. 508, § 1, eff. Jan. 1, 1971. L.1970 added sentence beginning "Amounts paid".

Subd. 2 amended L.1968, c. 601, § 1, eff. Nov. 1, 1968; 1970, c. 508, § 1, eff. Jan. 1, 1971. L.1968 in sentence beginning "Any such agreement" deleted "made in connection with a qualified pension, profit-sharing or annuity plan" following "Any such agreement" and "or section two hundred twenty-seven-a or both" following "two hundred twenty-seven". L. 1970 substituted "Amounts" for "Any such agreement may provide that any amounts" and "and proceeds applied * * * dividend options may" for "shall" and deleted "whether such annuities are payable in fixed or variable amounts or both" following "two hundred twenty-seven".

Subd. 13 amended L.1971, c. 765, § 1, eff. Sept. 1, 1971; L.1971, c. 766, § 1, eff. Sept. 1, 1971. L.1971, c. 765 inserted sentence beginning "Policies". L.1971, c. 766, in sentence beginning "Policies", inserted "except those covering * * * requirements of any federal law".

Subd. 14 amended L.1971, c. 765, § 2, eff. Sept. 1, 1971; L.1971, c. 766, § 2, eff. Sept. 1, 1971. L.1971, c. 765 inserted sentence beginning "Policies". L.1971, c. 766, in sentence beginning "Policies", inserted "except those covering * * * requirements of any federal law".

**Effective Date of L.1971, c. 765; application.** Section 3 of L.1971. c. 765, provided: "This act [amending subds. 13, 14 of this section] shall take effect on the first day of September next succeeding the date on which it shall have become a law [June 25, 1971] and shall be applicable to policies issued or renewed thereafter."

---

**Supplementary Index to Notes**

Boiler insurance 19
Pollution liability exclusions 20

**9. Life insurance**

Group life insurance is "life insurance" within this section authorizing issuance of various types of insurance. Helfaer v. John Hancock Mut. Life Ins. Co., 1966, 51 Misc.2d 869, 274 N.Y.S.2d 494, reversed 30 A.D.2d 102, 290 N.Y.S.2d 40, reversed 26 N.Y.2d 699, 308 N.Y.S.2d 865, 257 N.E.2d 46.

**15. Motor vehicle and aircraft insurance**

Policy which was identified by carrier as "aircraft hull and liability policy" which besides usual liability coverage insured employees including crew members under endorsement entitled "LIABILITY-GUEST VOLUNTARY SETTLEMENT" in which no beneficiaries were designated and no disposition of proceeds was made but which provided for paying benefits at request of named insured regardless of legal liability was not accident and health policy payable to estate of decedent but was "motor vehicle and aircraft insurance," within this section defining same. In re Gilly's Estate, 1971, 66 Misc.2d 894, 322 N.Y.S.2d 742.

**17. Title insurance**

Title policy is type of indemnity insurance and is governed by general rules and principles which apply to issuance, validity and interpretation of other insurance contracts. L. Smirlock Realty Corp. v. Title Guarantee Co., 1979, 70 A.D.2d 455, 421 N.Y.S.2d 232, modified on other grounds 52 N.Y.2d 179, 437 N.Y.S.2d 57, 418 N.E.2d 650.

**19. Boiler insurance**

Insurance policy currently in use for boiler coverage should be read into insurance binder on basis of both case law and contractual language of binder itself. LaPenta v. General Acc. Fire & Life Assur. Corp., 1978, 62 A.D.2d 1145, 404 N.Y.S.2d 182.

**20. Pollution liability exclusions**

This section, mandating that liability policies of commercial and industrial concerns include provision excluding liability arising out of pollution or contamination unless same be sudden and accidental did not preclude insurer's including such exclusion in policies issued to other insureds, such as county. Niagara County v. Utica Mut. Ins. Co., 1980, 103 Misc.2d 814, 427 N.Y.S.2d 171.

---

**§ 46–a. Subsidiaries of domestic life insurance companies**

1. In addition to investments in subsidiaries to the extent, if any, permissible under subdivision four of section eighty, subdivisions eight, nine, ten, fourteen and sixteen of section eighty-one, section eighty-two

# Exhibit 4

# LAWS

OF THE

# STATE OF NEW YORK

PASSED AT THE

## ONE HUNDRED AND NINETY-SIXTH SESSION

OF THE

# LEGISLATURE

## CONVENED JANUARY THIRD AND ADJOURNED MAY TWENTY-SEVENTH

1973

### ALSO LAWS OF THE EXTRAORDINARY SESSION
CONVENED JULY 25, 1973
ADJOURNED JULY 31, 1973

### AT THE CITY OF ALBANY

ALSO OTHER MATTERS REQUIRED BY LAW
TO BE PUBLISHED WITH THE SESSION LAWS

## VOLUME I



**ALBANY**
**1973**

HeinOnline -- 1973 i 1973

§ 6. Subparagraphs two and three of paragraph (d) of subdivision two of section three hundred eighty of such law, such paragraph (d) having been added by chapter six hundred of the laws of nineteen hundred seventy-one, are hereby amended to read as follows:

(2) If the loan is for the purpose of financing the purchase of a new mobile home,

(i) it shall mature not later than one hundred eighty months after the date thereof, and

(ii) the amount advanced to the borrower shall not exceed [ninety] *one hundred* per cent of the sum of (a) the manufacturer's invoice price of such mobile home (including any installed equipment), excluding freight, plus (b) the invoice price of the manufacturer of any new equipment installed or to be installed by the dealer excluding freight.

(3) If the loan is for the purpose of financing the purchase of a used mobile home,

(i) it shall mature not later than ninety-six months after the date thereof, and

(ii) the amount advanced to the borrower shall not exceed [ninety] *one hundred* per cent of the purchase price actually paid or the wholesale value of such mobile home (including any installed equipment) as established in the dealer's market, whichever is the lower.

§ 7. This act shall take effect immediately.

---

# CHAPTER 321

AN ACT to amend the insurance law, in relation to state financial responsibility requirements

Became a law May 14, 1973, with the approval of the Governor. Passed by a majority vote, three-fifths being present

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivision thirteen of section forty-six of the insurance law, as amended by chapter seven hundred sixty-six of the laws of nineteen hundred seventy-one, is hereby amended to read as follows:

13. "Personal injury liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, and including an obligation of the insurer to pay medical, hospital, surgical and disability benefits to injured persons, and funeral and death bene-

fits to dependents, beneficiaries or personal representatives of persons who are killed, irrespective of legal liability of the insured, arising out of the death or injury of any person, or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service, but not including any kind of insurance specified in paragraph fifteen. Policies, except those covering nuclear facilities licensed by the atomic energy commission of the United States as meeting federal standards or radiological health and safety and nuclear facilities licensed by the state as meeting such federal standards, [and except] those purchased to satisfy the financial responsibility requirements of any federal law, *and those issued to satisfy financial responsibility requirements pursuant to section 33-0905 of the environmental conservation law*, issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

§ 2. Subdivision fourteen of section forty-six of such law, as amended by chapter seven hundred sixty-six of the laws of nineteen hundred seventy-one, is hereby amended to read as follows:

14. "Property damage liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, arising out of the loss or destruction of, or damage to, the property of any other person, but not including any kind of insurance specified in paragraph thirteen or fifteen. Policies, except those covering nuclear facilities licensed by the atomic energy commission of the United States as meeting federal standards of radiological health and safety and nuclear facilities licensed by the state as meeting such federal standards, [and except] those purchased to satisfy the financial responsibility requirements of any federal law, *and those issued to satisfy financial responsibility requirements of the state pursuant to section 33-0905 of the environmental conservation law*, issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this subdivision shall expressly exclude therefrom liability arising out of pollution or contamination caused by the discharge, dispersal, release or escape of any pollutants, irritants or contaminants into or upon land, the atmosphere or any water course or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

§ 3. This act shall take effect immediately.

