# Exhibit 57
# FILED UNDER SEAL

# Exhibit 58
# FILED UNDER SEAL

# Exhibit 59
# FILED UNDER SEAL

# Exhibit 60
# FILED UNDER SEAL

# Exhibit 61
# FILED UNDER SEAL

# Exhibit 62
# FILED UNDER SEAL

# Exhibit 63

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

TRAVELERS INDEMNITY COMPANY,
TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT, formerly known as TRAVELERS
INDEMNITY COMPANY OF RHODE ISLAND,
TRAVELERS CASUALTY AND SURETY
COMPANY, formerly known as THE AETNA
CASUALTY AND SURETY COMPANY, and
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, formerly known as
TRAVELERS INDEMNITY COMPANY OF
ILLINOIS,

          Plaintiffs,

       v.

NORTHROP GRUMMAN CORPORATION,
NORTHROP GRUMMAN SYSTEMS
CORPORATION,

          Defendants,

*and*

CENTURY INDEMNITY COMPANY, eventual
successor in interest to INSURANCE COMPANY
OF NORTH AMERICA,

          Nominal Defendant.

------------------------------------------------------------- x

Case No. 12-cv-03040 (KBF) (FM)

**NORTHROP GRUMMAN'S
FIRST NOTICE OF
DEPOSITION OF PLAINTIFFS
AND COUNTERCLAIM
DEFENDANTS TRAVELERS
PURSUANT TO RULE 30(b)(6)**

**ECF CASE**

     PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 30(b)(6), Defendant Northrop

Grumman Corporation and Defendant/Counterclaim Plaintiff Northrop Grumman Systems

Corporation, through their counsel, will take the deposition upon oral examination of

Plaintiffs/Counterclaim Defendants Travelers Indemnity Company, Travelers Indemnity

Company of Connecticut (formerly known as Travelers Indemnity Company of Rhode Island),

Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety

DC: 4691156-3

Company), and Travelers Property Casualty Company of America (formerly known as Travelers Indemnity Company of Illinois) (collectively "Travelers") on January 15, 2013, commencing at 9:30 a.m. at the offices of Covington & Burling LLP, The New York Times Building, 620 Eighth Avenue, New York, NY 10018. The deposition shall be conducted before a notary public or other officer authorized by law to administer oaths, shall be recorded by a certified stenographic reporter and a videographer, and shall continue from day to day until completed. You are invited to attend and cross-examine to the extent authorized by the Federal Rules of Civil Procedure.

Travelers is requested to designate one or more officers, directors, managing agents, or other knowledgeable persons who consent to testify on Travelers' behalf concerning each of the Examination Matters listed below.

Please take further notice that Northrop Grumman reserves the right to take further depositions of Travelers pursuant to Rule 30(b)(6) on additional topics not addressed herein.

## DEFINITIONS AND INSTRUCTIONS

1.     "YOU" means Travelers Indemnity Company, Travelers Indemnity Company of Connecticut (formerly known as Travelers Indemnity Company of Rhode Island), Travelers Casualty and Surety Company (formerly known as The Aetna Casualty and Surety Company), and Travelers Property Casualty Company of America (formerly known as Travelers Indemnity Company of Illinois), and each of YOUR predecessors, successors, present and former affiliates, subsidiaries, officers, directors, agents, servants and employees, and all persons acting or purporting to act on YOUR behalf who sold or issued liability insurance policies.

2.     "NORTHROP GRUMMAN" means Northrop Grumman Corporation and Northrop Grumman Systems Corporation and any and all of their present and former subsidiaries, present and former affiliated companies, predecessors and affiliates of predecessors

2

(including but not limited to Grumman Aircraft Engineering Corporation, Grumman Corporation, Grumman Aerospace Corporation, and Grumman Allied Industries, Inc. (collectively, "Grumman")), and successors and their affiliates, as well as any person acting or purporting to act on behalf of any such entity.  The term excludes predecessors of Northrop Grumman Corporation and Northrop Grumman Systems Corporation that are unrelated to the Environmental Claims at issue in Phase 1 of this litigation -- namely, non-Grumman-related entities.

