D3ddtrac                        Conference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ---------------------------------------x

3   TRAVELERS INDEMNITY COMPANY, et al.,

4                   Plaintiffs,

5             v.                          12 Civ. 3040(KBF)

6   NORTHROP GRUMMAN CORPORATION, et al.,

7                   Defendants.

8   ---------------------------------------x
                                         New York, N.Y.
9                                        March 13, 2013
                                         10:09 a.m.
10
    Before:
11
                        HON. KATHERINE B. FORREST
12
                                          District Judge
13
                             APPEARANCES
14
    SIMPSON THACHER & BARTLETT LLP
15       Attorneys for Plaintiffs
    BY:  MARY BETH FORSHAW
16       LYNN K. NEUNER
         MEGHAN E. CANNELLA
17       IAN R. DATTNER

18

19  WHITE & WILLIAMS, LLP
         Attorneys for Defendant Century
    BY:  GUY A. CELLUCCI
20       SHANE HESKIN

21  COVINGTON & BURLING LLP
         Attorneys for Defendant Northrop Grumman
22  BY:  GEORGIA KAZAKIS
         RICHARD LAIRD HART
23

24

25

D3ddtrac                    Conference

```
1          THE CLERK:  In the matter of Travelers Indemnity
2   Company, et al. versus Northrop Grumman Corporation, et al., 12
3   Cv. 3040.
4          Counsel, please state your names for the record.
5          MS. FORSHAW:  Mary Beth Forshaw, Simpson, Thacher &
6   Bartlett, for the plaintiffs, and with me are my colleagues
7   Lynn Neuner, Meghan Cannella and Ian Dattner, who is fairly new
8   to our team, your Honor.
9          THE COURT:  All right.  Good morning, everyone.
10          MR. CELLUCCI:  Good morning, your Honor.  Guy Cellucci
11  from White & Williams, for Century Indemnity, along with my
12  partner Shane Heskin, also for Century Indemnity.
13          THE COURT:  Good morning.
14          MS. KAZAKIS:  Good morning, your Honor.  Georgia
15  Kazakis, Covington, on behalf of Northrop Grumman, and I have
16  my colleague Laird Hart with me.
17          THE COURT:  Good morning, everyone.
18          All right.  We are here today for a status conference
19  that has not been previously scheduled, apart from the schedule
20  that I gave before just a couple of days ago.  That really came
21  from the request by I think it was by Travelers to have a
22  conference.  Initially, I think I am going to call it a hook
23  was related to what was then one of the outstanding letter
24  motions, which I think I resolved that day or the next day.
25          In any event, there were other and I think I have
```

1   resolved -- and remind me -- at least I've resolved each of the

2   outstanding letter motions that actually had requests for

3   relief in them.  There was, however, some back and forth

4   yesterday and the day before on what I would call sort of

5   other, which was the general sort of statements regarding

6   people's views as to how diligent other people are or are not

7   being with respect to scheduling of depositions, etc., etc.

8           I will tell you that having waded through the other

9   discovery disputes, when I got to the back and the forth, I

10  sort of skated over it fairly lightly and saw that you folks

11  were disputing and arguing as to who was being diligent and not

12  diligent and people were claiming that other people were not

13  being quite -- I decided I would just hear from you.  Because I

14  didn't want anybody to feel like I was relying upon

15  misrepresentations or alleged misrepresentations as to things.

16          So basically assume that what I have in mind is that

17  we're proceeding apace, that you may want to talk to me about

18  if I've done great damage with any of my rulings, though I

19  don't want you to argue for reconsideration, but if I'm doing

20  great damage, tell me.  Because there may be things that I am

21  unaware of that I've done that -- or I may be aware of -- I

22  mean, I think I'm aware of them, but if I'm causing somebody to

23  do, you know, something extraordinary and burdensome, there

24  maybe another way of doing something.

25          But essentially I think that, apart from complying

D3ddtrac                        Conference

1    with the rulings, we're proceeding apace, and you folks are

2    going to keep on working things out and we don't need any real

3    intervention right now apart from I don't know if we need to

4    fiddle with some dates -- we are not going to fiddle with the

5    trial date but we may need to fiddle with some interim dates.

6              Talk to me.  All right, Ms. Forshaw.

7              MS. FORSHAW:  Sure.  Thank you, your Honor, for seeing

8    us today.

9              We asked for this conference with two things in mind.

10   First, we'd like to establish a reasonable schedule to deal

11   with some issues associated with Northrop Grumman's privilege

12   log.  We think if we together set some deadlines, that will be

13   helpful in making sure this case does proceed apace; and,

14   second, we would just like to get on the record what we think

15   is a rational schedule for dealing with depositions of Northrop

16   Grumman's witnesses.

17             I want to start, just to clear up any

18   misunderstanding, we are not here to move any discovery

19   deadline.  We respect the November 4th trial date, and we are

20   not here to ask you to tinker with that.  What we want to do is

21   just establish this framework to get some of these collateral

22   issues out of the way so we can get discovery done --

23             THE COURT:  OK.  And so --

24             MS. FORSHAW:  -- and try and be productive.

25             THE COURT:  All right.  That sounds, as you know, like

D3ddtrac                    Conference

1    music to my ears.

2              MS. FORSHAW:  Sure.

3              THE COURT:  I would like to keep the outer dates, and

4    if we can work with the inner dates some.

5              MS. FORSHAW:  Sure.

6              THE COURT:  Right now, just so that I think we are all

7    on the same page, the last order that set the schedule for the

8    discovery was the January 22nd order?

9              MS. FORSHAW:  Yes.

10             THE COURT:  That's the one that had the phase one fact

11   discovery June 28 and expert discovery August 15.

12             MS. FORSHAW:  Correct.

13             THE COURT:  OK.  So working from that, what is your

14   proposal on both the log -- and you need to sort of maybe give

15   me one line on the log.

16             MS. FORSHAW:  Sure.  Let me give you a little bit of

17   background.  I will give you four lines.

18             We were here on January 22nd, and it was our

19   understanding, based on representations then, that Northrop

20   Grumman's document production was complete.  That's what was

21   said.  Since then seven supplemental productions have happened.

22   We've gotten 500,000, approximately, additional documents.

23   We're still waiting to hear if their production is in fact

24   done.  We have questions about some categories.  I am not going

25   burden you with that today.  But we would like to get responses

D3ddtrac                        Conference

 1   to specific inquiries that we started making in November and

 2   reiterated in March.

 3           THE COURT:  Inquiries relating to?

 4           MS. FORSHAW:  To the production of documents from the

 5   CFO's office, documents relating to audit committee activities,

 6   board of director activities, and the search for files of the

 7   risk management department, all of which we think are highly

 8   relevant in this case.

 9           THE COURT:  You have laid those issues out at least

10   one or more times?

11           MS. FORSHAW:  Yes.  We raised those issues after the

12   last status conference in the hallway.  In addition, we've

13   written letters and we haven't gotten any responses.

14           In addition, Century has sent inquiries asking whether

15   we have received all of the documents that were tagged for

16   copying up and down the Eastern Seaboard prior to January 22nd,

17   of that conference and, in addition, you know, whether there

18   are other documents that we should expect we haven't heard.