EXPLANATION — Matter in *italics* is new; matter in brackets [ ] is old law to be omitted.

# Exhibit 5

# LAWS

OF THE

# STATE OF NEW YORK

PASSED AT THE

TWO HUNDRED AND FIFTH

SESSION

OF THE

# LEGISLATURE

**CONVENED JANUARY 6, 1982 AND
EXPIRED DECEMBER 31, 1982**

ALSO

**THE EXTRAORDINARY SESSION
CONVENED AND ADJOURNED
DECEMBER 13, 1982 — DECEMBER 22, 1982**

AT THE CITY OF ALBANY

ALSO OTHER MATTERS REQUIRED BY LAW
TO BE PUBLISHED WITH THE SESSION LAWS

**VOLUME II**



PREPARED BY
**THE NEW YORK STATE
LEGISLATIVE BILL DRAFTING COMMISSION**

*post-closure monitoring and maintenance estimates to account for inflation.*

*5. All estimates made pursuant to this section and revisions thereto shall be subject to the review and approval of the department.*

*6. The department shall periodically review the methods and instruments of financial assurances for permitted hazardous waste facilities to determine whether they are adequate in light of changed circumstances to insure proper closure and post-closure monitoring and maintenance of such facilities.*

*7. The provisions of this section relating to post-closure monitoring and maintenance plans and cost estimates associated therewith shall only apply to owners and operators of disposal facilities.*

§ 4. Such law is amended by adding a new section 27-0920 to read as follows:

§ 27-0920. Reports.

*Subject to the moneys available to the department for such purposes, the department shall submit to the governor, the temporary president of the senate and the speaker of the assembly on an annual basis a complete and detailed report setting forth:*

*1. The status of all permits issued and pending for the treatment, storage, transportation or disposal of hazardous wastes pursuant to section 27-0707 and section 27-0913 of this chapter.*

*2. The types and amounts of financial assurances which have been required pursuant to this section.*

*3. Any other matters that the department determines relevant for inclusion.*

§ 5. The sum of two hundred thousand dollars ($200,000), or so much thereof as may be necessary, is hereby appropriated to the department of environmental conservation out of any moneys in the state treasury in the general fund to the credit of the state purposes account not otherwise appropriated, for its expenses, including personal service, maintenance and operation, in carrying out the provisions of this act.

§ 6. This act shall take effect immediately.

———

# CHAPTER 856

AN ACT to amend the insurance law, in relation to certain authorized insurance

Became a law July 27, 1982, with the approval of the Governor.
Passed by a majority vote, three-fifths being present.

*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

Section 1. Subdivisions thirteen and fourteen of section forty-six of the insurance law, as amended by chapter three hundred twenty-one of the laws of nineteen hundred seventy-three, are amended to read as follows:

13. "Personal injury liability insurance," meaning insurance against legal liability of the insured, and against loss, damage or expense incident to a claim of such liability, and including an obligation of the insurer to pay medical, hospital, surgical and disability benefits to injured persons, and funeral and death benefits to dependents, beneficiaries or personal representatives of persons who are killed, irrespective of legal liability of the insured, arising out of the death or injury of any person, or arising out of injury to the economic interests of any person as the result of negligence in rendering expert, fiduciary or professional service, but not including any kind of insurance specified in [paragraph] *subdivision* fifteen. [Policies, except those covering nuclear facilities licensed by the atomic energy commission of the United States as meeting federal standards or radiological health and safety and nuclear facilities licensed by the state as meeting such federal standards, those purchased to satisfy the financial responsibility requirements of any federal law, and those issued to satisfy financial responsibility requirements pursuant to section 33-0905 of the environmental conservation law, issued to commercial or industrial enterprises providing insurance against the legal liabilities specified in this sub-

division shall expressly exclude therefrom liability arising out of pol-
lution or contamination caused by the discharge, dispersal, release or
escape of any pollutants, irritants or contaminants into or upon land,
the atmosphere or any water course or body of water unless such dis-
charge, dispersal, release or escape is sudden and accidental.]
    14. "Property damage liability insurance," meaning insurance against
legal liability of the insured, and against loss, damage or expense in-
cident to a claim of such liability, arising out of the loss or destruc-
tion of, or damage to, the property of any other person, but not includ-
ing any kind of insurance specified in [paragraph] *subdivision* thirteen
or fifteen. [Policies, except those covering nuclear facilities
licensed by the atomic energy commission of the United States as meeting
federal standards of radiological health and safety and nuclear facili-
ties licensed by the state as meeting such federal standards, those
purchased to satisfy the financial responsibility requirements of any
federal law, and those issued to satisfy financial responsibility
requirements of the state pursuant to section 33-0905 of the environmen-
tal conservation law, issued to commercial or industrial enterprises
providing insurance against the legal liabilities specified in this sub-
division shall expressly exclude therefrom liability arising out of pol-
lution or contamination caused by the discharge, dispersal, release or
escape of any pollutants, irritants or contaminants into or upon land,
the atmosphere or any water course or body of water unless such dis-
charge, dispersal, release or escape is sudden and accidental.]
    § 2. This act shall take effect on the first day of September next
succeeding the date on which it shall have become a law.

---

## CHAPTER 857

AN ACT to amend the environmental conservation law, the public health
law, the public authorities law and the state finance law, in relation
to the identification, assessment, management and control of inactive
hazardous waste disposal sites; creating a state superfund for the
purpose of hazardous waste disposal and site remediation and making an
appropriation therefor

    Became a law July 27, 1982, with the approval of the Governor.
        Passed by a majority vote, three-fifths being present.

    *The People of the State of New York, represented in Senate and Assem-
bly, do enact as follows:*

    Section 1. Section 27-0901 of the environmental conservation law is
amended by adding two new subdivisions twelve and thirteen to read as
follows:
    12. *"Landfill" means a disposal facility or part of a facility where
solid waste, including hazardous waste, is placed in or on land, and
which is not a land treatment facility, a surface impoundment, or an in-
jection well.*
    13. *"Resource recovery" means any method, technique, or process uti-
lized to separate, process, modify, convert, treat or otherwise prepare
hazardous waste so that the component materials or substances thereof
may be beneficially used or reused as raw materials, exclusive of use-
able energy.*
    § 2. Such law is amended by adding a new section 27-0923 to read as
follows:
§ 27-0923. *Special assessments.*
    1. *On and after September first, nineteen hundred eighty-two there is
hereby imposed upon every person engaged within the state in the genera-
tion of a hazardous waste identified or listed pursuant to this title an
assessment to be determined as follows:*
    a. *$12.00 per ton of hazardous waste generated on or after September
first, nineteen hundred eighty-two which is disposed of in a landfill.*

EXPLANATION—Matter in *italics* is new; matter in brackets [ ] is old law
                    to be omitted.