      3.    "DOCUMENT" has the broadest meaning permissible under Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, papers (whether handwritten or typed), memoranda, correspondence, notes, calendar entries, diaries, logs, case files, photographs, reports, receipts, invoices, ledger entries, microfilm, microfiche, computer printouts, tape recordings, disks, and other sources of electronically or magnetically maintained information.

      4.    "THE FACTUAL BASIS" means (a) all possible facts, circumstances, and factual predicates supporting or tending to support, or refuting or tending to refute, a particular assertion or affirmative defense; (b) all DOCUMENTS supporting or tending to support, or refuting or tending to refute, a particular assertion or affirmative defense, including all DOCUMENTS relevant to YOUR deposition testimony and/or consulted in preparing YOUR deposition testimony; and (c) all persons having knowledge of any facts, circumstances, or factual predicates supporting or tending to support, or refuting or tending to refute, a particular assertion or affirmative defense.

5.      "ENVIRONMENTAL CLAIM" means any claim that arises out of the actual or alleged discharge, release, seepage, escape, or dispersal of actual or alleged pollutants into or upon ground, soil, surface water, groundwater, or air.

6.      For purposes of construing the Examination Matters, the singular includes the plural, the plural includes the singular, and the words "and" and "or" are to be construed conjunctively or disjunctively as necessary to make the Examination Matters inclusive rather than exclusive.

## EXAMINATION MATTERS

1.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that NORTHROP GRUMMAN "has not met its duties to provide notice as required by the Policies."

2.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that NORTHROP GRUMMAN "has not met its duties to cooperate with Travelers in pursuing any settlements or suits and enforcing any rights of indemnity or contribution against any person relating to a claim under the Policies."

3.      THE FACTUAL BASIS for YOUR affirmative defense in YOUR Reply to Counterclaims of Northrop Grumman Systems Corporation that coverage is barred by the applicable statutes of limitations and/or the applicable contractual limitations periods.

4.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that NORTHROP GRUMMAN has "failed to mitigate, minimize or avoid any loss."

5.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that "any injuries or damage are the result of voluntary payments or obligations that [NORTHROP GRUMMAN] incurred without Travelers' consent."

4

6.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that "the injuries or damage in the Underlying Pollution Claims and Suits do not arise from and are not caused by an *occurrence* within the meaning of the Policies."

7.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that "the injuries or damage in the Underlying Pollution Claims fall within the scope of any pollution exclusion under the Policies."

8.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that coverage is barred because "the injuries or damage in the Underlying Pollution Claims and Suits arise from damage to property owned, rented or used by [NORTHROP GRUMMAN]."

9.      THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that coverage is barred because "the injuries or damage were expected or intended by [NORTHROP GRUMMAN]."

10.     THE FACTUAL BASIS for YOUR assertion in YOUR Complaint and for YOUR affirmative defense in YOUR Reply to Counterclaims of Northrop Grumman Systems Corporation, respectively, that coverage is barred because "the injuries or damage occurred prior to the commencement or after the expiration of the Policies" and/or because "an occurrence … did not happen during the policy periods of the Policies."

11.     THE FACTUAL BASIS for YOUR assertion in YOUR Complaint and YOUR affirmative defense in YOUR Reply to Counterclaims of Northrop Grumman Systems Corporation, respectively, that "premiums that are due and owing under the Policies, including without limitation, retrospective premiums, have not been paid" and that "any indemnification for liability is subject to any applicable deductibles, retentions, retrospective premiums, and limits of liability contained in the Policies."

5

12.     THE FACTUAL BASIS for YOUR assertion in YOUR Complaint that coverage is barred because "the occurrence, accident, injury and/or damage for which recovery is sought was known and/or should have been known or was in progress prior to any period of the Policies."