19           But putting that aside, we have received five

20   privilege logs, as we indicated to you in our letter seeking

21   this conference.  The two most recent logs were February 1 and

22   February 8.  We sent a global letter to Northrop Grumman on

23   February 15th raising questions about the five logs we had

24   received up to that point.  We decided to deal with the

25   privilege log concerns we had globally.

1          We have concerns about the structure of the logs.

2     There are no identifications of who the people are who are on

3     the log.  There is a list of attorneys but there is no

4     identification of the literally hundreds of other people.  It's

5     clear to us from what we know from doing a deep dive into the

6     documents that many, many, many -- we're talking thousands --

7     of documents on the log have been shared with third parties

8     such as Northrop Grumman's insurance broker.  There are over

9     600 documents that fall into that category that we have been

10    able to identify without the affiliations.

11         In addition, there are literally thousands of

12    documents that have been shared with environmental consultants.

13    Those are consultants whose fees we're being asked to pay for

14    in this litigation.  They are not lawyers.  They are, you know,

15    people who come in on remediation and the like, we think.

16         So we raised a whole bunch of issues about serious

17    concerns about the 18,500 documents on the log.  Many, many of

18    the documents are being withheld based on work product, and all

19    the log says is "In anticipation of litigation."  There is no

20    identification of the litigation.  Many of the entries go back

21    to the 1990s, the early 2000s.  We can't figure out what

22    litigation they are talking about.

23         THE COURT:  Of course, many of yours go back --

24         MS. FORSHAW:  Sure.  But we identified which sites

25    were at issue.  And we've gone through that process, and you've

1    upheld some of our assertions and you have rejected others, and

2    we depriviledged documents as well.

3            So the bottom line is we teed up these issues.

4            Northrop Grumman has basically said to us they'll get

5    back to us, they're looking at things.  At the same time

6    they're complaining of we're delaying, about not taking their

7    depositions.  I think I was crystal clear on January 22nd that

8    I did not want to take depositions until I had all of the

9    documents.  I don't want to take my one bite at the apple until

10   I know, you know, how many apples are in the bowel, in other

11   words.  I need to know if I have the key documents.

12           The witnesses that they are pressuring us to take are

13   witnesses whose names are all over the privilege log.  We want

14   to clear up issues related to the privilege log.  We want to

15   get some assurance that their production is complete and that

16   the documents we tagged have been provided to us, and then we

17   will proceed with depositions.

18           Our plan, or our proposal, your Honor, is that we set

19   a deadline of March 20th, which is the deadline that they've

20   thrown out as to when they are going to get back to us next

21   after thinking about the issues we raised on February 15th, set

22   a deadline of March 20th for Northrop Grumman to supplement

23   their log, delist the documents that they're going to delist.

24   We would then propose to file our motion on the propriety of

25   their privilege log on March 28th.  We think that will give the

D3ddtrac                     Conference

1  Court an opportunity, given the dispatch with which you have

2  been ruling in this case, to rule in early April.  That would

3  give us two-and-a-half months to do the depositions of the

4  Northrop Grumman witnesses, who they have been trying to

5  pressure us to take starting on March 19th, before they even

6  respond to us about the privilege log.

7       We just thought, rather than engage in letter writing

8  with your Honor, that it was sensible to get us all together,

9  have a rational conversation, set the schedule, so everybody's

10  expectations are on a level playing field and we can proceed to

11  finish discovery by June 28th, which is what everybody in this

12  room wants to do.

13       THE COURT:  OK.

14       MS. FORSHAW:  In the meantime, we are willing to take

15  three depositions of Northrop Grumman's witnesses.  The first

16  is a deposition we've asked them for -- Ms. Neuner has had

17  conversations with Ms. Kazakis about this -- their 30(b)(6)

18  witness on their document production and collection -- sorry,

19  my voice is going, I'm getting over the flu.  The second

20  witness is the witness on notice that your Honor ordered them

21  to produce in one of your rulings this week, the Monday ruling.

22  And the third witness is -- oh, the witness on the retention of

23  Cahill Gordon, which was also the subject of your Honor's

24  ruling on Monday of this week.

25       We have given Northrop Grumman dates for witnesses

D3ddtrac                    Conference

```
1    that they asked us to produce for deposition on March 8th.  We
2    have provided three deposition dates for fact witnesses and a
3    deposition date of March 28th for a 30(b)(6) witness who will
4    be testifying on 25 topics, and then another 30(b)(6) witness
5    of Travelers will testify on April 3rd on an additional five or
6    six topics.
7            Century has already produced their 30(b)(6) witnesses.
8            THE COURT:  All right.  Thank you.
9            Does Century have anything to add, or may I take Ms.
10   Forshaw's comments as --
11           MR. CELLUCCI:  No, your Honor, not at this time.
12           THE COURT:  All right.  OK.
13           MR. HESKIN:  I'm sorry.  I just want to correct just
14   one thing, just to make sure that everything is clear.
15           I thought I heard Ms. Forshaw say that there were
16   500,000 pages of additional documents produced by Grumman since
17   the last status conference.  I don't think that is
18   necessarily -- I'm not so sure how accurate that is.  There
19   were a substantial amount of documents produced since then.  I
20   can't say with certainty that it is 500,000.  So I just wanted
21   to correct that just to be clear for the Court.
22           THE COURT:  All right.  This is obvious.  One of you
23   tell me your view as to the various items that have been raised
24   and what you think about this proposal regarding the law, et
25   cetera.
```

1              MS. KAZAKIS:  Sure.  Well, your Honor, let me preface

2      my specific comments by saying that I think what's gone on here

3      is that Travelers has tried to make an end-run around the legal

4      process and is asking the Court essentially to -- trying to

5      co-opt the Court into accepting its view of what the schedule

6      should be.  Let me explain that.

7              They have had our logs since November.  They have had

8      our first log since November 12th, and they have had four to

9      five logs for over two months.  And those logs contain examples

10     of every single concern that they've raised.  They waited until

11     February 15th to raise those concerns.

12             THE COURT:  Can I just --

13             MS. KAZAKIS:  Yes.

14             THE COURT:  -- have you pause for a second, because I

15     just want to -- whenever people say that people's agenda is

16     somewhat different, then I'm going to probe.  And it may be

17     that it doesn't matter, we are where we are.  But I thought

18     that I heard Ms. Forshaw say there were five logs, three of

19     which were produced earlier but two of which were produced in

20     early February, one of which was February 8th; that was the

21     last two.  And so a letter a week later that sort of

22     accumulates all of those problems doesn't strike me as really

23     gamesmanship, or are you asserting something different?

24             MS. KAZAKIS:  Well, I am asserting that we had their

25     five logs at issue and --

D3ddtrac                    Conference

1          THE COURT:  Starting from November to February 8th?

2          MS. KAZAKIS:  I believe it was earlier than

3    February 8th.

4          THE COURT:  Are there any more coming?

5          MS. KAZAKIS:  There will be some coming.  Pursuant to

6    an agreement, we agreed that logs will be 60 days after

7    whatever production they were relevant to.  We were actually

8    going to be submitting our logs earlier just to move things

9    along.