# Exhibit 6a

# Code of Federal Regulations



**TITLE 32**

**Parts 1 to 8**

**Revised as of January 1, 1971**

CONTAINING A CODIFICATION OF DOCUMENTS
OF GENERAL APPLICABILITY AND
FUTURE EFFECT AS OF JANUARY 1, 1971

*With Ancillaries*

Published by the Office of the Federal Register
National Archives and Records Service
General Services Administration
as a Special Edition of the Federal Register

§ 1.100                                 Title 32—National Defense

Subpart P— [Reserved]

Subpart Q—Value Engineering

Sec.
1.1701      Policy.
1.1702      Types of value engineering provisions.
1.1702-1    Incentives.
1.1702-2    Program requirement.
1.1702-3    Use of incentive and program clauses.
1.1703      Types of savings to be shared with the contractor.
1.1703-1    General.
1.1703-2    Instant contract savings.
1.1703-3    Future acquisition savings.
1.1703-4    Collateral savings.
1.1704      Percentages of contractor sharing.
1.1704-1    General.
1.1704-2    Value engineering incentive percentages.
1.1704-3    Value engineering program requirement percentages.
1.1705      Other considerations.
1.1705-1    Submission of identical value Engineering change proposals under more than one contract.
1.1705-2    Revision of performance incentive provisions.
1.1705-3    Cost allowability.
1.1705-4    Effect of value engineering payments.
1.1706      Evaluation and acceptance.
1.1707      Value engineering clauses.
1.1707-1    The basic clause.
1.1707-2    Instant contract sharing provisions (clause paragraph (d)).
1.1707-3    Future acquisition sharing provisions (clause paragraph (j)).
1.1708      Instant contract only sharing provision.
1.1709      Exclusion of collateral savings provision.
1.1710      Royalty payment notice for future acquisition contract documents.

Subpart R—Post-Award Orientation of Contractors

1.1801      Scope of subpart.
1.1802      Policy.
1.1803      Post-award orientation conferences.
1.1803-1    Factors.
1.1803-2    Initial action.
1.1803-3    Agenda.
1.1803-4    Participants.
1.1803-5    Conference procedure.
1.1804      Subcontract conferences.
1.1805      Forms and reports.
1.1806      Post-award letters.

Subpart S—First Article Approval

1.1900      Scope of subpart.
1.1901      Definitions.
1.1902      General.
1.1903      Fixed-price type contracts.
1.1904      Cost reimbursement type contracts.
1.1905      Government administration procedures.

Subpart T—Limitation of Cost or Funds Under Cost-Reimbursement Type Contracts

Sec.
1.2000      Scope of subpart.
1.2001      Limitation of cost or funds.

AUTHORITY: The provisions of this Part 1 issued under R.S. 161, secs. 2202, 2301–2314, 70A Stat. 120, 127–133; 5 U.S.C. 301, 10 U.S.C 2202, 2301–2314.

## Subpart A—Introduction

### § 1.100   Scope of subpart.

This subpart sets forth (a) introductory information pertaining to the subchapter (its purpose, applicability, content, and arrangement), and (b) instructions for amending, implementing, disseminating, and deviating from the subchapter.

[25 F.R. 14079, Dec. 31, 1960]

### § 1.101   Purpose of subchapter.

This subchapter, issued by the Assistant Secretary of Defense (Installations and Logistics) by direction of the Secretary of Defense and in coordination with the Secretaries of the Army, Navy, and Air Force and the Director of the Defense Supply Agency, establishes for the Department of Defense, uniform policies and procedures relating to the procurement of supplies and services under the authority of Chapter 137, Title 10 of the United States Code, or under other statutory authority.

[27 F.R. 11643, Nov. 27, 1962]

### § 1.102   Applicability of subchapter.

This subchapter shall apply to all purchases and contracts made by the Department of Defense, within or outside the United States (but see § 1.109–4), for the procurement of supplies or services which obligate appropriated funds (including available contract authorizations), unless otherwise specified herein, except transportation services procured by transportation requests, transportation warrants, bills of lading, and similar transportation forms. (Procurement of these excepted transportation services shall be in accordance with specific regulations and instructions issued by the Military Traffic Management and Terminal Service, Military Sea Transportation Service, Military Airlift Command, and the Departments.

[33 F.R. 15380, Oct. 17, 1968]

### § 1.103   Arrangement of subchapter.

[25 F.R. 14079, Dec. 31, 1960]

# Exhibit 6b



# National Defense

# 32

PARTS 1 TO 39

VOLUME I

[Contains DAR Sections I–VI]  ⟵

**Revised as of September 1, 1982**

CONTAINING
A CODIFICATION OF DOCUMENTS
OF GENERAL APPLICABILITY
AND FUTURE EFFECT

AS OF SEPTEMBER 1, 1982

*With Ancillaries*

Published by
the Office of the Federal Register
National Archives and Records Service
General Services Administration

as a Special Edition of
the Federal Register



## SECTION I

## GENERAL PROVISIONS

### Part 1—Introduction

**1–100 Scope of Part.** This Part sets forth (i) introductory information pertaining to the Regulation (its purpose, applicability, content, and arrangement), and (ii) instructions for amending, implementing, disseminating, and deviating from the Regulation.

**1–101 Purpose of Regulation.** This Regulation, issued by the Assistant Secretary of Defense (Installations and Logistics) by direction of the Secretary of Defense and in coordination with the Secretaries of the Army, Navy, and Air Force and the Director of the Defense Supply Agency, establishes for the Department of Defense, uniform policies and procedures relating to the procurement of supplies and services under the authority of Chapter 137, Title 10 of the United States Code, or under other statutory authority.

**1–102 Applicability of Regulation.** This Regulation shall apply to all purchases and contracts made by the Department of Defense, within or outside the United States (but see 1–109.4), for the procurement of supplies or services which obligate appropriated funds (including available contract authorizations), or in support of foreign military sales without regard to the nature or source of funds obligated, unless otherwise specified herein, except transportation services procured by transportation requests, transportation warrants, bills of lading, and similar transportation forms. Procurement of these excepted transportation services shall be in accordance with specific regulations and instructions issued by the Military Traffic Management and Terminal Service (MTMTS), Military Sealift Command (MSC), Military Airlift Command (MAC), and the Departments.

**1–103 Arrangement of Regulation.**

**1–103.1** *General Plan.* The Regulation is divided into sections, each one of which deals with a separate aspect of procurement; and each section is further subdivided into parts and paragraphs.

**1–103.2** *Numbering.* The numbering of individual paragraphs and pages is not necessarily consecutive, and is designed to permit subsequent insertion of additional paragraphs and pages within the appropriate section and part. The number of a particular paragraph indicates the section and part where it is set forth, and also indicates whether it is subordinate to a preceding paragraph. The first portion of a paragraph number indicates the section, and the first digit of the second portion (preceded by a dash) indicates the part, in which the particular second portion (preceded by a dash) indicates the part, in which the particular paragraph is set forth; thus, paragraph 1–104 indicates Section I, Part 1, paragraph 4. Where the number of a paragraph ends with a digit preceded by a decimal point (as 1–104.2), this indicates that it is part of the general subject covered by the basic paragraph (as 1–104). The scope of any section, when given, will be set forth in a separate introductory paragraph, the second portion of which number will be 000 (as 1–000); and the scope of any part, when given, will be set forth in a separate paragraph at the beginning of that part but with the second

1–103.2

**ARMED SERVICES PROCUREMENT REGULATION**

17

# Exhibit 7a

# Code of Federal Regulations



**TITLE 32**

**Parts 1 to 8**

**Revised as of January 1, 1971**

CONTAINING A CODIFICATION OF DOCUMENTS
OF GENERAL APPLICABILITY AND
FUTURE EFFECT AS OF JANUARY 1, 1971
*With Ancillaries*

Published by the Office of the Federal Register
National Archives and Records Service
General Services Administration
as a Special Edition of the Federal Register

the basis for such negotiation should be fully discussed with the contractor when this type of contract is negotiated. Because the price is redetermined on a completely retroactive basis, this contract type (except for the price ceiling) does not provide the contractor with a calculable incentive for effective cost control. Once established, the ceiling price is subject to adjustment only if required by the operation of other contract clauses (see §3.404-1).

(b) *Application.* This type of contract is appropriate in procurements where it is established at the time of negotiation that a fair and reasonable firm fixed price cannot be negotiated and the amount involved is so small or the time for performance so short that use of any other type of contract is impracticable. Even in these situations, however, it should be used only after negotiation of a billing price as fair and reasonable as the circumstances of the particular procurement permit. Based on an evaluation of the circumstances involved in contract performance, and their possible impact on cost, the ceiling price should be negotiated at a level which represents contractor assumption of a reasonable degree of risk.