13.     THE FACTUAL BASIS for any other defense to coverage asserted in YOUR Complaint or YOUR Reply to Counterclaims of Northrop Grumman Systems Corporation that YOU intend to pursue against NORTHROP GRUMMAN.

14.     YOUR public statements since 1967, including any regulatory filings or communications with any insurance regulator, governmental body, agency or authority, regarding coverage provided by any policies issued by YOU for ENVIRONMENTAL CLAIMS.

15.     The drafting history of, YOUR attempts to secure regulatory approval for, and the meaning, construction and application given by YOU to the Travelers qualified pollution exclusion contained in the general liability policies YOU sold to NORTHROP GRUMMAN between 1967 and 1985.

16.     YOUR policies, practices, procedures, or guidelines since 1967 for investigating, handling, adjusting, or disposing of ENVIRONMENTAL CLAIMS.

17.     YOUR policies, practices, procedures, or guidelines since 1967 for evaluating whether to accept or decline coverage of ENVIRONMENTAL CLAIMS.

18.     YOUR understanding of the procedures followed by the U.S. Environmental Protection Agency and the New York State Department of Environmental Conservation since 1967 when bringing ENVIRONMENTAL CLAIMS against entities such as NORTHROP GRUMMAN, including but not limited to YOUR understanding of the terms "claim" and "suit."

19.     The responsibilities of each of YOUR organizational units, offices, departments, or divisions having responsibility since 1967 for the handling and disposition of ENVIRONMENTAL CLAIMS.

20.     YOUR policies, practices, procedures, or guidelines since 1967 for applying the notice provisions, loss payable provisions, and/or no action provisions in YOUR policies to ENVIRONMENTAL CLAIMS.

21.     YOUR policies, practices, procedures, or guidelines since 1967 for applying the "other insurance" provisions and "Defense, Supplementary Payments" provisions contained in any policy YOU issued to NORTHROP GRUMMAN from 1967 to 1985.

22.     YOUR policies, practices, procedures, or guidelines since 1967 for applying any pollution exclusion YOU contend bars coverage for any Phase 1 ENVIRONMENTAL CLAIM, either in whole or in part.

23.     YOUR policies, practices, procedures, or guidelines since 1967 for inspecting or evaluating the operations of NORTHROP GRUMMAN or its corporate predecessors for loss prevention, safety, engineering, risk evaluation, or coverage determination purposes.

24.     The nature and extent of each investigation YOU have conducted since 1967 of NORTHROP GRUMMAN'S operations and facilities in Bethpage, New York and Calverton, New York.

25.     YOUR marketing and sale of so-called "Environmental Hazard Policies."

26.     The drafting history of, as well as YOUR attempt to secure regulatory approval for, YOUR so-called "Environmental Hazard Policies."

27.    The underwriting, negotiation, placing, and procurement of any liability insurance policy, including "Environmental Hazard Policies," that YOU sold to NORTHROP GRUMMAN.

28.    YOUR handling of notices and claims concerning ENVIRONMENTAL CLAIMS submitted to YOU by NORTHROP GRUMMAN.

29.    The application and alleged effect of any premium rating plan that YOU contend governs any policy that YOU sold to NORTHROP GRUMMAN and that is at issue in Phase 1 of this litigation.

30.    All portions of any and all electronic databases maintained or used by YOU that relate in any way to, or contain any information about, NORTHROP GRUMMAN, including but not limited to portions of databases that relate to, or contain any information about, the sites, locations, and/or claims at issue in Phase 1 of this litigation and/or about any policies issued by YOU to NORTHROP GRUMMAN under which NORTHROP GRUMMAN has claimed coverage or that may provide coverage for any Phase 1 claim.

31.    The search conducted for information and/or DOCUMENTS in YOUR possession, custody, or control responsive to NORTHROP GRUMMAN's discovery requests.