10          THE COURT:  How many more do you think you have?

11          MS. KAZAKIS:  I think there should be one more, maybe

12    one or two more.  Century actually asked for additional

13    documents on landfills that are not at issue in this

14    litigation, and to the extent that we'll have privileged

15    documents from that, we, of course, logged those.

16          THE COURT:  Just so I have a sense, I also wanted to

17    get a sense of when we're going to have the universe of logs,

18    understanding that everybody may find documents here and there

19    that in good faith come in later.  But when will the bulk of

20    the universe, you know, what you consider to be your last log,

21    how soon can you get that in so that we can think about what

22    the log process should be?

23          MS. KAZAKIS:  Yes, sure.

24          THE COURT:  Whether it was me or somebody else.

25          MS. KAZAKIS:  Yes.  I think we are looking at early

1    April.  And the reason why I'm qualifying that is because what

2    has happened is every time they have come back to the well, we

3    have made every effort to look for documents even though we may

4    not think that they are completely relevant.  A really good

5    example is they asked about the Syosset landfill.  That is not

6    a landfill that is in phase one.  That is not a landfill that

7    was in their complaint or a counterclaim.

8           THE COURT:  Is it like the old Bethpage landfill where

9    there may be some issues that it relates to even if the site

10   itself is not an issue?

11          MS. KAZAKIS:  We think it is actually a little bit

12   different.  For us, Old Bethpage became relevant because it

13   became clear to us that there were documents in their files

14   that related to that facility.  But they are making that

15   argument with respect to Syosset.  So instead of fighting that

16   and coming here with motions to compel, we said, fine, we'll

17   look at it.

18          One thing to keep in mind, your Honor, is that those

19   landfills are huge superfund PRP sites.  In other words it is

20   not just a litigation between Northrop and a plaintiff; there

21   are hundreds of PRPs.  And one of the issues that we had was

22   you are asking us to take -- to look for the entire

23   underwriting litigation while producing the entire underwriting

24   litigation -- or, excuse me, the underwriting litigation file,

25   and that would relate to many, many PRPs.  In other words,

D3ddtrac                    Conference

1   lawyers going to the depositions of PRPs that have nothing to

2   do with Bethpage, but they want the entire underlying

3   litigation file no matter how big, no matter unrelated.  And so

4   we said if that's what you want, that's fine.

5           So when you ask us about how soon our logs will come

6   in and when will be our final log, it is a bit dependent on

7   things like their requests.

8           THE COURT:  Understood.  But in terms of -- it sounds

9   like you folks had sort of a 60-day timeframe from production

10  to produce the logs.  So the early April log presumably relates

11  to some February production.

12          MS. KAZAKIS:  Well, what we're doing is we are

13  actually dispensing with the 60 days in order to accomplish our

14  goals and the Court's goal of moving things along.  So we're in

15  the process of looking for the entire underlying litigation

16  files that they have asked for.  We know that a lot of the

17  stuff will be irrelevant.  We are going to make a hard copy

18  production.  They are old documents.  We're going to have to

19  flip through them, create privilege calls, and we are basically

20  rushing that process so that we can produce the logs much

21  earlier than 60 days.

22          THE COURT:  So the April log relates to Syosset only

23  or Syosset plus --

24          MS. KAZAKIS:  And Old Bethpage.

25          THE COURT:  And Old Bethpage, so both?

D3ddtrac                    Conference

1          MS. KAZAKIS:  Yes.

2          THE COURT:  Why don't we continue on.

3          So let's assume that we've got these five logs.

4     They're making arguments.  You may or may not like the timing

5     or agree or disagree with how they're doing it, but how do you

6     propose we move forward from here based upon disagreements

7     between the parties that may exist as to the information on the

8     log at least at this point but may not once you have produced

9     your revised log on March 20th?

10          MS. KAZAKIS:  I think the good news and the reason why

11     this meeting is somewhat mystifying to us is that when we

12     responded to the concerns in writing, we actually agreed to

13     many of the demands.  So, for instance, they've asked for

14     corporate affiliations of the individuals identified in the

15     log.  I think that is 500-plus individuals.  We said fine, not

16     a problem.

17          They also --

18          THE COURT:  Does anybody have a copy of either log so

19     I could take a look?

20          MS. NEUNER:  I can hand up the binder of logs.

21          THE COURT:  That is both theirs and yours?  I just

22     want to be able to -- I don't want to only ask for one.  I will

23     give it back.

24          MS. NEUNER:  Just to be clear, there are five Northrop

25     Grumman logs, but there is the sixth log, which is the AM log,

1    which is the one you referred to which came on February 8th.

2    And there are in total 440 pages of logs.

3           THE COURT:  OK.  And they are generally set up the

4    same?

5           MS. NEUNER:  Yes, your Honor.

6           THE COURT:  All right.

7           MS. KAZAKIS:  So, your Honor, they asked for corporate

8    affiliations of individuals on the log, and we said fine.  I

9    think there were 500-plus individuals on the log, and we're

10   going to provide a list.  We also indicated that we would do

11   that this week or at the very latest March 20th.

12          So, again, this is why we are a little bit confused

13   about the status conference today.

14          In any event -- they also asked us for -- they also

15   asked us, excuse me, about some descriptions that they thought

16   were not quite complete.  We looked at that and realized there

17   was a technical error.  We also swept through the logs and

18   found about 10 or 15 other examples where that technical glitch

19   had gotten in the way of the description.  So that seems to be

20   off the table.

21          They also asked us about the use of "NGC Internal,"

22   because they thought that that indicated the document had been

23   widely disseminated to all employees.  And we said, no, we use

24   that to identify documents that were privileged but these

25   authors were not apparent on the face of the log.  So we

1   clarified that.

2           And we also told them that we would be happy to

3   rereview those documents that fell under that category to do

4   what your Honor suggested I think in one of your orders, which

5   is to figure out if some of these can just be produced.  We all

6   know that there are ranges and so we are looking at those.  And

7   we indicated that we would do rolling productions with the

8   final one being done by March 20th.

9           They also asked us about third-party --

10          THE COURT:  So on March 20th -- do you know this

11  letter that Ms. Forshaw is talking about, this February 15th?

12          MS. KAZAKIS:  Yes.  That is the one we responded to

13  where we laid out what we would agree to.

14          THE COURT:  All right.  So by March 20th you will have

15  done what it is you've said you are going to do?

16          MS. KAZAKIS:  That is exactly right.

17          THE COURT:  Now, let me just ask, so I can see whether

18  or not we know we are going to run into a problem, are there

19  things which, Ms. Kazakis, you said you would not do where

20  Travelers has said to you they still want you to do and you

21  folks are at an impasse and you are proceeding to create a log

22  or revisions or take these off the log on March 20th and I am

23  going to hear from Travelers that you have agreed to X number

24  but not Y number?

25          MS. KAZAKIS:  No.  In fact, in our letter we said with

1    respect to third-party communications, for instance, we explain

2    that these are communications with third parties that were

3    retained to help lawyers provide legal advice.  But we said if

4    they had any particular entry that troubled them, to come and

5    tell us so we would look at it specifically.  And we also

6    offered to provide any additional information regarding the

7    role of the third parties.  We haven't heard back from them.