(c) *Limitations.* This type of contract shall not be used unless the procurement is for research and development at an estimated cost of $100,000 or less, and

(1) The contractor's accounting system is adequate for price redetermination purposes;

(2) Reasonable assurance exists that price redetermination action will be taken promptly at the time specified;

(3) A ceiling price is established; and

(4) Written approval has been received from a level above the head of a procuring activity.

[27 F.R. 4015, Apr. 29, 1962, as amended at 29 F.R. 2929, Feb. 29, 1964. Redesignated at 33 F.R. 19905, Dec. 28, 1968]

§3.405 Cost-reimbursement type contracts.

§3.405-1 General.

(a) *Description.* The cost-reimbursement type of contract provides for payment to the contractor of allowable costs incurred in the performance of the contract, to the extent prescribed in the contract. This type of contract establishes an estimate of total cost for the purpose of (1) obligation of funds, and (2) establishing a ceiling which the contractor may not exceed (except at his own risk) without prior approval or subsequent ratification of the contracting officer.

(b) *Application.* The cost-reimbursement type contract is suitable for use only when the uncertainties involved in contract performance are of such magnitude that cost of performance cannot be estimated with sufficient reasonableness to permit use of any type of fixed-price contract. In addition, it is essential that (1) the contractor's cost accounting system is adequate for the determination of costs applicable to the contract and (2) appropriate surveillance by Government personnel during performance will give reasonable assurance that inefficient or wasteful methods are not being used. While cost-reimbursement contracts are particularly useful for procurements involving substantial amounts, e.g., estimated cost of $100,000 or more, the parties may agree in a given case to use this type of contract to cover transactions in which the estimated costs are less than $100,000.

(c) *Limitations.* The cost-reimbursement type contract may be used only after a determination, in accordance with the requirements of Subpart C of this part, that:

(1) Such method of contracting is likely to be less costly than other methods, or

(2) It is impractical to secure supplies or services of the kind or quality required without the use of such type of contract.

§3.405-2 Cost contract. ⟵

(a) *Description.* The cost contract is a cost-reimbursement type contract under which the contractor receives no fee.

(b) *Application.* The following are illustrative situations in which the use of this type of contract may be appropriate:

(1) Research and development work, particularly with nonprofit educational

institutions or other nonprofit organizations; and

(2) Facilities contracts.

§ 3.405–3   Cost-sharing contract.

A cost-sharing contract is a cost-reimbursement type contract, for use in a research or development procurements, under which the contractor is reimbursed only for an agreed portion of his allowable costs. The contractor agrees to absorb a portion of the costs of performance in the expectation of substantial compensating benefits. For instructions governing the use of cost-sharing contracts, see § 4.110 of this chapter.

[32 F.R. 10159, July 11, 1967]

§ 3.405–4   Cost-plus-incentive-fee contract.

(a) *Description.* The cost-plus-incentive-fee contract is a cost-reimbursement type contract with provision for a fee which is adjusted by formula in accordance with the relationship which total allowable costs bear to target cost. Under this type of contract, there is negotiated initially a target cost, a target fee, a minimum and maximum fee, and a fee adjustment formula. After performance of the contract, the fee payable to the contractor is determined in accordance with the formula. The formula provides, within limits, for increases in fee above target fee when total allowable costs are less than target costs, and decreases in fee below target fee when total allowable costs exceed target costs. The provision for increase or decrease in the fee is designed to provide an incentive for maximum effort on the part of the contractor to manage the contract effectively.

(b) *Application.* The cost-plus-incentive-fee contract is suitable for use primarily for development and test when a cost-reimbursement type of contract is found necessary in accordance with § 3.405–1(b), and when a target and a fee adjustment formula can be negotiated which are likely to provide the contractor with a positive profit incentive for effective management. In particular, where it is highly probable that the development is feasible and the Government generally has determined its desired performance objectives, the cost-plus-incentive-fee contract should be used in conjunction with performance incentives in the development of major systems, and in other development programs where use of the cost and performance incentive approach is considered both desirable and administratively practical (see §§ 3.403(b) and 3.407–2 (b)). Range of fee and the fee adjustment formula should be negotiated so as to give appropriate weight to basic procurement objectives. For example, in an initial product development contract, it may be appropriate to negotiate a cost-plus-incentive-fee contract providing for relatively small increases or decreases in fee tied to the cost incentive feature, balanced by the inclusion of performance incentive provisions providing for significant upward or downward fee adjustment as an incentive for the contractor to meet or surpass negotiated performance targets. Conversely, in subsequent development and test contracts, it may be more appropriate to negotiate an incentive formula where the opportunity to earn additional fee is based primarily on the contractor's success in controlling costs. With regard to the cost incentive provisions of a contract, the minimum and maximum fees, and the fee adjustment formula, should be negotiated so as to provide an incentive which will be effective over variations in costs throughout the full range of reasonably foreseeable variations from target cost. Whenever this type of contract, with or without the inclusion of performance incentives, is negotiated so as to provide incentive up to a high maximum fee, the contract also shall provide for a low minimum fee, which may even be a "zero" fee or, in rare cases, a "negative" fee.

(c) *Limitations.* The maximum fee shall not exceed the limitations stated in § 3.405–6(c)(2).

[27 F.R. 4015, Apr. 27, 1962, as amended at 33 F.R. 19905, Dec. 28, 1968]

§ 3.405–5   Cost-plus-award-fee (CPAF) contract.

(a) *Description.* The CPAF contract is a cost reimbursement type of contract with special fee provisions. It provides a means of applying incentives in contracts which are not susceptible to finite measurements of performance necessary for structuring incentive contracts. The fee established in a CPAF contract consists

**Exhibit 7b**

**code of federal regulations**

# National Defense

# 32

## PARTS 1 TO 39

## VOLUME I

[Contains DAR Sections I–VI]

**Revised as of September 1, 1982**

CONTAINING
A CODIFICATION OF DOCUMENTS
OF GENERAL APPLICABILITY
AND FUTURE EFFECT

AS OF SEPTEMBER 1, 1982

*With Ancillaries*

Published by
the Office of the Federal Register
National Archives and Records Service
General Services Administration

as a Special Edition of
the Federal Register



### PROCUREMENT BY NEGOTIATION

ever, payment is based on effort expended rather than on results achieved. This type of contract can be a useful tool, particularly in the Research and Exploratory Development categories when the work cannot be clearly defined and the level of effort desired can be identified and agreed upon in advance of performance.

(b) *Limitations.* The firm fixed price level of effort term contract may be used only when:

    (i) the work to be performed cannot otherwise be clearly defined;

    (ii) the level of effort desired can be identified and agreed upon in advance of performance;

    (iii) there is reasonable assurance that the result desired cannot be achieved by expenditure of less than the stipulated effort; and

    (iv) the contract price does not exceed $100,000 unless approved by the Chief of the Purchasing Office.

**3–405 Cost-Reimbursement Type Contracts.**

**3–405.1** *General.*

(a) *Description.* The cost-reimbursement type of contract provides for payment to the contractor of allowable costs incurred in the performance of the contract, to the extent prescribed in the contract. This type of contract establishes an estimate of total cost for the purpose of (i) obligation of funds, and (ii) establishing a ceiling which the contractor may not exceed (except at his own risk) without prior approval or subsequent ratification of the contracting officer.