32.    The search conducted for information and/or DOCUMENTS in YOUR possession, custody, or control relating to the Examination Matters listed above.


Dated: New York, NY                 COVINGTON & BURLING LLP
       December 31, 2012

                                    By: _____
                                        John F. Scanlon

8

William F. Greaney
Georgia Kazakis
John F. Scanlon
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
Tel: (202) 662-6000

P. Benjamin Duke
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
Tel: (212) 841-1000

*Attorneys for Northrop Grumman Corporation
and Northrop Grumman Systems Corporation*

9

# Exhibit 64
# FILED UNDER SEAL

# Exhibit 65

# NYLS'
# GOVERNOR'S
# BILL JACKET

## 1971
## CHAPTER 766

### 28 PAGES

**NYLS has added the Senate debate transcript.
Assembly debate was not transcribed in 1971.
Also see, Chapter 765 of 1971.**

## Terms and Conditions

This legislative history has been furnished by New York Legislative Service, Inc. It consists of the official New York Governor's Bill Jacket, with enhancements consisting of any other relevant material that we can supply such as Committee Reports, Commission Reports, Senate and Assembly debate transcripts, public hearing transcripts, memoranda, and news clippings. It *may* be specifically tailored to a section of the Statutes which you requested, and may also be updated from time to time. These additional pages are clearly marked and are copyrighted as a compilation.

**Legislative histories purchased on behalf of your client may not be copied for archiving in your library, nor for distribution. This compiled legislative history may not be loaned or copied, nor submitted for inclusion on a union list for loan or copy.**

New York Legislative Service is a completely self-supporting, not-for-profit organization which operates as a service to the community. Essentially, our expert services are provided at cost, and we keep our fees as low as possible. These document fees are based upon a one-time usage by our clients and are our main source of income. Thank you for supporting our organization and helping us to maintain our services!

## © Copyrighted as a compilation by

# NEW YORK LEGISLATIVE SERVICE, INC.

The Research Specialists on Legislative Intent and Current Legislation.
A NEW YORK NOT-FOR-PROFIT CORPORATION. ESTABLISHED 1932.
15 Maiden Lane, New York, NY  10038   (212) 962-2826   www.nyls.org



**NEW YORK STATE**
**ATOMIC AND SPACE DEVELOPMENT AUTHORITY**
230 PARK AVENUE · NEW YORK, N. Y. 10017 · (212) MU 9-5070

MAURICE AXELRAD
SECRETARY AND ASSOCIATE COUNSEL

June 16, 1971

Michael T. Whiteman, Esq.
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York  12224

<u>Re:  30-day bill, S. 7042</u>

Dear Mr. Whiteman:

It is our understanding that the effect of the sub-
ject bill is to permit persons licensed by the U.S.
Atomic Energy Commission (e.g. persons licensed to con-
struct or operate a production or utilization facility
under 10 CFR Part 50 or persons licensed to possess or
use special nuclear material, source material or byprod-
uct material under 10 CFR Parts 70, 40 or 30) and persons
licensed by the State Departments of Labor or Health or
by the New York City Department of Health under regulatory
radiation control programs compatible with the Federal
program to continue to obtain nuclear liability insurance
(e.g., insurance of the type offered by Nuclear Energy
Liability Insurance Association and Mutual Atomic Energy
Liability Underwriters) without the addition to such in-
surance policies of the exclusion specified in the last
sentence of subdivisions 13 and 14 of section 46 of the
Insurance Law, as proposed to be amended by another bill
(A. 6952) presently before the Governor entitled "An act to
amend the insurance law, in relation to prohibiting cov-
erage against environmental pollution."