8    They haven't taken us up on that offer.

9            THE COURT:  I think -- and Ms. Forshaw can correct me

10   if I am wrong -- to try to head off things that are going to be

11   coming to me from coming to me, you might want to include

12   something from a person with knowledge who can describe the

13   retention of the third party, when they were retained, so we

14   can figure out if there are documents prior to the retention,

15   the nature of the retention, and whether or not their role was

16   exclusively in connection with whatever the documents are of

17   the third party in the log relating to that retention.  I am

18   not saying for every document.  I'm saying you would have John

19   Doe would say environment consultant X was retained by us

20   approximately in this timeframe to work with us on the

21   following things.  All the documents you see on the log relate

22   to that work.

23           MS. KAZAKIS:  Right.

24           MS. FORSHAW:  Your Honor, if I may?  I don't mean to

25   interrupt you.  But if you want to head off disputes, Ms.

D3ddtrac                          Conference

1    Kazakis could also have somebody represent that they are not

2    seeking coverage for the third-party fees associated with the

3    work that's reflected in the privilege log entry in this case.

4              MS. KAZAKIS:  You are wrong.

5              THE COURT:  Let me ask, because it may be that

6    attorneys' fees are covered if they get -- I mean, right now

7    let's for a moment -- if Ms. Kazakis were to prevail entirely,

8    do her fees get paid by somebody here in this room?

9              MS. FORSHAW:  These are fees not associated with this

10   litigation but fees that fall in the bucket of defense costs

11   that they're seeking under the policy.

12             THE COURT:  So those you're saying as a matter of law

13   there will be lots of precedent saying that --

14             MS. FORSHAW:  I think it's a legal argument that we

15   have if they're asking us to pay for certain defense costs, the

16   idea that they are logging --

17             THE COURT:  You are not going to make that

18   representation?

19             MS. KAZAKIS:  Yes.  Your Honor, this goes way beyond

20   the issue in dispute.

21             THE COURT:  I understand.  If people want me to rule

22   on that issue, I am happy to.  But I think that the way to do

23   it is for you, Ms. Kazakis, to start off the ball by including

24   as a part of your cover letter, whatever it is going to be with

25   your March 20th thing to Travelers -- when I say "thing," I

D3ddtrac                        Conference

1      mean submission, in whatever form it is going to take -- that

2      will list who the environmental consultant is, the retention,

3      etc.  If there are five consultants, you will give a little

4      blurb on each.  Ms. Forshaw will say I hear you on what you say

5      but now are you asking us to pay?  You could even say -- and

6      head off the back and forth -- and, yes, essentially we believe

7      it is covered.  She can then do what she wants to do with that.

8              MS. KAZAKIS:  Your Honor, we're willing to provide

9      blurbs on the consultants.  But, again, just to be perfectly

10     candid with the Court, we do feel that this in many ways should

11     be the subject of motions practice and that we're in essence --

12     they've actually done an end run around that.  We are trying

13     very hard to head off motions, which is why we wrote the

14     letter, and we have requested that they get back to us if they

15     wanted this information.  So we feel a little bit bizarre in

16     that we've come into court and now they're asking for it --

17             THE COURT:  I hear you.

18             MS. KAZAKIS:  But it would have been nice to know,

19     when we sent our letter back on March 6th, that they were

20     willing to accept this information as a way to engage in a

21     productive meet and confer.  So I wanted to get that on the

22     record, because we invited this sort of discussion and I'm not

23     sure why it requires Court intervention to have a productive

24     discussion about what we've already offered.

25             We actually also offered for the work product

1    protection questions that they asked -- and I think Ms. Forshaw

2    alluded to this -- she said there are work product protections.

3    We don't know what litigations they involve, they relate to.

4    And we've offered to provide additional information for

5    documents within specific timeframes related to underlying

6    litigations that are the basis of the work product protection.

7    We offered that on March 6th.  We never heard back from them.

8           So we're happy to do that.  We would have liked to

9    have had a discussion with them about that to figure out

10   timing.  We'll endeavor to do all of that on March 20th.  All

11   I'm saying to the Court is that we were here on Tuesday and

12   this is the first that we've heard from them that they might

13   want that, even though we offered it.

14          THE COURT:  Why don't we do this so that there is no

15   misunderstanding as to what people may have asked for and not

16   asked for and think that they have conveyed but may not have

17   conveyed.  Why don't we by the end of the week have laid on the

18   table, if anybody -- if you, Ms. Forshaw, believe you want

19   anything else or reject any of their proposals in their March 6

20   letter, put it in a letter so that Ms. Kazakis has some ability

21   to respond to it, if she so chooses and deems it appropriate --

22   she may or may not -- in her March 20th thing.  Otherwise, it

23   sounds guaranteed that I'm going to get something on

24   March 28th.  That may well be true, because you folks may be

25   bound and determined to make me rule on some privilege stuff in

D3ddtrac                    Conference

early April, but I would like to head off at the pass the

interim questions that often are necessary on certain privilege

issues.

          MS. KAZAKIS:  Your Honor, just to make it clear --

because, believe me, we have the same goal of cutting off the

impasse -- we also agreed to rereview entries that they called

into question.  There were two exhibits with I think 400-plus

entries.  We said we are going to review that.  We're going to

rereview the NTSC internal documents.  They raised questions

about Dvirka and Bartilucci documents.  We're rereviewing

those.  And we've paid very close attention to the Court's

rulings thus far on privilege, and we're obviously going to use

that as necessary guidance to our rereview.  And that was the

point of offering these rolling productions this week and up

through March 20th, so that we could get them the documents

that we think could be deprivileged and that would give us some

time to consider whether or not there are swaths of documents

that we might just depriv because even though those are

technically privileged and one might argue about it, it is just

not worth it and we'll just give it to them.

          THE COURT:  See if you can do it and you can do it

under some sort of nonwaiver --

          MS. KAZAKIS:  Exactly.

          THE COURT:  My rules allow sort of a nonwaiver so that

for other litigations it is not sort of a blanket waiver.  That

D3ddtrac                    Conference

is going to assist in depriving a bunch of stuff if you don't

want to have to face that down the road in some other

litigation.

        But one thing that you all should do is if I'm going

to see these things, anybody who is a lawyer, just help me out

and have a little "Esq." after their name, because I know that

for you folks these names jump off the page as lawyers; for me

they don't.  And it is not as if lawyers can magically cloak

everything in privilege, but it does -- those entries, which

don't have "Esq." draw more immediate initial attention.  Then

we go to the second level, which are the ones that have Esq.

and they are still not privileged, but the ones that don't have

Esq.'s may be privileged because it is under the direction of

counsel.  But help me out with that.

        MS. KAZAKIS:  Yes.  We will do that, your Honor; it is

not a problem.

        Just, again, for you to have a broad view of this, we

have produced about 2-and-a-half million pages, and those logs

have entries that account for just about five percent of the

pages; it is a pretty low number.  So what I'm representing to

the Court is that we tried to take a narrow view of privilege

so that we could avoid privilege fights, and what we

represented to Travelers was that we're willing to go back and

take another look, particularly in light of the fact that we

have more guidance from the Court, and try to do everything we

D3ddtrac                        Conference

1   can to avoid it.  I don't know if we're going to be able to

2   avoid all disputes, but that was the point of us agreeing to

3   what we agreed and also representing that we would make these

4   rolling productions.