(b) *Application.* The cost-reimbursement type contract is suitable for use only when the uncertainties involved in contract performance are of such magnitude that cost of performance cannot be estimated with sufficient reasonableness to permit use of any type of fixed-price contract. In addition, it is essential that (i) the contractor's cost accounting system is adequate for the determination of costs applicable to the contract and (ii) appropriate surveillance by Government personnel during performance will give reasonable assurance that inefficient or wasteful methods are not being used. While cost-reimbursement contracts are particularly useful for procurements involving substantial amounts, e.g., estimated cost of $100,000 or more, the parties may agree in a given case to use this type of contract to cover transactions in which the estimated costs are less than $100,000.

(c) *Limitations.* The cost-reimbursement type contract may be used only after a determination, in accordance with the requirements of Part 3 of this Section III, that—

    (i) such method of contracting is likely to be less costly than other methods, or

    (ii) it is impractical to secure supplies or services of the kind or quality required without the use of such type of contract.

**3–405.2** *Cost Contract.*

(a) *Description.* The cost contract is a cost-reimbursement type contract under which the contractor receives no fee.

(b) *Application.* The following are illustrative situations in which the use of this type of contract may be appropriate:

    (i) research and development work, particularly with nonprofit educational institutions or other nonprofit organizations; and

    (ii) facilities contracts.

3–405.2

**ARMED SERVICES PROCUREMENT REGULATION**

# Exhibit 8a

# Code of Federal Regulations



**TITLE 32**

**Parts 1 to 8**

**Revised as of January 1, 1971**

CONTAINING A CODIFICATION OF DOCUMENTS
OF GENERAL APPLICABILITY AND
FUTURE EFFECT AS OF JANUARY 1, 1971
*With Ancillaries*

Published by the Office of the Federal Register
National Archives and Records Service
General Services Administration
as a Special Edition of the Federal Register

## Chapter I—Office of the Secretary of Defense — Part 7

**Sec.**
7.105–4  Report of shipment (REPSHIP).
7.105–5  Liquidated damages.
7.105–6  Bill of materials.
7.105–7  Supply warranty.
7.105–8  Technical data warranty.
7.106  Price escalation clauses (established prices).
7.106–1  Escalation clause for basic steel, aluminum, brass, bronze or copper mill products.
7.106–2  Escalation clause for non-standard steel items.
7.106–3  Escalation clause for standard supplies.
7.106–4  Escalation clause for semi-standard supplies.
7.107  Price escalation clause (labor and material).
7.108  Incentive price revision clause.
7.108–1  Firm targets.
7.108–2  Successive targets.
7.108–3  Special termination costs.
7.109  Price redetermination clauses.
7.109–1  General.
7.109–2  Prospective periodic price redetermination at stated intervals.
7.109–4  Retroactive price redetermination after completion.

**Subpart B—Clauses for Cost-Reimbursement Type Supply Contracts**

7.200  Scope of subpart.
7.202  Applicability.
7.203  Required clauses.
7.203–1  Definitions.
7.203–2  Changes.
7.203–3  Limitation of cost or funds.
7.203–4  Allowable cost, fee, and payment.
7.203–5  Inspection of supplies and correction of defects.
7.203–6  Assignment of claims.
7.203–7  Examination of records.
7.203–8  Subcontracts.
7.203–9  Utilization of small business concerns.
7.203–10  Termination.
7.203–11  Excusable delays.
7.203–12  Disputes.
7.203–13  Renegotiation.
7.203–14  Commercial bills of lading covering shipment to or from contractors plant.
7.203–15  Convict labor.
7.203–16  Contract Work Hours Standards Act—overtime compensation.
7.203–17  Walsh-Healey Public Contracts Act.
7.203–18  Equal opportunity.
7.203–19  Officials not to benefit.
7.203–20  Covenant against contingent fees.
7.203–21  Government property.
7.203–22  Insurance; liability to third persons.
7.203–23  Authorization and consent.
7.203–24  Notice and assistance regarding patent infringement.
7.203–25  Communist areas.
7.203–26  Utilization of concerns in labor surplus areas.

**Sec.**
7.203–27  Payment for overtime premiums.
7.203–28  Competition in subcontracting.
7.203–29  Audit and records.
7.203–30  Price reduction for defective cost or pricing data.
7.203–31  Subcontractor cost and pricing data.
7.204  Clauses to be used when applicable.
7.204–1  Clauses for contracts involving construction work.
7.204–2  Workmen's compensation and war hazard insurance overseas.
7.204–3  Buy American Act.
7.204–4  Notice to the Government of labor disputes.
7.204–5  Patent indemnity.
7.204–6  Filing of patent applications.
7.204–7  Patent rights.
7.204–8  Reporting of royalties.
7.204–9  Rights in data.
7.204–10  Quality program.
7.204–11  Excess profit.
7.204–12  Military security requirements.
7.204–13  Preference for certain domestic commodities.
7.204–14  Gratuities.
7.204–15  Priorities, allocations and allotments.
7.204–16  Negotiated overhead rates.
7.204–17  Employment of ocean-going vessels—ocean transport of Government-owned supplies.
7.204–18  Limitation on withholding of payments.
7.204–19  Management control systems requirements.
7.204–20  Changes to make or buy program.
7.204–21  Flight risks.
7.204–22  Duty-free entry.
7.204–23  Duty-free entry of listed Canadian supplies.
7.204–24  Taxes.
7.204–25  Advance payments.
7.204–26  Frequency authorization.
7.204–27  Required source for jewel bearings.
7.204–28  General Services Administration supply sources.
7.204–29  Special termination costs.
7.204–30  Interest.
7.204–31  United States Products (Military Assistance Program).
7.204–32  Value engineering.
7.204–34  Multi-year procurement.
7.204–35  New material.
7.204–38  Special test equipment.
7.204–39  First article approved.
7.204–40  Order of precedence.
7.204–43  Aluminum.
7.204–44  Material inspection and receiving report.
7.204–45  Recovery of nonrecurring costs on foreign sales of major defense equipment.
7.204–46  Use of excess and near-excess currency.
7.204–47  Production progress report.
7.204–49  Safety precautions for ammunition and explosives.
7.204–50  Notice of radioactive materials.

dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes," and the Contracting Officer shall promptly issue a decision thereunder. For the purpose of paragraphs (d), (e), and (f) above, and pending final settlement of the disagreement on appeal, or by failure to appeal, or by agreement, such a decision shall be treated as an executed contract modification.

(h) *Termination.* If this contract is terminated prior to price redetermination, prices shall be established pursuant to this clause for completed supplies and services which are not terminated. All other elements of the termination shall be resolved pursuant to other applicable provisions of this contract.

[28 F.R. 2105, Mar. 3, 1963, as amended at 32 F.R. 4258, Mar. 18, 1967; 33 F.R. 19917, Dec. 28, 1968]

## Subpart B—Clauses for Cost-Reimbursement Type Supply Contracts

### § 7.200    Scope of subpart.

This subpart sets forth uniform contract clauses for use in cost-reimbursement type supply contracts as defined in § 7.202.

[25 F.R. 14193, Dec. 31, 1960]

### § 7.202    Applicability.

As used in this subpart, the term "cost-reimbursement type supply contract" shall means any contract (other than a letter contract, notice of award; or a supplemental agreement to a contract which does not effect a new procurement) entered into on a cost reimbursement basis as covered in § 3.405 of this chapter for supplies other than (a) the construction, alteration or repair of buildings, bridges, roads, or other kinds of real property, (b) experimental, developmental, or research work, or (c) facilities to be provided by the Government under a "facilities contract" as defined in § 7.701 and Part 13 of this chapter.

[34 F.R. 13843, Aug. 29, 1969]

### § 7.203    Required clauses.    ←

The following clauses shall be inserted in all cost-reimbursement type supply contracts.

[25 F.R. 14193, Dec. 31, 1960]

### § 7.203–1    Definitions.

Insert the contract clause set forth in § 7.103–1. Additional definitions may be included in such clause provided they are not inconsistent with such clause or the provisions of this subchapter.