If A. 6952 is approved, it is essential that the
subject bill also be approved in order that:

-2-

(1)   Persons licensed by the U.S. Atomic Energy
Commission to operate production or utilization facili-
ties (e.g., reactors and fuel reprocessing plants) can
continue to utilize insurance policies issued by NELIA
and MAELU as proof of financial protection under the
Price-Anderson provisions of the Atomic Energy Act of
1954, as amended.  Otherwise such licensees will be
faced with substantial difficulties and may have to
commit substantial sums of money in order to satisfy the
financial protection requirements.

(2)   Other persons licensed by the AEC and by State
agencies under the State's compatible radiation control
program can continue to obtain standard NELIA and MAELU
policies to cover their activities.  Otherwise even
though these activities fully comply with stringent
Federal or State requirements pertaining to effluents from
their operations, such licensees will be faced with a
potential gap in their insurance coverage.  Such a gap
would greatly discourage the expansion of atomic energy
activities within the State and the location of new ac-
tivities within the State, all in complete negation of
the State's statutory public policy since 1959 of en-
couraging the maximum development and use of atomic
energy for peaceful and productive purposes, consistent
with the public health and safety.  Moreover, there is
no reason known to the Authority why such a gap should
exist which would deprive both the licensee and any
members of the affected public of the benefits of insur-
ance protection even in situations where the licensee is
conducting his activities in accordance with all perti-
nent requirements.

For the foregoing reasons, the Authority recommends
that the subject bill be approved if A. 6952 is approved.

Sincerely yours,

Maurice Axelrad

MA:mp

R. BURDELL BIXBY
    CHAIRMAN AND
    SECRETARY

EDWIN J. FEHRENBACH
    VICE CHAIRMAN

ALTON G. MARSHALL
    TREASURER

JOHN A. TIESLER
    EXECUTIVE DIRECTOR

LEGAL DEPARTMENT

THEODORE H. KLINE
    COUNSEL

**NEW YORK STATE THRUWAY AUTHORITY**

DELAWARE PLAZA
ELSMERE, NEW YORK

MAILING ADDRESS: P.O. BOX 189, ALBANY, N. Y. 12201

June 22, 1971

The Honorable Michael Whiteman
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York    12224

Re:  Senate 7042 by Committee on Rules

Dear Mr. Whiteman:

    The above bill is before the Governor for
executive action and you have asked for our comments
and recommendations with respect thereto.

    This bill would amend subdivisions 13 and 14
of Section 46 of the Insurance Law, as amended by a
chapter of the Laws of 1971.  Section 46 of the Insurance
Law lists the kinds of insurance which may be authorized
in this State and subdivisions 13 and 14 refer respectively
to personal injury liability insurance and property damage
liability insurance.

    The chapter of the Laws of 1971, to which this
bill refers, is Assembly 6952, which has not yet been
signed.

    Assembly 6952 amends subdivisions 13 and 14 to
provide that personal injury and property damage liability
policies may not be written to protect commercial and
industrial enterprises against their legal liabilities
arising out of pollution or contamination caused by the
discharge, dispersal, release or escape of any pollutants,
irritants or contaminants into or upon land, the atmosphere
or water unless such discharge, dispersal, release or
escape is sudden and accidental.  Senate 7042, the subject
bill, would further amend these subdivisions to except
from this prohibition, policies covering nuclear facilities

The Honorable Michael Whiteman    - 2 -        June 22, 1971

licensed by the Atomic Energy Commission of the United
States, as meeting federal standards of radiological health
and safety and nuclear facilities licensed by the State as
meeting such federal standards, and also excepting such
coverage which is purchased to satisfy the financial
responsibility requirements of any federal law.

Accordingly, if both bills are signed, sub-
divisions 13 and 14 would provide that no personal injury
or property damage liability insurance could be written
protecting a commercial or industrial enterprise against
legal liability from pollution, except where such discharge,
dispersal, release or escape is sudden and accidental,
unless it was a properly licensed nuclear facility or un-
less the insurance was purchased to satisfy the financial
responsibility required by the federal law, as set forth
above.

We offer no objection to the approval of this
bill.

This act would take effect on September 1, 1971.