5           THE COURT:  OK.

6           MS. KAZAKIS:  And the March 20th date is something

7   that we suggested.

8           THE COURT:  All right.  So here's what we should do

9   for this week, which is you folks need to get on the phone in

10  the next two days and talk to each other so that you can, you

11  know, generally speaking, understand exactly what it is are

12  going to be the headers in your motion to me.  All right?

13  Think of it that way.  If you are going to raise a point in

14  your motion to me, make sure you have told the other person

15  this is what you need.  And they can either say I agree, I have

16  to do that; I'm not going to do that; or I have done that.

17  This is on both sides.  So do that this week so that there is a

18  reasonable period of time for you folks to be flexible and be

19  able to respond.

20          Then it sounds like on March 20th, Ms. Kazakis, you

21  are going to do what you do with this pile of logs which

22  responds to the accumulation of points.  Maybe you can merge

23  them all into one -- no, maybe that will create havoc.  Forget

24  it.  You are working with different databases.

25          What you'll do is you'll on March 20th produce that

D3ddtrac                         Conference

1    log, and then also essentially you should think of it as some

2    form of explanation as to what you've done and why you've done

3    it.  Because it sounds like Ms. Forshaw is bound and determined

4    if it doesn't correspond, and I don't mean that in a negative

5    way, I mean in drawing an end to this issue --

6              MS. FORSHAW:  I need to.

7              THE COURT:  -- to raise whatever she deems sufficient,

8    and so protect yourself with your views.

9              So then how does the schedule work for you?  On

10   March 28th, she'll write me a letter --

11             MS. FORSHAW:  OK.

12             THE COURT:  -- and don't go over 15 pages, but if you

13   have to go -- I would like you to go into three, but every once

14   in a while, I do understand you must have a lot of discussions

15   internally about what to put in footnotes and taking out a

16   ruler and measuring the size of your letterhead, and because

17   things are just so three pages that it must take some doing --

18             MS. FORSHAW:  That is for Ms. Neuner.

19             THE COURT:  -- correct?  So which I would like the

20   discovery disputes, because it has given me enough thus far.

21   If I need more, I will ask.

22             But on the privilege, if you feel you need more, then

23   do like either 15 double-spaced or 10 single-spaced, but don't

24   go over 15 pages, because I think that I will ask for more if I

25   need it.

D3ddtrac                        Conference

1          MS. KAZAKIS:  Your Honor, if I may?

2          So I am a little confused about the page length here

3     because the issues --

4          THE COURT:  I am making this stuff up as I go along

5     because discovery motions are normally three pages.

6          MS. KAZAKIS:  Right, which is what we have been doing.

7          THE COURT:  That I think has worked, because to the

8     extent I have needed more, I have gotten more.  And only in

9     very limited circumstances have people felt the need and it has

10    not been inappropriate, as I said yesterday, to have then a

11    little bit of extra discussion.  But -- and that's referring to

12    your reply.  It was fine, because there had been I think three

13    submissions on the same topic of the third-party motion.

14         But for this I don't know how much space you are going

15    to need to write them these issues, but I want to decide them.

16    And if turns out that you've got topic one being consultants,

17    and that's going to take you three-quarters of a page alone to

18    get that issue discussed single-spaced, because you are going

19    to need to cite five cases where this has come up before -- I

20    would like the case law.  I do read the case law.  You folks

21    are educating me on some of these issues.  And, by the way, I

22    note that you litigated against each other all over the

23    country, like a traveling show.

24         MS. FORSHAW:  At least our clients have, yes.

25         THE COURT:  But in any event, you know, what I'm

1    trying to suggest, Ms. Kazakis, is if you need more than three

2    pages, I understand.

3              MS. KAZAKIS:  Is that reciprocal?

4              THE COURT:  Yes.  I think that you should think of

5    your March 20th submission as your motion for a privilege log.

6    It's not a motion for a protective order.  It's just your log.

7    I'm suggesting give her some explanation so that since Ms.

8    Forshaw is suggesting that we go directly into motion practice,

9    that you have had your meet and confer.  Essentially, she is

10   saying you have had your meet and confer.  I'm suggesting if

11   there is any doubt about that, meet and confer this week.  But

12   the end result of the meet and confer is what you give her on

13   March 20th.

14             In other words, I'm not expecting there to be --

15   although, of course, there could always be additional

16   conversations following March 20th.  But essentially

17   March 20th you've joined issue, you've accepted what you have

18   accepted, not accepted what you haven't accepted, and you want

19   to explain why you haven't accepted things or why you think

20   that you've done what was necessary under the dispute, if you

21   can.  She'll make a motion on March 28th.  We need to come up

22   with a date for you to respond; we haven't done that yet.  And

23   I will rule promptly thereafter --

24             MS. KAZAKIS:  Right.

25             THE COURT:  -- as you suggested.

D3ddtrac                    Conference

1          MS. KAZAKIS:  I realize that our letter can be as long

2     as it needs to be but --

3          THE COURT:  Well, not as long as it needs to be.

4          MS. KAZAKIS:  It is not a motion for the court.

5          MS. FORSHAW:  March 20th.

6          MS. KAZAKIS:  But in terms of the length of motions to

7     compel going forward, I don't know if the Court was giving us

8     additional new guidance --

9          THE COURT:  No.  God no.

10         MS. KAZAKIS:  Because we've done three and we brought

11    these --

12         THE COURT:  No, I don't.

13         MS. KAZAKIS:  OK.

14         THE COURT:  I want, though, with the 18,000 X, you

15    know, pages that are being withheld and this binder that's been

16    handed to me that I just glanced at -- I'm going to give it

17    back, but I just wanted to get a sense of what we are talking

18    about in terms of detail, that to the extent ripening the

19    issues on the privilege log as a group needs more than three

20    pages, that doesn't sound unreasonable to me.  And I want to

21    suggest to you folks, bring me the motion on the privilege

22    logs.  On the issue that you've joined motions, you've joined

23    issue on, up to this Friday, and at least in terms of what

24    Travelers' problems are with Northrop -- Northrop may not have

25    ripened its motions with respect to all of its Travelers'

D3ddtrac                        Conference

1   issues, I don't know.

2          But as to the Travelers to Northrop, how many pages do

3   you think you need, Ms. Forshaw, because we are going to get

4   the same from Ms. Kazakis?

5          MS. FORSHAW:  I think 12 to 15.  I will say 15, to be

6   safe.

7          THE COURT:  Is it going to be single-spaced or

8   double-spaced.

9          MS. FORSHAW:  We can do double-spaced.

10          MS. KAZAKIS:  Definitely.

11          THE COURT:  Double-spaced.  And so you will do up to

12   15 double-spaced.  You don't need to do a table of contents or

13   a table of authorities, but you can and it doesn't count as

14   part of your pages.  If you are going to cite a bunch of cases,

15   it is helpful for me to have that.  I can rip it off and hand

16   it to my clerk to print them.