[25 F.R. 14193, Dec. 31, 1960]

### § 7.203–2    Changes.

CHANGES (APRIL 1967)

(a) The Contracting Officer may at any time, by a written order, and without notice to the sureties, if any, make changes, within the general scope of this contract, in any one or more of the following:

(i) Drawings, designs, or specifications, where supplies to be furnished are to be specially manufactured for the Government in accordance therewith;

(ii) Method of shipment or packing; and

(iii) Place of delivery.

(b) If any such change causes an increase or decrease in the estimated cost of, or the time required for the performance of any part of the work under this contract, whether changed or not changed by any such order, or otherwise affects any other provision of this contract, an equitable adjustment shall be made:

(i) In the estimated cost or delivery schedule, or both;

(ii) In the amount of any fixed fee to be paid to the Contractor; and

(iii) In such other provisions of the contract as may be so affected, and the contract shall be modified in writing accordingly.

Any claim by the Contractor for adjustment under this clause must be asserted within thirty (30) days from the date of receipt by the Contractor of the notification of change: *Provided, however,* That the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes." However, except as provided in paragraph (c) below, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

(c) Notwithstanding the provisions of paragraphs (a) and (b) above, the estimated cost of this contract and, if this contract is incrementally funded, the funds allotted for the performance thereof, shall not be increased or deemed to be increased except by specific written modification of the contract indicating the new contract estimated cost and, if this contract is incrementally funded, the new amount allotted to the contract. Until such modification is made, the Contractor shall not be obligated to continue performance or incur costs beyond the point established in the clause of this contract entitled "Limitation of Cost" or "Limitation of Funds."

In the foregoing clause, the period of "thirty (30) days" within which any claim for adjustment must be asserted may be varied in accordance with Departmental procedures. In accordance with 10 U.S.C. 2306(f), prior to the pricing of any change order that is expected

## Chapter I—Office of the Secretary of Defense

### § 7.203–21   Government property.

Insert the contract clause set forth in § 13.703 of this chapter.

[30 F.R. 1736, Feb. 9, 1965]

### § 7.203–22   Insurance—liability to third persons.

INSURANCE—LIABILITY TO THIRD PERSONS
(DECEMBER 1966)

(a) The Contractor shall procure and thereafter maintain workmen's compensation employer's liability, comprehensive general liability (bodily injury) and comprehensive automobile liability (bodily injury and property damage) insurance, with respect to performance under this contract, and such other insurance as ----------[1] may from time to time require with respect to performance under this contract: *Provided*, That the Contractor may with the approval of ----------[1] maintain a self-insurance program: *And provided further*, That with respect to workmen's compensation the Contractor is qualified pursuant to statutory authority. All insurance required pursuant to the provisions of this paragraph shall be in such form, in such amounts, and for such periods of time, as ----------[1] may from time to time require or approve, and with insurers approved by ----------[1]

(b) The Contractor agrees, to the extent and in the manner required by ------[*], to submit for the approval of ------[*] any other insurance maintained by the Contractor in connection with the performance of this contract and for which the Contractor seeks reimbursement hereunder.

(c) The Contractor shall be reimbursed: (i) For the portion allocable to this contract of the reasonable cost of insurance as required or approved pursuant to the provisions of this clause, and (ii) without regard to and as an exception to the "Limitation of Cost" or the "Limitation of Funds" clause of this contract, for liabilities to third persons for loss of or damage to property (other than property (A) owned, occupied, or used by the Contractor or rented to the Contractor, or (B) in the care, custody, or control of the Contractor), or for death or bodily injury, not compensated by insurance or otherwise, arising out of the performance of this contract, whether or not caused by the negligence of the Contractor, his agents, servants or employees, provided such liabilities are represented by final judgments or settlements approved in writing by the Government, and expenses incidental to such liabilities, except liabilities (I) for which the

Contractor is otherwise responsible under the express terms of the clause or clauses, if any specified in the Schedule, or (II) with respect to which the Contractor has failed to insure as required or maintain insurance as approved by ------------[*] or (III) which results from willful misconduct or lack of good faith on the part of any of the Contractor's directors or officers, or on the part of any of his managers, superintendents, or other equivalent representatives, who has supervision or direction of (1) all or substantially all of the Contractor's business, or (2) all or substantially all of the Contractor's operations at any one plant or separate location in which this contract is being performed, or (3) a separate and complete major industrial operation in connection with the performance of this contract. The foregoing shall not restrict the right of the Contractor to be reimbursed for the cost of insurance maintained by the Contractor in connection with the performance of this contract, other than insurance required to be submitted for approval or required to be procured and maintained pursuant to the provisions of this clause, provided such cost would constitute Allowable Cost under the clause of this contract entitled "Allowable Cost, Fixed Fee and Payment".

(d) The Contractor shall give the Government or its representatives immediate notice of any suit or action filed, or prompt notice of any claim made, against the Contractor arising out of the performance of this contract, the cost and expense of which may be reimbursable to the Contractor under the provisions of this contract, and the risk of which is then uninsured or in which the amount claimed exceeds the amount of coverage. The Contractor shall furnish immediately to the Government copies of all pertinent papers received by the Contractor. If the amount of the liability claimed exceeds the amount of coverage, the Contractor shall authorize representatives of the Government to collaborate with counsel for the insurance carrier, if any, in settling or defending such claim. If the liability is not insured or covered by bond, the Contractor shall, if required by the Government, authorize representatives of the Government to settle or defend any such claim and to represent the Contractor in or take charge of any litigation in connection therewith: *Provided, however,* That the Contractor may, at its own expense, be associated with the representatives of the Government in the settlement or defense of any such claim or litigation.

In the foregoing clause, insert, in the contracts of the Department of the Army and the Department of the Air Force, the words "the Contracting Officer," and insert, in the contracts of the Department of the Navy, the words "the Depart-

---

[1] In the foregoing clause, insert, in contracts of the Department of the Army the words "the Contracting Officer," and insert, in contracts of the Department of the Navy and the Department of the Air Force, the activity designated in accordance with Departmental procedures.

*See text following the contract clause.

*See text following the contract clause.

ment," in the space designated by an asterisk (_____*).

[25 F.R. 14198, Dec. 31, 1960, as amended at 32 F.R. 5508, Apr. 4, 1967]

### § 7.203–23 Authorization and consent.

Insert the contract clause set forth in § 9.102–1 of this subchapter.

[25 F.R. 14199, Dec. 31, 1960]

### § 7.203–24 Notice and assistance regarding patent infringement.

Insert the contract clause set forth in § 9.104 of this subchapter.

[25 F.R. 14199, Dec. 31, 1960]

### § 7.203–25 Communist areas.

In accordance with the requirements of § 6.403, insert the contract clause set forth therein.

[32 F.R. 518, Jan. 18, 1967]

### § 7.203–26 Utilization of concerns in labor surplus areas.

In accordance with the requirements of § 1.805–3(a) of this subchapter, insert the clause set forth therein.

[27 F.R. 3451, Apr. 11, 1962]

### § 7.203–27 Payment for overtime premiums.

In accordance with the requirements of § 12.102 of this chapter, insert the contract clause set forth in § 12.102–6 of this chapter.

[32 F.R. 12098, Aug. 23, 1967]

### § 7.203–28 Competition in subcontracting.

Insert the contract clause set forth in § 7.104–40.

[27 F.R. 6134, June 29, 1962]

### § 7.203–29 Audit and records.

Insert the clause set forth in § 7.104–41(c).

[28 F.R. 4887, May 16, 1963]

### § 7.203–30 Price reduction for defective cost or pricing data.

In accordance with the instructions in § 7.104–20(a), insert the clause set forth therein.