Sincerely,

THEODORE H. KLINE
Counsel

THK:mcs

*Chap. 166*

NEW YORK STATE
**DEPARTMENT OF TRANSPORTATION**

T. W. PARKER, Commissioner

1220 Washington Avenue, State Campus, New York 12226

DEPARTMENT OF TRANSPORTATION                         DATE: JUN 2 5 19..

SENATE 7042                             INTRODUCED BY:   Committee on Rules

RECOMMENDATION:  No objection.

STATUTES INVOLVED:  Section 46 (13) of the Insurance Law.

EFFECTIVE DATE:  The first day of September next succeeding the date on
which it shall have become a law.

DISCUSSION:

Purpose of bill.  To amend the Insurance Law, in relation to nuclear
facilities and Federal financial responsibility requirements.

The subject bill would amend Section 46 of the Insurance Law, to except
personal injury and property damage liability insurance policies covering
nuclear facilities licensed by atomic energy commission of United States
as meeting Federal standards of radiological health and safety and nuclear
facilities licensed by State as meeting such standards, and those purchased
to satisfy financial responsibility requirements of Federal Law, from
provisions requiring that policies issued to commercial or industrial
enterprises providing insurance against liability specified hereunder,
expressly exclude liability arising out of pollution or contamination
caused by discharge, release or escape of pollutants, irritants or
contaminants.

The provisions of the subject bill do not affect the functions or
responsibilities of this Department.  We, therefore, have no objection
to enactment of the bill.

T. W. PARKER
Commissioner

THIRTY-DAY BILL

B-201                          BUDGET REPORT ON BILLS          Session Year: 1971

SENATE                                    Introduced by:                ASSEMBLY

No.  7042                          Committee on Rules          No.

Law:  Insurance                      Sections:   46 (13) and (14)

Division of the Budget recommendation on the above bill:

Approve: _____X_____  Veto: _____  No Objection: _____  No Recommendation: _____
(but see recommendation)
xxxxxxxxxxxxxxxxx

1-2. Subject and purpose and summary of provisions:  This bill, which would
take effect September 1, 1971, would amend subsections 13 and 14 of
section 46 of the Insurance Law to exempt from the provision forbidding
the sale of policies to protect against the liability of commercial
enterprises resulting from pollution of the environment, those policies
issued to fulfill requirements of Federal law or on risks connected with
atomic energy plants licensed, as meeting Federal standards of radiological
health and safety, by the Atomic Energy Commission or by the State of
New York.

3. Prior legislative history:  The provision  prohibiting the sale of all
policies which would protect commercial enterprises from liability
resulting from pollution of the environment was a 1971 Governor's
program bill (A. 6952) and is currently awaiting his signature.

4. Arguments in support:  This bill would provide that policies which must
be purchased pursuant to Federal law by corporations engaged in certain
regulated activities including production of nuclear energy, would be
available in New York.  A. 6952, if approved, would have the effect of
prohibiting issuance of all liability insurance that would insure against
environmental pollution or contamination.  The exemption for nuclear
energy producers is necessary because of Federal requirements mandating
such insurance.

5. Possible objections:  None known.

6. Other State agencies interested:  The Insurance Department and the
Department of Environmental Conservation  would be concerned with this
bill.

7. Known position of others:  None known.

8. Budget implications:  None for the State.

9. Recommendation:  The Division of the Budget recommends approval of this
bill.  Its enactment will prevent a conflict between State and Federal
requirements with regard to liability insurance for industrial corporations.
It is only necessary, however, if the Governor approves A. 6952.

Date  June 22, 1971      Examiner: _____
                                        Lee Vaughan
LV:fd                                   Veto No.
Disposition:          Chapter No.

# SENATE DEBATE TRANSCRIPTS

---

## 1971
## CHAPTER 766

### 3 PAGES

---

**INSURANCE LAW**

This document has been added to the Governor's Bill Jacket by **New York Legislative Service, Inc.** as part of our proprietary legislative history.