17          MS. FORSHAW:  OK.

18          THE COURT:  Ms. Kazakis, then you can respond in a

19   similar length submission.  If that's for whatever reason not

20   reasonable, let me know.

21          But how long -- assume she writes 15 pages.  Assuming,

22   when I say "she," Ms. Neuner and Ms. Forshaw collaborate and

23   write 15 pages and that you get that and I get that on

24   March 28th and it's on the same variety as you folks have been

25   talking about to date, or not talking about to date.  How long

D3ddtrac                      Conference

1    do you think you need?

2              MS. KAZAKIS:  Let's see a calendar.

3              THE COURT:  She is going to be doing eight calendar

4    days to get it to you.  Can you do eight calendar days to get

5    something back to me?

6              MS. KAZAKIS:  Yes.  Absolutely.

7              THE COURT:  All right.

8              MS. KAZAKIS:  I actually think that 15 pages will be

9    more than enough.  I don't think there are that many issues.

10   There may be a lot of entries, but there are not that many

11   issues.  I think you are just going to get a lot of law.

12             THE COURT:  Don't feel like you need to use them.

13             MS. KAZAKIS:  We are not.

14             THE COURT:  Feel free to use just as few pages as you

15   need to use.

16             MS. KAZAKIS:  Because I think that you will find that

17   there are a lot of entries but there are very few issues, and

18   so we plan on dispensing it with --

19             THE COURT:  That is fine.  If you all can do it three

20   and three, even better, but I want to suggest that let's get

21   this done.  Let's do the mega log motion in one fell swoop.

22             MS. FORSHAW:  Your Honor, can I point out that we've

23   talked about the five Northrop Grumman logs.  There's a sixth

24   log in there that Ms. Neuner mentioned, which is the log that

25   we got from Northrop Grumman's counsel associated with a third

D3ddtrac                    Conference

1  party's production.  They went through Aon's production and

2  pulled documents back and withheld them as privileged, and

3  that's a separate issue.  We wrote about that issue on

4  February 15th.  We tried to meet and confer about it during the

5  telephonic meet and confer on February 22.

6           THE COURT:  Can you join issue this week and --

7           MS. FORSHAW:  We are ready, actually, to file a motion

8  on that.

9           THE COURT:  That would be a three-pager.

10          MS. FORSHAW:  It is written and three pages should be

11  fine.

12          THE COURT:  Have you met and conferred and reached an

13  impasse so --

14          MS. KAZAKIS:  Well, your Honor --

15          MS. FORSHAW:  I wrote about it on February 15th.  I

16  tried to talk about it on February 22nd.  Their March 6th

17  letter --

18          THE COURT:  When you say "tried," did she cut you off

19  and say I'm not going to talk about this?

20          MS. FORSHAW:  She said we're not ready to talk about

21  it and that they're --

22          THE COURT:  Well, talk one more time, then.

23          MS. FORSHAW:  Their March 6th letter said they will

24  get back to us and we haven't heard anything.

25          THE COURT:  This week get back to her so you can

D3ddtrac                    Conference

1    figure out if her letter is worth coming to me or not.  I don't

2    want to get things before Ms. Kazakis has had one more chance

3    to either say --

4              MS. KAZAKIS:  Well, your Honor, I feel compelled to

5    straighten the record here, because in our letter we said we

6    would get back to them.  We had a meet and confer later, and I

7    represented that we would be getting back to them this week in

8    writing.  We're also rereviewing those documents.

9              So I -- again, I am puzzled by the confusion here.

10             THE COURT:  All right.  Well --

11             MS. FORSHAW:  I just need to move things along.

12             THE COURT:  I don't even know what the issues are,

13   which is I think there is something lovely about that at this

14   point.

15             MS. KAZAKIS:  Ignorance is bliss.  What you don't know

16   can't hurt you.

17             THE COURT:  Right.  What I do know is it sounds like

18   there are some process points where you folks don't agree on

19   how far along in the process you are.  What I'm suggesting is

20   it sounds like there are two motions, a small one and a bigger

21   one.  And let's get that small one done.

22             But I want you, Ms. Kazakis, before I get that to have

23   another opportunity to speak with Ms. Forshaw, because if you

24   say why are you raising this issue, I'm going to do that or we

25   have done that or I will commit to do that, then so be it.

D3ddtrac                    Conference

Then that can be taken off the table.  And if I never see an
Aon motion, I'll know that the meet and confer process worked
on either side; either Ms. Kazakis talked to you and Ms.
Forshaw into not doing something or taking something, or it
wasn't.

          Then next week you can do the normal process for that.
I won't set a schedule for that.  You will do it or not do it,
as you see fit.

          MS. FORSHAW:  Can I get a commitment from counsel that
we're going to get the revised log for Aon also on March 20th?

          THE COURT:  You guys are going to meet and confer.

          MS. KAZAKIS:  We are going to talk about that.

          THE COURT:  We've separated Aon off now.

          MS. KAZAKIS:  So I think we're probably done with the
logs.  I think I've gone through the list.

          THE COURT:  Right.  Let me just make sure we've got
the right date.  So March 20th you folks are going to exchange
logs.  If you want to, Ms. Kazakis -- it is simply guidance on
the Court's part, it is not an order -- you might want to state
your rationale for some of the things that you've done.  Then
you can cite to it.

          Then Ms. Forshaw will move, if she deems it still
appropriate, in as short a filing she is possibly able to make,
but no more than 15 double-spaced pages, relating to issues
which were previously raised with you, unless something

D3ddtrac                        Conference

1   extraordinary comes up that you never in a million years could

2   have expected.  It doesn't have to be a million years.  You

3   should talk about it.

4              MS. FORSHAW:  I don't have that many years under my

5   belt.

6              THE COURT:  That you should talk about.

7              Then, Ms. Kazakis, you will respond as soon as you can

8   but within eight calendar days.

9              Mr. Pecorino, when is that?

10             THE CLERK:  From the 20th?

11             THE COURT:  From the 28th.

12             THE CLERK:  April 5th.

13             THE COURT:  OK.  So by April 5 I will have gotten

14  everything I need to get unless you hear from me.  Then I will

15  let you know if I need additional information, if I do.

16             MS. KAZAKIS:  Your Honor, a couple of other things.

17             THE COURT:  Can you hold on a second.

18             (Pause)

19             THE COURT:  We've got another six minutes.

20             MS. KAZAKIS:  A couple of other things.

21             Ms. Forshaw mentioned depositions.  We have provided

22  55 possible deposition dates for the various current and former

23  employees that the insurers had indicated they want to depose,

24  and those dates are over the next four months -- they are in

25  April, May, June -- and there are up to eight available dates

D3ddtrac                        Conference

1    per witness.  We would like Travelers and Century to tell us

2    what dates work.  We've actually sent a letter out identifying

3    these dates.  We got a letter back saying that they would just

4    serve notices in some indefinite future --

5              THE COURT:  Can I just cut you off?

6              MS. KAZAKIS:  Yes.

7              THE COURT:  Only because this has to be a deadlock

8    because there are so many issues.  I may have to give you an

9    hour and a half the next time instead of an hour.  I gave you

10   twice as much as I give for most conferences.