[30 F.R. 1736, Feb. 9, 1965]

### § 7.203–31 Subcontractor cost and pricing data.

Insert the clause set forth in § 7.104–42(a).

[28 F.R. 4887, May 16, 1963]

### § 7.204 Clause to be used when applicable.

[25 F.R. 14199, Dec. 31, 1960]

### § 7.204–1 Clauses for contracts involving construction work.

(a) In accordance with the requirements of § 18.703 of this chapter, insert the clauses entitled:

"Davis-Bacon Act."
"Contract Work Hours Standards Act—Overtime Compensation."
"Apprentices."
"Payrolls and Basic Records."
"Compliance with Copeland Regulations.
"Withholding of Funds."
"Subcontracts."
"Contract Termination—Debarment."
"Employee Compensation—Cape Kennedy, Patrick Air Force Base, and Merritt Island Launch Area."

(b) In accordance with the requirements of § 18.509–5 of this chapter, insert the clause entitled Buy American Act.

[32 F.R. 518, Jan. 18, 1967 and 32 F.R. 4258, Mar. 18, 1967]

### § 7.204–2 Workmen's compensation and war hazard insurance overseas.

In accordance with § 10.403 of this chapter, insert one or both of the clauses depending on whether all contract employees are subject to the Defense Base Act or whether the Act has been waived as to all or part of the contract employees. Also insert the clause Reimbursement for War Hazard Losses and the schedule language at § 10.502 (b) and (c) of this chapter according to the instructions stated in those paragraphs.

[34 F.R. 9269, June 12, 1969]

### § 7.204–3 Buy American Act.

In accordance with the requirements of § 6.104–5 of this chapter, insert the clause set forth therein.

[25 F.R. 14199, Dec. 31, 1960]

### § 7.204–4 Notice to the Government of labor disputes.

Insert the clause set forth in § 7.104–4 in all contracts involving the furnishing or production of any item on the Department of Defense Master Urgency List and in any other contract of a class or kind which the Head of the Procuring Activity concerned determines to be appropriate for the use of such a clause.

[25 F.R. 14199, Dec. 31, 1960]

### § 7.204–5 Patent indemnity.

In accordance with the requirements of § 9.103 of this chapter, insert the appropriate contract clause with additional provisions as prescribed, set forth in said section.

[25 F.R. 12199, Dec. 31, 1960]

**Exhibit 8b**



# National Defense

# 32

PARTS 1 TO 39,

VOLUME II

[Contains DAR Sections VII–XV]

**Revised as of September 1, 1982**

CONTAINING
A CODIFICATION OF DOCUMENTS
OF GENERAL APPLICABILITY
AND FUTURE EFFECT

AS OF SEPTEMBER 1, 1982

*With Ancillaries*

Published by
the Office of the Federal Register
National Archives and Records Service
General Services Administration

as a Special Edition of
the Federal Register



**1 JULY 1976**                **Table of Contents**                **5**

*Paragraph*                                                                                     *Page*

7-109.3     Retroactive Price Redetermination After
            Completion ............................................. 7:167

### PART 2—Cost-Reimbursement Type Supply Contracts

7-200     Scope of Part ................................................... 7:170
7-201     Reserved........................................................... 7:170
7-202     Applicability .................................................... 7:170
7-203     Required Clauses.............................................. 7:170
          7-203.1     Definitions............................................. 7:170
          7-203.2     Changes................................................. 7:170
          7-203.3     Limitation of Cost or Funds ............... 7:171
          7-203.4     Allowable Cost, Fee, and Payment.................. 7:173
          7-203.5     Inspection of Supplies and Correction of De-
                      fects ................................................ 7:179
          7-203.6     Assignment of Claims........................ 7:180
          7-203.7     Examination of Records by Comptroller
                      General ............................................. 7:180
          7-203.8     Subcontracts......................................... 7:180
          7-203.9     Utilization of Small Business Concerns .......... 7:182
          7-203.10    Termination.......................................... 7:182
          7-203.11    Excusable Delays................................... 7:186
          7-203.12    Disputes.............................................. 7:186
          7-203.13    Renegotiation ....................................... 7:186
          7-203.14    Commercial Bills of Lading Covering Ship-
                      ment To or From Contractor's Plant .......... 7:186
          7-203.15    Convict Labor ...................................... 7:186
          7-203.16    Contract Work Hours and Safety Standards
                      Act—Overtime Compensation.................. 7:187
          7-203.17    Walsh-Healey Public Contracts Act ............... 7:187
          7-203.18    Equal Opportunity................................. 7:187
          7-203.19    Officials Not To Benefit ........................ 7:187
          7-203.20    Covenant Against Contingent Fees ............... 7:187
          7-203.21    Government Property.............................. 7:187
          7-203.22    Insurance—Liability to Third Persons............ 7:191
          7-203.23    Authorization and Consent ..................... 7:192
          7-203.24    Notice and Assistance Regarding Patent In-
                      fringement ........................................... 7:192
          7-203.25    Communist Areas.................................. 7:192
          7-203.26    Utilization of Concerns in Labor Surplus
                      Areas ................................................. 7:192
          7-203.27    Payment for Overtime Premiums .................. 7:192
          7-203.28    Competition in Subcontracting ................... 7:193
          7-203.29    Audit by Department of Defense ................. 7:193
          7-203.30    Price Reduction for Defective Cost or Pricing
                      Data .................................................. 7:193
          7-203.31    Subcontractor Cost and Pricing Data............ 7:193
          7-203.32    Listing of Employment Openings .................. 7:193
          7-203.33    Employment of the Handicapped.................. 7:193
          7-203.34    Clean Air and Water .............................. 7:193
7-204     Clauses To Be Used When Applicable ......................... 7:193

**ARMED SERVICES PROCUREMENT REGULATION ,**

**9**

Case 1:12-cv-03040-KBF   Document 83-1   Filed 02/01/13   Page 46 of 48

## CONTRACT CLAUSES AND SOLICITATION PROVISIONS

### PART 2—Cost-Reimbursement Type Supply Contracts

**7–200 Scope of Part.** This Part sets forth uniform contract clauses for use in cost-reimbursement type supply contracts as defined in 7–202.

**7–201 Reserved.**

**7–202 Applicability.** As used in this Part, the term "cost-reimbursement type supply contract" shall mean any contract (other than a letter contract, notice of award; or a supplemental agreement to a contract which does not effect a new procurement) entered into on a cost reimbursement basis as covered in 3–405 for supplies other than (i) the construction, alteration or repair of buildings, bridges, roads, or other kinds of real property; (ii) experimental, developmental, or research work; (iii) facilities to be provided by the Government under a "facilities contract" as defined in 7–701 and Section XIII of this Regulation or (iv) general contracts for communication services and facilities.

**7–203 Required Clauses.** The following clauses shall be inserted in all cost-reimbursement type supply contracts.

**7–203.1** *Definitions.* Insert the clause in 7–103.1. Additional definitions may be included in such clause *provided* they are not inconsistent with the provisions of this Regulation.

**7–203.2** *Changes.*

**CHANGES (1967 APR)**

(a) The Contracting Officer may at any time, by a written order, and without notice to the sureties, if any, make changes, within the general scope of this contract, in any one or more of the following:

(i) drawings, designs, or specifications, where supplies to be furnished are to be specially manufactured for the Government in accordance therewith;

(ii) method of shipment or packing; and

(iii) place of delivery.

(b) If any such change causes an increase or decrease in the estimated cost of, or the time required for, the performance of any part of the work under this contract, whether changed or not changed by any such order, or otherwise affects any other provision of this contract, an equitable adjustment shall be made:

(i) in the estimated cost or delivery schedule, or both;

(ii) in the amount of any fixed fee to be paid to the Contractor; and

(iii) in such other provisions of the contract as may be so affected, and the contract shall be modified in writing accordingly.