## NEW YORK LEGISLATIVE SERVICE, INC.

The Research Specialists on Legislative Intent and Current Legislation.

A NEW YORK NOT-FOR-PROFIT CORPORATION. ESTABLISHED 1932.

15 Maiden Lane, New York, NY  10038   (212) 962-2826   www.nyls.org

4 1 4

THIRD READING NO. 2410
PRINT NO. 7042

An act to amend the insurance law,
in relation to nuclear facilities
and federal financial responsibility
requirements.

SENATOR SEYMOUR R. THALER:  Explanation,
please.

THE PRESIDENT:  An explanation is sought.
Senator Gordon.

SENATOR BERNARD G. GORDON:  Earlier this
year, Mr. President, we had passed legislation af-
fecting the issuance of insurance, and this is a
chapter amendment which -- incidentally, the bill we
passed had to do with pollution insurance and that
type of thing that Senator Greenberg --

SENATOR GREENBERG:  Has that bill been
signed into law yet?

SENATOR GORDON:  No, not yet, but this
is a chapter amendment to the law and this exempts
nuclear plants from the prohibition against them
having insurance, one of the reasons, of course,
being that the nuclear plants are supervised by the
AEC and various State agencies, and the Power Authority
has no capital as a State agency as far as their
bonds are concerned so they have to have this in-
surance as part of their protection for the plants
themselves.  This is a necessary exception to the bill
we passed earlier.

SENATOR JEREMIAH B. BLOOM:  Will Senator
Gordon yield to a question?

4 1 5

SENATOR GORDON:  Yes.

THE PRESIDENT:  Senator Bloom.

SENATOR BLOOM:  Will you tell me what other facilities there are in this State that might possibly insure these people?

SENATOR GORDON:  You are referring --

SENATOR BLOOM:  Other than the nuclear plants.

SENATOR GORDON:  Well, there are also ships that are in the State here that come into the State that must carry insurance and there was some fear that those kind of vessels would be excluded from having insurance, and therefore the wording as far as "satisfying the financial re- sponsibility requirements of any Federal law" has been inserted to cover that kind of a situation also.

SENATOR BLOOM:  What protection is there to the people from the plants that we exempt here, the utilities and --

SENATOR GORDON:  Insurance cannot be written for them.  This is an exception allowing insurance to be written for the nuclear plants.

SENATOR BLOOM:  The way I read it they are exempt.  "Policies except those covering" --

SENATOR GORDON:  After the new material, Senator, on line 13 you have to read on and read the rest of the paragraph which is the all-inclusive paragraph which says that they cannot purchase this

- 6177 -

4 1 6                    (Senator Gordon, continuing)

kind of pollution insurance, except now for the

nuclear plant situation.

THE PRESIDENT:  With respect to this

bill, the Governor has transmitted a message of

necessity pursuant to the provisions of Article

III, Section 14 of the Constitution.  Read the

last section.

THE SECRETARY:  Section 3.  This act

shall take effect September 1st.

THE PRESIDENT:  Call the roll.

THE SECRETARY:  Ayes 50, nays 6.  Those

recorded in the negative are Senators Bookson,

Ferraro, Griffin, Halperin, Powers and Schwartz.

THE PRESIDENT:  The bill is passed.

THIRD READING NO. 2381

PRINT NO. 6928

An act to amend the election law,

in relation to authorizing the

county committee to adopt rules

providing for the continuance in

office without a primary of in-

cumbent county committeemen and

district leaders under certain

circumstances.

SENATOR JOSEPH ZARETZKI:  Lay it aside.

THE PRESIDENT:  Senator Brydges, there is

a request made to lay aside 2381.  Senator Calandra

has volunteered to explain it.

SENATOR ZARETZKI:  No, I want to lay it

aside.

SENATOR BRYDGES:  Are we on