11             But one of the negating factors that I heard was

12   disputes as to whether or not productions were complete and

13   getting the document issues resolved in order to be able to get

14   one bite at the apple, so there are two points to that but one

15   of them is possibly dispositive.

16             Is your production complete, Ms. Kazakis?

17             MS. KAZAKIS:  Well, like I said, barring these

18   additional requests, they are.

19             THE COURT:  Putting aside -- I think there were still

20   some custodian issues relating to some folks, right?  There

21   were some folks who people were discussing specific inquiries

22   regarding specific custodians, as I understand this.

23             MS. KAZAKIS:  They made a number of follow ups, and we

24   have tried to respond to each of those follow ups.

25             THE COURT:  OK.  So let's do this.  I think that we

D3ddtrac                        Conference

1   need a joint issue forever more on the end of the document

2   production, and so I am now going to set some dates for the end

3   of the document production.

4              MS. FORSHAW:  Great.

5              THE COURT:  Because June 28th is the date for the end

6   of discovery, so I think what we need to do is to make sure

7   that you don't get death by docket, Ms. Kazakis, by having it

8   be a slowed bleed for you.  On the other hand, everybody else

9   will also understand that they have a limit when they can raise

10  new issues.

11             So it sounds like the Travelers and Century ought to

12  know who they are seeking additional materials with respect to,

13  and the "who" can be either central files of X or particular

14  names.  Why don't you folks send that to Ms. Kazakis by next

15  Monday.  And it may be that you've sent it to her twelve times

16  already.  Consolidate it into one letter.

17             MS. FORSHAW:  We will.

18             THE COURT:  Call it the custodian letter.

19             MS. FORSHAW:  We will.

20             THE COURT:  All right?  That way Ms. Kazakis has it on

21  Monday.  You meet and confer next week on whether or not she's

22  going to produce things, not produce things, and the timing

23  relating to that production.  Whoever feels aggrieved a week

24  from Monday should write me.  So that would be the 25th.

25             MS. FORSHAW:  OK.

```
 1              THE COURT:  So on the 11th you send to Northrop --
 2    "you" being Travelers and Century -- a consolidated letter,
 3    dropping off those people you no longer want and including
 4    those people who you want, and that's it.  Unless there is good
 5    cause shown, done.  Then -- and if there is good cause shown,
 6    there is good cause shown.  If there is something that you
 7    haven't received yet demonstrates there is a whole theme of
 8    documents that you never knew existed and you only get that in
 9    April, well, then so be it.  That is like everything else.
10              But anything that you reasonably should know about,
11    give to Ms. Kazakis on the list on the 11th.  Meet and confer
12    at your convenience next week.  It may take several back and
13    forths; one of them may well not do it.
14              Then on the 25th -- is that what I said?
15              MS. FORSHAW:  Yes, your Honor.
16              THE COURT:  The following Monday.
17              MS. NEUNER:  All that we would say is the letter
18    should be 3/18, not 3/11.
19              THE COURT:  3/18.  Sorry.  You are right.  3/18, 3/25.
20    If nobody feels aggrieved, terrific.  I am not going to set
21    dates for when the production has to occur; I am going to let
22    you folks try and negotiate that.
23              If you can't, bring me the letter that will say they
24    won't give me the following custodians, or we want a protective
25    order on the following custodian -- Ms. Kazakis, you can do it
```

D3ddtrac                        Conference

1   affirmatively, as well -- and they won't give it to us until --

2   they can't commit until April 23rd, and that's too late, all

3   right, so give me whatever you need to give me.

4          Then what I also need is for all of those people, Ms.

5   Forshaw, whose identities you know now you are going to take

6   the depositions of -- and this sounds reminiscent of words I

7   used during our last conference.

8          MS. FORSHAW:  Yes.  That's how we got to this.

9          THE COURT:  Take one of these calendars.

10          MS. FORSHAW:  Mm-hmm.

11          THE COURT:  Fill in names.

12          MS. FORSHAW:  Mm-hmm.

13          THE COURT:  And take them off the list of people whose

14   deposition dates are being negotiated.

15          MS. FORSHAW:  OK.

16          THE COURT:  Because if you are looking for custodians,

17   there have got to be some people, in the way litigation goes,

18   whose depositions you can tell Ms. Kazakis you are going to

19   take now on some of though eight dates, because these people

20   reasonably can't be holding their calendars open for the

21   indefinite future.

22          MS. FORSHAW:  Sure, your Honor.  The only dispute we

23   had is that they want us to start March 19th.

24          THE COURT:  Start whenever you guys -- I mean, I

25   agree.

1          MS. KAZAKIS:  Some of these dates are in June and in

2     May.  So I think we can do the calendar bit.  I'm not really

3     sure --

4          THE COURT:  Sit down with the calendar --

5          MS. KAZAKIS:  We will do that.

6          THE COURT:  -- and map it out.  Include that in the

7     letter.  If you are unable to join issue on dates for certain

8     people, include it in your letter on March 25th.  All right?

9          So that on March 25th I'll basically get a production

10    deposition.  If you want to do one deposition letter and one

11    production letter, I can deal with it; we'll call it the

12    6th and 7th letter motion

13         MS. KAZAKIS:  Does that letter go to you, your Honor?

14         THE COURT:  Only if you are in disagreement.  I don't

15    want to see any of this.

16         MS. KAZAKIS:  Right.

17         THE COURT:  On the 18th, what's going to happen on the

18    18th, so we're clear, is Century and Travelers are going to

19    send to Northrop -- I know you all call it Grumman but I call

20    it Northrop because I started that way and it is hard for me to

21    switch now, even though all of your papers go back to Grumman

22    and I am aware of that.  So on the 18th you folks on Century

23    and Travelers will send to Northrop your list of custodians.

24    Unless you've got good cause, this is it.  And "custodians"

25    includes both types, a category of central files and/or

1    person's name.  You will meet and confer over the course of

2    next week on those people.

3            I will receive a letter on March 25th only if you are

4    unable to agree -- otherwise I don't want to hear a word -- as

5    to which custodians you've reached disagreement on and/or the

6    dates of production as to which you are unable to agree, and I

7    will resolve it.

8            You may also raise with me on the 25th, and should

9    raise with me on the 25th, any problems people have with

10   respect to scheduling of depositions, and I will resolve them.

11   And you may give me the dates of people and their availability,

12   and put down, when there are documents, the bulk of their

13   documents were produced and the documents relating to them were

14   produced, because their documents may have been easy.  It may

15   have been all of their underlings' documents that came in

16   yesterday that may be more complicated.

17           But if there is a person whose documents are

18   reasonably available and they have been for some time and you

19   can't reach agreement on the date, give me their available

20   dates and I will slot them in.  There are a lot of lawyers

21   here; they will take the deposition.  And don't even tell me if

22   it is an important person or not an important person; I will

23   just slot it in.

24           What was your name, the fellow right there in front?

25           MS. NEUNER:  Mr. Dattner?

D3ddtrac                      Conference

1          THE COURT:  Yes.

2          MR. DATTNER:  Ian Dattner.

3          THE COURT:  Maybe you will suddenly zip forward and we

4    will give you some really key, critical depositions.