Any claim by the Contractor for adjustment under this clause must be asserted within thirty (30) days from the date of receipt by the Contractor of the notification of change; *provided*, however, that the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled "Disputes." However, except as provided in paragraph (c) below, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

(c) Notwithstanding the provisions of paragraphs (a) and (b) above, the estimated cost of this contract and, if this contract is incrementally funded, the funds allotted for the performance thereof, shall not be increased or deemed to be increased except by specific written modification of the contract indicating the new contract estimated cost and, if this contract is incrementally funded, the new amount allotted to the contract. Until such modification is made, the Contractor shall not be obligated to continue performance or incur costs beyond the point established in the clause of this contract entitled "Limitation of Cost" or "Limitation of Funds."

**(End of clause)**

7–203.2

## ARMED SERVICES PROCUREMENT REGULATION

DPC #76-5   15 OCT. 1976

7:191

## CONTRACT CLAUSES AND SOLICITATION PROVISIONS

7-203.22 *Insurance—Liability to Third Persons.*

### INSURANCE—LIABILITY TO THIRD PERSONS (1966 DEC)

(a) The Contractor shall procure and thereafter maintain workmen's compensation, employer's liability, comprehensive general liability (bodily injury) and comprehensive automobile liability (bodily injury and property damage) insurance, with respect to performance under this contract, and such other insurance as ..........* may from time to time require with respect to performance under this contract; *provided*, that the Contractor may with the approval of .................* maintain a self-insurance program, and *provided further*, that with respect to workmen's compensation the Contractor is qualified pursuant to statutory authority. All insurance required pursuant to the provisions of this paragraph shall be in such form, in such amounts, and for such periods of time, as ..........* may from time to time require or approve, and with insurers approved by ..........*. (*See text at end of clause.*)

(b) The Contractor agrees, to the extent and in the manner required by ..........*, to submit for the approval of ..........* any other insurance maintained by the Contractor in connection with the performance of this contract and for which the Contractor seeks reimbursement hereunder. (*See text at end of clause.*)

(c) The Contractor shall be reimbursed: (i) for the portion allocable to this contract of the reasonable cost of insurance as required or approved pursuant to the provisions of this clause, and (ii) without regard to and as an exception to the "Limitation of Cost" or the "Limitation of Funds" clause of this contract, for liabilities to third persons for loss of or damage to property (other than property (A) owned, occupied or used by the Contractor or rented to the Contractor, or (B) in the care, custody, or control of the Contractor), or for death or bodily injury, not compensated by insurance or otherwise, arising out of the performance of this contract, whether or not caused by the negligence of the Contractor, his agents, servants or employees, *provided* such liabilities are represented by final judgments or settlements approved in writing by the Government, and expenses incidental to such liabilities, except liabilities (I) for which the Contractor is otherwise responsible under the express terms of the clause or clauses, if any, specified in the Schedule, or (II) with respect to which the Contractor has failed to insure as required or maintain insurance as approved by ..........* (*See text at end of clause.*) or (III) which results from willful misconduct or lack of good faith on the part of any of the Contractor's directors or officers, or on the part of any of his managers, superintendents, or other equivalent representatives, who has supervision or direction of (1) all or substantially all of the Contractor's business, or (2) all or substantially all of the Contractor's operations at any one plant or separate location in which this contract is being performed, or (3) a separate and complete major industrial operation in connection with the performance of this contract. The foregoing shall not restrict the right of the Contractor to be reimbursed for the cost of insurance maintained by the Contractor in connection with the performance of this contract, other than insurance required to be submitted for approval or required to be procured and maintained pursuant to the provisions of this clause, *provided* such cost would constitute Allowable Cost under the clause of this contract entitled "Allowable Cost, Fixed Fee and Payment".

(d) The Contractor shall give the Government or its representatives immediate notice of any suit or action filed, or prompt notice of any claim made, against the Contractor arising out of the performance of this contract, the cost and expense of which may be reimbursable to the Contractor under the provisions of this contract and the risk of which is then uninsured or in which the amount claimed exceeds the amount of coverage. The Contractor shall furnish immediately to the Government copies of all pertinent papers received by the Contractor. If the amount of the liability claimed exceeds the amount of coverage, the Contractor shall authorize representatives of the Government to collaborate with counsel for the insurance carrier, if any, in settling or defending such claim. If the liability is not insured or covered by bond, the Contractor shall, if required by the Government, authorize representatives of the Government to settle or defend any such claim and to represent the Contractor in or take charge of any litigation in connection therewith; *provided, however*, that the Contractor may, at his own expense, be associated with the representatives of the Government in the settlement or defense of any such claim or litigation.

**(End of clause)**

7-203.22

## ARMED SERVICES PROCUREMENT REGULATION

7:192

## CONTRACT CLAUSES AND SOLICITATION PROVISIONS

In the foregoing clause, insert, in contracts of the Department of the Army, the Department of the Air Force, and the Department of the Navy, the words "the Contracting Officer," and insert, in contracts of the other Departments, the words "the Department," in the space designated by an asterisk ( * ).

**7–203.23** *Authorization and Consent.* In accordance with 9–102.1, insert the clause in 7–103.22.

**7–203.24** *Notice and Assistance Regarding Patent Infringement.* In accordance with 9–104, insert the clause in 7–103.23.

**7–203.25** *Communist Areas.* In accordance with 6–403, insert the clause in 7–103.15.

**7–203.26** *Utilization of Concerns in Labor Surplus Areas.* In accordance with 1–805.3, insert one or both of the clauses in 7–104.20.

**7–203.27** *Payment for Overtime Premiums.* In accordance with 12–102.6, insert the following clause.

**PAYMENT FOR OVERTIME PREMIUMS (1967 JUN)**

(a) Allowable cost shall not include any amount on account of overtime premiums except when (i) specified in (d) below or (ii) paid for work—

    (A) necessary to cope with emergencies such as those resulting from accidents, natural disasters, breakdowns of production equipment, or occasional production bottlenecks of a sporadic nature;

    (B) by indirect labor employees such as those performing duties in connection with administration, protection, transportation, maintenance, standby plant protection, operation of utilities, or accounting;

    (C) in the performance of tests, industrial processes, laboratory procedures, loading or unloading of transportation media, and operations in flight or afloat, which are continuous in nature and cannot reasonably be interrupted or otherwise completed; or

    (D) which will result in lower overall cost to the Government.

(b) The cost of overtime premiums otherwise allowable under (a) above shall be allowed only to the extent the amount thereof is reasonable and properly allocable to the work under this contract.

(c) Any request for overtime, in addition to any amount specified in (d) below, will be for all overtime which can be estimated with reasonable certainty shall be used for the remainder of the contract, and shall contain the following:

    (i) identification of the work unit, such as the department or section in which the requested overtime will be used, together with present workload, manning and other data of the affected unit, sufficient to permit an evaluation by the Contracting Officer of the necessity for the overtime;

    (ii) the effect that denial of the request will have on the delivery or performance schedule of the contract;

    (iii) reasons why the required work cannot be performed on the basis of utilizing multishift operations or by the employment of additional personnel; and

    (iv) the extent to which approval of overtime would affect the performance or payments in connection with any other Government contracts, together with any identification of such affected contracts.

(d) The Contractor is authorized to perform overtime, in addition to that performed under (a)(ii), to the extent that the overtime premium does not exceed *................

**(End of clause)**

*Insert the amount, in dollars, agreed to during negotiations as representing the overtime premiums applicable to overtime not reimbursable under the exceptions contained in (a)(ii) of the clause. If it was agreed that the contract could be performed without the use of additional overtime, insert "Zero."

**7–203.27**

## ARMED SERVICES PROCUREMENT REGULATION