5          MS. FORSHAW:  That is the plan.

6          THE COURT:  That is good, right?

7          MS. NEUNER:  Your Honor, if I may?  Lynn Neuner for

8    Travelers.

9          With respect to the scheduling of depositions, this

10   whole protocol is music to our ears and we're grateful for the

11   Court's guidance.

12         I just wanted to make clear, in furtherance of Ms.

13   Forshaw's statement, that the problem for us in going forward

14   starting the depositions is that a lot of the entries on the

15   logs relate to these individuals.  That was really the whole

16   crux of why we came.

17         THE COURT:  And that's why so on the 28th your letter

18   is going to go in, and on the 25th I'm going to get the letter.

19   So you will have had the log for five days so you can build

20   that into your letter.

21         MS. NEUNER:  Which is great.  This structure is the

22   exact rationality we needed.  Thank you.

23         THE COURT:  Then we will see where we go.

24         So we'll have a letter or letters or none at all on

25   depositions and documents on the 25th.  And if you've all

1   reached agreement, that's the best thing.  I really don't have

2   any burning desire to deal with these issues, but I will.

3          And then on the logs Aon is separated out.  You'll

4   either agree to disagree and I'll never hear about it, or

5   you'll agree to disagree and I'll hear about it, or you'll all

6   agree and I'll never hear about it.  That letter comes in

7   whenever it comes in.

8          The other big log letter comes in on the 28th, with

9   Ms. Kazakis responding on the 5th.  I rule thereafter.

10          That is the schedule we've reached so far.

11          MS. KAZAKIS:  Your Honor, just so that I'm clear.

12   It's not the Court's view, is it, that we can't schedule a dep

13   in May or June on the presupposition that we're not going to

14   resolve document issues, right?  Again, a lot of these

15   witnesses we have available dates in May or June.  There was no

16   presupposition that we are not going to get there, right?

17          THE COURT:  Here's what I think.  I think that if

18   there are ten people -- let's assume there are ten people as to

19   whom you can't reach an immediate agreement and two of them you

20   haven't produced their documents yet.  Give them dates in early

21   June.  That's what people do, right?  And put it down as a

22   placeholder.  If it turns out that they claim you gave them the

23   documents on May 25th and that we need to move the date and you

24   can't reach an arrangement, so be it.  But you ought to be able

25   to schedule out everything.

1           I mean, you know, you've all done this, right?  I used

2      to schedule out -- in the "old days," I used to schedule out

3      everything in the beginning of the case having no idea when I

4      would get the documents and just work with it.

5           MS. KAZAKIS:  That's great.  That's exactly what we

6      are aiming for.  That sounds good.  That will work for us.

7           THE COURT:  So then you will adjust it, hopefully by

8      agreement, as the world evolves, or you will bring isolated

9      things to me, but you'll have the universe mapped out which

10     will also assist with your workload between now and June 28th.

11     OK?  So let's map out the world.

12          Yes.

13          MR. CELLUCCI:  Your Honor, Guy Cellucci for Century.

14          It is just one issue.  It is not really a discovery

15     issue.  But I don't know your Honor's attitude on oral

16     argument, but there is an outstanding summary judgment motion.

17     Often oral argument is helpful in these types of cases so --

18          THE COURT:  Yes.  I have your summary judgment paper

19     submissions in my chambers, which is actually a staging area

20     for different things.  They make their way in at different

21     stages, which is my practice, and yours are actually in the

22     office.  OK?  Once they are done, they are out of my office.  I

23     have a paperless office except for what I am working on.

24          So you are in my office, and I have not looked at them

25     yet.  But I have plans on doing that in the next couple of

D3ddtrac                         Conference

1    weeks, actually, because I am going on spring break with my

2    kids, and my plan is to take your documents --

3              MR. CELLUCCI:  Oh, thank you, your Honor, for that.

4              THE COURT:  -- while I'm where I'm going to be, but I

5    am not taking all of your voluminous -- except for the

6    policies.  I'll take your documents and I'll take the policies.

7    But I assume you guys follow the fact that I have a big

8    insurance docket, for a variety of reasons.  So some issues --

9    not like yours, but some law I have run across now.  But yours

10   raised very particular issues, much of which I am not familiar

11   with; so I will familiarize myself.

12             You would like oral argument?

13             MR. CELLUCCI:  Yes, your Honor.

14             THE COURT:  Let's set down oral argument.  When were

15   the briefs -- tell me the date the first brief was filed.  Just

16   remind me.

17             MS. KAZAKIS:  I think they were all filed on the

18   4th of January.

19             THE COURT:  January 4th.  OK.

20             Joe, we need something in mid-April.  That will give

21   me a chance to read things.  I will try to send you questions

22   in advance.

23             MS. FORSHAW:  Oh, good.

24             THE COURT:  But I don't promise that.

25             THE CLERK:  How much time, your Honor?

D3ddtrac                    Conference

1          THE COURT:  I'm going to need -- these people like to

2    talk.  The people back there are waiting.  So how about -- I

3    think we will need three hours.  Just block an afternoon.

4          THE CLERK:  Thursday, April 18th, at 2 p.m.

5          THE COURT:  How does that work?

6          MS. FORSHAW:  That does not work.

7          MS. NEUNER:  I'm sorry, your Honor.  It is my

8    children's school vacation that week.

9          THE COURT:  I understand that.  I am going away next

10   week.

11         Try again.

12         THE CLERK:  Thursday, April 25th, at 10 a.m.

13         THE COURT:  Does that work?

14         MS. FORSHAW:  That works.

15         THE COURT:  For everybody?

16         MR. CELLUCCI:  Yes, your Honor.

17         MR. HESKIN:  At 10 a.m.?

18         THE COURT:  10 a.m.  Can we do it at 9?

19         (Pause)

20         Sure.  Let's do it at 9 because it gives us until we

21   get hungry.

22         MS. KAZAKIS:  Is this on both motions?

23         THE COURT:  It is going to be on the pile in my

24   office --

25         MS. KAZAKIS:  The piles and piles of paper.

D3ddtrac                     Conference

```
 1              THE COURT:  So her pile is in my office.

 2              I may send you questions which then will tell you, by

 3     the way, I do not need argument on X.  So one thing, what you

 4     won't have to do is if you were planning on -- I've got to go

 5     to the people behind you.  If you are planning on writing a big

 6     regurgitation of your briefs, don't.  Some judges need that

 7     because they are not going to -- not here in this district, I'm

 8     sure, but there are places where you might travel in parts of

 9     the country where you have to stand up and basically tell them

10     what your arguments are.  You won't need to do that.  Go for

11     the jugular.  That's what I'm going to be looking for.  And I'm

12     going to interrupt you incessantly, I'll tell you.  That's the

13     way I do it with those things now and also oral argument.

14              MS. FORSHAW:  Terrific.

15              THE COURT:  OK.  Thank you.

16              MR. CELLUCCI:  Thank you, your Honor.

17              THE COURT:  All right.  Thank you.

18              MS. NEUNER:  Thank very much, your Honor.

19              MS. FORSHAW:  Have a nice spring break.

20                                 -   -   -

21

22

23

24

25
```