DANLTRAC                        Conference

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    TRAVELERS INDEMNITY COMPANY,
     et al.,
4
                   Plaintiffs,
5
                   v.                          12 CV 3040 (KBF)
6
     NORTHRUP GRUMMAN CORPORATION,
7    et al.,
8                  Defendants.
9    ------------------------------x
                                              New York, N.Y.
10                                            October 23, 2013
                                              11:33 a.m.
11
     Before:
12
                        HON. KATHERINE B. FORREST,
13
                                              District Judge
14
                            APPEARANCES
15
     SIMPSON THACHER & BARTLETT LLP
16        Attorneys for Plaintiffs
     BY:  LYNN K. NEUNER
17        MARY BETH FORSHAW
          MEGHAN E. CANNELLA
18        RITA K. MAXWELL
19   COVINGTON & BURLING LLP
          Attorneys for Defendant Northrop Grumman
20   BY:  GEORGIA KAZAKIS
          JOHN SCANLON
21
     WHITE AND WILLIAMS LLP
22        Attorneys for Defendant Century Indemnity Co.
     BY:  GUY A. CELLUCCI
23        SHANE R. HESKIN
24
25
```

DANLTRAC                          Conference

```
1        (Case called)
2        THE COURT:  All right.  Good morning.  I feel like I'm
3   living in a world of Travelers right now because down at my
4   desk I have all of the argued motions and I shall say deeply in
5   the process of sorting through all of it and typing away.  And
6   all I can say is there are so many declarations now that have
7   so many different exhibits attached that it's like hunting and
8   pecking.  But we're getting there.
9        And the I briefs are very helpful in that regard, so I
10  thank you, Ms. Kazakis.  I'm not sure if you guys also handed
11  them in, but I got the whole reconsideration motion on one
12  disk.
13       We're here because you folks, I guess Mr. Cellucci
14  drew the short straw and asked for an extension and also wanted
15  to basically some -- to push the trial and also for some
16  adjustments to the expert dates.  I couldn't tell from the
17  letter whether there's a difference of view on the expert
18  dates.  It seemed that all parties agreed the trial should be
19  pushed a little bit.
20       MR. CELLUCI:  Yes, your Honor.  I'll let Ms. Forshaw
21  go.
22       MS. FORSHAW:  We actually spoke.  It was a collective
23  request, maybe one of the first you've received in the case,
24  your Honor.
25       THE COURT:  And actually it was Mr. Heskin, you
```

DANLTRAC                    Conference

1    actually draw the shortest of the straws.

2              MS. FORSHAW:  He did.

3              But this is a collective request, your Honor.  There

4    have been some hiccups in the schedule and we collectively

5    think that a brief extension of the trial date may be in order.

6    And let me tell you where we are because it would be helpful

7    and give you some context.

8              We all do this very reluctantly.  We have all I think

9    it's fair to say been working very, very hard to meet your

10   January 8 trial date.

11             You know about the Navy issue.  You ordered the Navy

12   deposition to go forward on the day the furlough started.

13   Today was the first day we were able to speak to the Navy

14   because Mr. Amerant was a nonessential employee and couldn't

15   talk to us, was in danger of being imprisoned if he talked to

16   us.

17             I'm happy to say it looks like the Navy issue has been

18   resolved.  Today Northrop Grumman indicated they will not be

19   calling the Navy as a witness, so we don't actually in fact

20   need to go forward with the Navy deposition.

21             THE COURT:  At long last.

22             MS. FORSHAW:  At long last.

23             However, because of the lingering issues about the

24   Navy, it threw off our expert discovery schedule.  We have

25   exchanged initial reports on all of the sites other than

DANLTRAC                    Conference

1    Calverton.  So ten expert reports have been exchanged -- six

2    from Northrop Grumman, four from us.  Rebuttal reports on those

3    sites, the non-Calverton sites, by agreement will be exchanged

4    on October 30.

5           As a result of today's news about the Navy deposition

6    going away, the parties are discussing when Calverton reports

7    expert disclosures will be exchanged.  Our position and I

8    believe Northrop Grumman's position, but they'll speak for

9    themselves, is we'll make those disclosures a week from today

10   but we have to call our experts and tell them to finalize the

11   Calverton disclosures.  So that would be on October 30.

12          Our proposal is Calverton rebuttal reports will be

13   exchanged on November 20.  And most of the experts, I believe

14   eight of the ten are opining on Calverton as well as the other

15   sites.  We don't think it makes sense to have them sit for

16   depositions twice.  So we would propose that their depositions

17   take place after November 20.  There are one or two that may be

18   not talking about Calverton.  We'll get those out of the way in

19   the next month.

20          So this leaves us in a position where expert

21   depositions and discovery will unfortunately not be completed

22   probably until I would say about on or about December 20.  Our

23   pretrial order is currently due on December 13.  The trial is

24   January 8.

25          You will be delighted to learn that there are a lot

DANLTRAC                    Conference

1   more declarations coming your way.  Travelers filed summary

2   judgment motion on the community park last week and three

3   additional summary judgment motions on Monday -- Calverton

4   pollution exclusion, Bethpage facility, and one combined motion

5   on the four water district claims.

6          THE COURT:  Are they all Cannella declarations No. 17,

7   18, and 19?

8          MS. FORSHAW:  Maybe there's a Maxwell, but there are

9   no Forshaw declarations.

10          THE COURT:  I got Cannella, Scanlon, Heskins.

11          MS. FORSHAW:  You now know who works the later hours

12   and who gets to go home early.

13          Those motions, we're assuming that your summary

14   judgment schedule, the 30 day/20 day schedule which we've been

15   following in the case will be followed in those with respect to

16   those motions.  So those motions will be fully briefed by

17   December 13, some a few days early, but the last one will be

18   briefed by December 13.

19          THE COURT:  Have you spoken to Ms. Kazakis about that

20   schedule?

21          MS. FORSHAW:  We talked about the Southern District

22   14-day schedule not applying.

23          THE COURT:  All right.  Only because there's so many

24   of them, it just sounds like -- I want to make sure.

25          MS. KAZAKIS:  We actually have some commentary on

DANLTRAC                    Conference

1    that, but we'll get to it.

2            MS. FORSHAW:  That's news to me.  We haven't spoken

3    about that.  But we would like those motions to obviously be

4    briefed and heard before trial.  I don't mean to be

5    presumptuous.

6            THE COURT:  They're hardly worth making if they're not

7    resolved before trial except to educate the Court, but it's a

8    jury trial.

9            MS. FORSHAW:  We're talking this is the follow-up

10   we've been promising you throughout the case about the

11   pollution exclusion and notice and voluntary payments and lack

12   of cooperation.  And I think if you grant even a subset of

13   them, the whole case goes away.  If you grant a subset of them,

14   certainly large chunks of the case go away.  And it will make

15   all of our lives much more efficient.

16            So in light of that background, the parties

17   collectively thought that perhaps a 60-day extension of the

18   trial date made sense.  In light of the Navy development this

19   morning, I would say we could do a 45-day extension of the

20   trial date.

21            Obviously, your schedule is paramount.  But we believe

22   we just should have a conversation because I think we're

23   unfortunately in this situation where the hiccups took us a

24   little bit off schedule.

25            THE COURT:  Let me hear, Ms. Kazakis, from you in

DANLTRAC                    Conference

terms of all of this.

          MS. KAZAKIS:  Okay.  So, your Honor, I want to address
two things.  One is how to reunify what's become a fragmentary
schedule because we still have a fragmentary schedule in the
sense that we have staggered experts reports, which isn't the
most efficient.

          And Mr. Cellucci and Mr. Heskin apprised me just as we
were walking in this morning another issue.  It's a fact issue.
It's a holdover fact issue related to the H2M deposition and
document production.  But what they indicated to me I think we
agreed that it could very well affect expert discovery and
perhaps responses to the various motions and so and then I
wanted to address the summary judgment motions and the timing
of that.

          The main goal that Northrop Grumman would like to
accomplish right now is to reunify the schedule and to make
sure that we have the opportunity to respond to the various
motions that have been filed based on a fully developed record,
meaning a fully developed expert record also.  The motions do
have a tremendous overlap, extensive overlap with expert
issues.

          Just to give you a little bit of a preview, the
insurers, I should say Travelers in particular say there are no
sudden and accidental events that contributed to the
contamination.  Our experts disagree.  They also indicate that

DANLTRAC                     Conference

1   the various waste disposal practices were inexcusable and

2   suspected or intended.  We had stated the practice is

3   state-of-art experts who vehemently disagree with that.  They

4   also indicate that certain practices at certain times

5   attributed to significant portions of the contamination at

6   particular parts of the facility there are scientific issues

7   about that.

8           And what we really want to prevent is to have briefing

9   by seriatim submission like we did the last time where you have

10  not only multiple declarations but multiple letters based on

11  things that have depositions that have occurred and facts that

12  have come out and rebuttal reports that the second rebuttal

13  report and all that kind of stuff.  We want to really avoid

14  that.

15          So there are two avenues in our mind that will

16  accomplish that.  First of all, as far as the summary judgment

17  motions, we think there needs to be an adjustment to the 30-day

18  response or opposition and 20-day reply rule.  Right now as it

19  stands we would be briefing the motions without expert

20  discovery being completed because the depositions, according to

21  the schedule articulated right now by Ms. Forshaw, those

22  depositions wouldn't begin until late November and, obviously,

23  depositions matter and we're in the middle of our rebuttal

24  reports and we indulged the Court on that.

25          We also think it would make our lives easier and be

DANLTRAC                        Conference

more efficient and it would be more efficient for the Court.
So typically Northrop Grumman's position has been to move
forward and we don't like indulging the Court on changing the
rules and practices in this case, but in this case we do think
it makes a whole lot of sense.

Secondly, as far as reunifying what has been a
fragmentary schedule, remember we have a third track which is
damages because the insurers indicated some surprise at our
supplemental interrogatory response.  The Court gave them
relief until December 3 to file another damages report.  We get
to rebut on the 13th.  And so practically speaking that that's
on yet another track and that deposition will happen between
the 16th and the 20th.  And there are also issues there that
we've vastly disagree upon.

So where am I getting on all this?  Our proposal would
be, yes, let's have our Calverton reports disclosed a week from
now.  That's fine.  But what we would rather do is have one set
of rebuttals, not two, in other words, not one set of rebuttals
next week and then another set of rebuttals three weeks from
the 30th and then depositions.  Let's just try to get it all
together because the experts are busy people and we starting to
have fragmentary reports.

So the proposal would be let's get our Calverton
reports in next week but let's have one set of rebuttals.  I
don't actually think we need three weeks for Calverton

DANLTRAC                      Conference

1    rebuttal.  It's insurers have indicated it's a small portion of

2    the reports.  I think two weeks would be fine.  Then we do

3    depositions of the experts and after that process takes its

4    course, we would like to submit our opposition.

5           THE COURT:  How much time do you think you would need

6    to submit your opposition?

7           MS. KAZAKIS:  It depends.  Of course, it's tied to

8    when expert discovery closes.  But as an example.

9           THE COURT:  Just give me --

10          MS. KAZAKIS:  As an example, it would be probably it

11   would probably be a week or so after the Thanksgiving break.  I

12   think we're looking in December realistically.  We're looking

13   at mid-December and I would say mid-December.

14          I realize that pushes off their reply but, again, I

15   think that if the goal is to have the Court assess these issues

16   rationally and systematically and orderly, we should revert

17   back to the order and the system of your prior orders which

18   were predicated on sort of an orderly progression and the

19   insurers wanted that.

20          I'm sure you remember hearing folks here discuss about

21   how facts should happen before experts and documents should be

22   fully disclosed before we go through depositions and so forth

23   and so on.  And so we're asking for that orderly systematic

24   process to take place here so that we are not briefing these

25   based on an incomplete record.

DANLTRAC                    Conference

1          THE COURT:  So let me see if I make sure that I have

2     at least what you would like to have happen in mind.

3          You would like the Calverton part to go in next week,

4     October 30, but the other rebuttal reports hold on.  Then what

5     you would suggest is you would want to have all the rebuttal

6     reports for the ten come in on November 20.

7          MS. KAZAKIS:  That's right.

8          THE COURT:  Then you would after that finish briefing

9     summary judgment.  So you don't need the depositions of the --

10         MS. KAZAKIS:  We do.  We want the depositions.

11         THE COURT:  So that's not a mid-December reply to

12    summary judgment or opposition.  That would be a January.

13         MS. KAZAKIS:  Your Honor, this might help.  We sort of

14    sketched this out.

15         THE COURT:  You can hand it to my deputy.

16         MS. KAZAKIS:  If, for instance, rebuttal reports were

17    due on the 5th of November and the deadline for completing

18    expert depositions other than damages was to be done by

19    November 26, okay, then we would be able to oppose by early

20    December because expert deposition other than damages would be

21    done.  Okay.  So that puts you in the first week of December.

22         THE COURT:  So hold on.  November 20.

23         MS. KAZAKIS:  That's right.

24         THE COURT:  But then --

25         MS. KAZAKIS:  Not November 20.  If we if our Calverton

DANLTRAC                    Conference

1    reports are on the 29th of October or the 30th, which is next

2    Wednesday.

3            THE COURT:  If I look at your schedule.

4            MS. KAZAKIS:  All of our rebuttals are due on the 5th

5    of November.  And by the 26th before Thanksgiving we're done

6    with depositions, then we would say that we could oppose, for

7    instance, the park summary judgment in the first week of

8    December, by let's say December 4.  And the other three summary

9    judgments filed this week by the next week, December 11.  And

10   then the replies would be due in late December.

11           These are, again, this is just sketch something out.

12           THE COURT:  Not on both holidays.

13           MS. FORSHAW:  This is the first I've seen this.

14           MS. KAZAKIS:  That's because we sketched it out in

15   light of our conversation.  I agree the holidays -- we didn't

16   mean this to be Scrooges at all.  We obviously get after

17   Thanksgiving, we're happy to have flexibility in that.  We're

18   not insisting on these dates.

19           What I'm insisting on with the Court's indulgence is

20   the notion that we really need the benefit of full expert

21   discovery.  There is a tremendous overlap and we would like the

22   depositions and have the benefit of the depositions and having

23   the benefit of whatever admissions or not we get from their

24   people in our deposition testimony to have that before we brief

25   our oppositions.

DANLTRAC                      Conference

1             MS. FORSHAW:  Can I respond, your Honor?

2             THE COURT:  Yes.

3             MS. FORSHAW:  First of all, it's the first time I've

4    seen this schedule.  Let me start by saying I'm -- the experts

5    aren't the only busy people who are involved in this case.  The

6    lawyers in this case are busy people too.

7             Several weeks ago we reached agreement that the

8    non-Calverton expert disclosures, the rebuttal reports, would

9    be exchanged on October 30.  Many of us in this room have made

10   arrangements to defer and schedule things in other cases on the

11   assumption that the non-Calverton expert disclosure rebuttals

12   would be served on October 30.  I don't understand why since we

13   reached an agreement many weeks ago that's the date that the

14   Bethpage and other disclosure rebuttal reports would be

15   exchanged.

16            I don't even understand why we're having a

17   conversation about holding back those exchanges.  Complicated

18   issues -- I need to start preparing, Ms. Neuner needs to start

19   preparing to take their six expert depositions.  We want the

20   disclosures on the dates they were promised to us with respect

21   to the non-Calverton stuff.

22            On the Calverton stuff, we need more than two weeks to

23   do a rebuttal report.  We don't know that much about Calverton.

24   These folks ran Calverton, had possession of the site.  We need

25   three weeks to do a rebuttal of their Calverton reports.  I

DANLTRAC                    Conference

1    can't do it in two weeks.  I need three weeks.  Her schedule

2    proposes four days, I'm told.  I hadn't seen this before and I

3    haven't had a chance to study it.

4            So our proposal is let's stick with our agreement

5    which is exchange rebuttal reports on non-Calverton on

6    October 30 so we can start sharpening our pencils and telling

7    our librarians to collect stuff.  It's complicated stuff.

8            THE COURT:  I understand.

9            MS. FORSHAW:  And then on Calverton --

10           THE COURT:  Let's take summary judgment.

11           MS. FORSHAW:  Sure.  Summary judgment, the operating

12   mantra of this case has been file summary judgment when you're

13   ready.  We took that to heart.  We teed up our summary judgment

14   motions.  The idea that these folks have several months to

15   reply to our summary judgment motions just doesn't make sense.

16   Do a 56(d) affidavit and tell you to deny our motion because

17   it's premature.

18           THE COURT:  You don't really want that.

19           MS. FORSHAW:  Fact discovery is closed.

20           THE COURT:  I think what Ms. Kazakis, as I understand

21   the argument, is that the experts will be utilized in

22   opposition to summary judgment.  For instance, sudden and

23   accidental.

24           MS. FORSHAW:  She can have them write an affidavit and

25   tell you that I'm wrong.  Her experts have already put out

DANLTRAC                          Conference

 1   their initial reports -- I got those on October 9 except for

 2   Calverton -- and have her experts do a declaration which is

 3   what they would do anyway.

 4           So the idea that we're going to push summary judgment

 5   off until after this protracted expert discovery means that

 6   this trial is going to get put off for months and months and

 7   months.  I'm the plaintiff.  We're eager to get this case

 8   going, get this case resolved.  By her approach, we will be

 9   briefing summary judgment into January because it cannot be.

10           My team has worked so hard, your Honor, and we very

11   orderly got together these summary judgment motions, again,

12   following your suggestion in this case that you should file

13   when you're ready.  And the idea that they're going to be

14   working over the Christmas holiday, that's not going to happen.

15   I just can't let that happen.  These folks have worked so hard.

16   And the idea that we would be filing reply brief on December 31

17   is just not fair.

18           Our motions are on file, out, ready to go.  These

19   folks, if they want 45 days to respond, okay.  The rules say

20   14.  We agreed 30.  Under your rules in this case, if they want

21   more time, great.  But the idea that we're just going to push

22   everything off is just delay.  It just doesn't make any sense.

23           THE COURT:  All right.  So Ms. Kazakis.

24           MS. KAZAKIS:  If I may.

25           THE COURT:  Then we're going to talk about my

1  schedule.

2          MS. FORSHAW:  You're the one who controls.

3          MS. KAZAKIS:  And obviously providing any dates to the

4  Court is somewhat presumptuous.  It's not written in stone.

5  It's guideline concept driven and your schedule obviously

6  rules.

7          They're the formal plaintiff.  We obviously are the

8  plaintiff in terms of who's been out of pocket and so we have

9  just as much of an interest, as you know from our many filings.

10  However, we do believe just as passionately and formally that

11  the best way to proceed is to do this on a fully developed

12  record.

13          Century has indicated to us that they may have motions

14  also.  And one of the things that I think we need to address is

15  some sort of final date for filing motions.  I don't think

16  we're going to escape briefing summary judgment motions, excuse

17  me, in January.  I know their team has worked hard.

18          THE COURT:  Everybody, you've all been working

19  extremely hard.

20          MS. KAZAKIS:  Our intent is not to ruin someone's

21  vacation, but we do believe.

22          THE COURT:  I don't think anybody is going on

23  vacation.  I think it's a matter of taking a night or two off.

24          MS. KAZAKIS:  It's undeniably true that the motions

25  implicate expert opinions and testimony and we can submit

DANLTRAC                    Conference

          affidavits.  But I can guarantee you, you will be getting

          supplements after these depositions are done because things

          occur in depositions.  It's part of the discovery process.  And

          I believe that part of what the Court needs to consider is that

          I get why Travelers may have felt pressed to file the motions.

                  At that time we still had a January 8 date.  And if

          you delay it too long and a January 8 date sticks, then it

          deprives the Court and them, perhaps, of a ruling, if you will.

          However, things have changed and we think we should deal with

          that change as opposed to trying to essentially will the

          experts away.  I think -- motions briefed without experts.

                  THE COURT:  I think I hear both sides and this is

          going to be nobody is particularly happy with the result

          because I'm going to have to squish things into a way that's

          going to work for all of us.

                  MS. KAZAKIS:  Your Honor, if I may, just one

          additional point which I am going to interject.  It is a new

          issue and I actually have tried to avoid this, but I just

          received word from our folks before we came in here that there

          is one other issue with the October 30 deadline for rebuttals

          and that is that Travelers, the insurers's experts, did not

          comply with the expert disclosure agreement.  And in

          particular, there were experts who identified as documents that

          they relied on just a big corpus of documents.  The agreement

          was if they had been produced to identify the Bates numbers

DANLTRAC                     Conference

1    because there are many, many, many quote duplicates that are

2    not really duplicates.  They're parts of documents.  They're

3    documents with marginalia.  And my team has spent an enormous

4    amount of time trying to deal with that.

5         Mr. Robertson, the list of documents had completely

6    wrong Bates numbers.  Mr. Scott didn't even identify Bates

7    number documents.

8         And so I think that at this point given what I know to

9    be the case and the fact that we just received yesterday a

10   corrected list of the documents relied on with the appropriate

11   Bates numbers from Mr. Robertson, I would ask release from the

12   October 30 deadline.

13        MS. FORSHAW:  I'm not sure what Ms. Kazakis is talking

14   about.

15        MS. KAZAKIS:  We've written several letters.

16        MS. FORSHAW:  I think we got two letters at 11:21 last

17   night and I haven't had a chance to read them because I was

18   talking to the Navy this morning.

19        THE COURT:  Just before you go, let me just -- because

20   I'm of course going to map out what I need to happen.  Tell me

21   what you thought the summary judgment briefing was going to be.

22        MS. FORSHAW:  I can pass up, we have a chart actually.

23        THE COURT:  Was it December 13 and December 20?

24        MS. FORSHAW:  December 13 was under your 30 day/20 day

25   rule was the date that the briefing would be completed.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  Ms. Neuner can pass up a chart that shows you all of the

2  motions and the due dates based on the assumption of the 30/20

3  day rule.

4          You know, your Honor, we filed these motions after we

5  read their initial expert reports.  So we felt comfortable that

6  actually the experts didn't raise any issues of fact because,

7  after all, we had their expert disclosures on everything other

8  than Calverton.  So I think this whole expert thing is a side

9  show.  I wouldn't have moved.  I held back until.

10          THE COURT:  How much time do you think you need to

11  reply after you get the oppositions?

12          MS. FORSHAW:  Me?  I think if 20 days.

13          THE COURT:  I'm sorry.  Let me back up.  Not to the

14  expert reports, to summary judgment, after you've received the

15  oppositions to summary judgment.

16          MS. FORSHAW:  We were assuming they would have 30 days

17  and we would have 20 days depending on where it falls.  If

18  there's a holiday in the middle, I can't really cut back.  But

19  if there's not a holiday in the middle, I think we could

20  potentially cut back on the 20 days but not for the Calverton

21  facility.  We've agreed to -- I'm sorry -- for the Bethpage

22  facility.

23          We asked, as you know, for 37 pages of briefing.  They

24  said they wanted 43 pages to reply.  I feel like if it's 43

25  pages, I may need the full 20 days to reply.

DANLTRAC                    Conference

1          THE COURT:  All right.  Let's talk about some trial

2     date issues.  I'm just going to look at this color-coded

3     overview of pending motions has been handed up to me.

4          MS. FORSHAW:  It's a list with the dates.

5          THE COURT:  That has been submitted or is about to be,

6     I guess.  Okay.

7          So here is our conundrum.  We currently have a trial

8     scheduled which is our second, which is not as many as some

9     large complex cases go through in terms of trying to land on

10    the right one, but we moved it from November at one point I

11    think is what we originally had from November to January 8.

12    And I have actually blocked time, three weeks for a jury trial

13    for you folks.  So I've got three weeks of blocked time.

14         Now, it's not that I can't use the time.  I can fill

15    it up quite easily because it's right after the holidays and so

16    there's all kinds of things I can stick in there.  But once we

17    are off of unblocked three weeks, I run sort of a tight ship,

18    not just with you folks but a lot of folks.  So I'm always near

19    term oriented.  So a lot of my trials are also lined up.  So

20    what that means is that the next open three-week period that I

21    could arrange would be February 18, which is not as much time

22    as you would like.

23         MS. FORSHAW:  Seems fine.

24         THE COURT:  But gives you some time.  To do that I

25    have to go back and figure out how to -- and I don't think I

DANLTRAC                     Conference

```
 1    can actually do it right now; I think I actually have to map

 2    things out on the calendar -- but it's not going to please

 3    everybody to meet a February 18 trial date.

 4              The next available trial date that I have for

 5    three-week block would not be until probably the middle of May

 6    or June because I have terrorism trial that's going to go

 7    that's going to last six weeks.  It starts at the end of March

 8    and it's a jury trial and then I've got some things around

 9    that.

10              So let's just say that takes up all of April and part

11    of May we're now into before I can find three weeks for you

12    folks.

13              MS. FORSHAW:  Your Honor, I know Ms. Neuner and I have

14    an arbitration in May and I believe Ms. Neuner has something

15    before Judge Preska.

16              MS. NEUNER:  Your Honor, we have a hard trial date of

17    June 2 with Judge Swain.

18              THE COURT:  And how long is that trial going to be?

19              MS. NEUNER:  It will be five to six weeks.  It's a

20    massive 10b-5 case for Pfizer that was set last September.

21              THE COURT:  That might not go.  I'm not saying that

22    for any and I'm not basing it on anything other than the words

23    big 10b-5 publicly traded company.

24              MS. FORSHAW:  She got excited there's a summary

25    judgment motion pending.
```

1          MS. NEUNER:  It's definitely going.

2          THE COURT:  All right.

3          MS. FORSHAW:  I think February 18 is doable

4    personally.

5          MS. KAZAKIS:  Your Honor, I actually have a client

6    issue on February.  I don't think it's the 18th, but I think

7    it's that week.  That's a Tuesday I think the following week.

8          THE COURT:  And by that client issue you mean they're

9    going skiing?

10          MS. KAZAKIS:  Mediation.

11          THE COURT:  I don't mean that in a negative way.  Some

12    people actually do preplan a family holiday that time of year.

13          MS. KAZAKIS:  Mediation, which I could try to move,

14    but I'm not sure.

15          THE COURT:  You're saying you have a client issue.

16          MS. KAZAKIS:  Exactly.

17          THE COURT:  You personally, not your client in this

18    case has an issue.

19          MS. KAZAKIS:  That's correct.  That's another issue.

20    The client issue, they may have an issue in February.  I have

21    to check with them.  I just have a vague memory that they had

22    an issue with being out of town.  So that's a little dicey for

23    us, unfortunately.

24          THE COURT:  Well, dicey versus undoable.

25          MS. KAZAKIS:  I know.

DANLTRAC                    Conference

1              THE COURT:  Because I'll tell you.

2              MS. KAZAKIS:  I'd have to go and call them right now

3    to be honest.

4              THE COURT:  Because one of the choices -- it sounds

5    like what I'm not going to do is bump you folks until June or

6    July.  I'm not going to do that because it goes against

7    everything you all have been working on and working towards and

8    getting a resolution and at this point I don't want things to

9    become dusty and more attenuated.  I actually am learning

10   something about all this and I want to strike while the iron is

11   hot, get these summary judgment motions resolved.  And after

12   I'm done resolving the ones I'm writing today, the decisions,

13   and the last period of time.

14              So otherwise I might move it a little bit but not move

15   it as much.  And so it could be earlier I'm saying if client

16   has an issue on February 18 than February 18.  But it sounds

17   like it's not going to be a lot later.

18              I have, if I were absolutely certain that this trial

19   were only going to go three weeks, we could maybe start on the

20   24th of February.  But the problem is I have a hard stop on the

21   14th and we have to have the jury back and I'm worried about

22   getting the jury back.  So particularly since you are talking

23   about all these experts, experts take a long time to get on and

24   off the stand.

25              MS. FORSHAW:  Correct.

DANLTRAC                    Conference

1           THE COURT:  So and I'm speaking a little aloud here or

2    speaking aloud here because I'm just trying to give you folks a

3    sense of the restraints that we've got, I could -- or

4    constraints -- I could start on February 18, which is I think

5    the day after a holiday.  I think the 17th, a Monday, is a

6    holiday.  We pick a jury on the 18th for a multi-three week or

7    so environmental waste pollution case -- people won't be

8    jumping at the opportunity to sit on this jury.  It could take

9    us the better part of a day to pick a jury.  But we may get --

10   you'll open that day.  That would be my expectation for sure.

11   So we can move you back.

12           All right.  Even with the 18th I've got another

13   terrorism trial that's starting on the 10th that I think is

14   only going to go for a week.  If the jury is out, I can have a

15   jury out and then have another jury that we're picking.  It's

16   possible we could slide a couple days.

17           But, anyway, I think we're looking at February 18,

18   folks.  Otherwise I think we slip until July.  So what we need

19   to do is come up with what makes sense between now and

20   February 18 to actually have these summary judgment motions

21   make a difference.  And, you know, we are all of us human.  And

22   so if you're looking at February 18, let's just pick some other

23   dates that we can do from that.

24           Let's reset the trial to February 18.  Ms. Kazakis,

25   see whether you can solve your other problems so that we don't

DANLTRAC                    Conference

have to go earlier, and by that I mean the other issues that

you've got in terms of the client, your mediation.  See if you

can move them.  If you can't, let me know immediately when

you're back at the office.

        But that would put our final pretrial conference at

lunch break the week of the 10th.  Early in that week, Joe,

what do we have?

        THE DEPUTY CLERK:  Tuesday, February 11 at 1 p.m.

        THE COURT:  Okay.  At one.  Now block out another day,

block out the 12th also.  Can we do that.

        We're going to have two dates for final pretrial

conferences because I anticipate you folks won't get it done in

and hour and I'm likely to be on trial that week.  So.

        MS. FORSHAW:  So the 11th and 12th.

        THE COURT:  2/11 at 1 p.m. and February 12 at 1 p.m.

would be two sessions for final pretrial conferences.  That

means that your motions in limine have to be fully briefed by

2/7.  And I will repeat what I hope I've already told you folks

which is do one motion in limine each of you.  I don't care how

many pages it is, but the more pages the less -- the more I've

got to read.  And follow each other's numbering for your

motions in limine in the opposition.

        So number your motions.  Motion in limine one, two,

three, four, five, six, seven, eight, up to however many you've

got, and the opposition will be insurers one, two, three, four,

1   five, six, seven, eight.  So I can take the two briefs and I

2   can match them.  It's going to be in the same order and I'll

3   know everything you said.  So if you say same reasons for

4   motion No. 3, just say that.  But then I'll have things

5   matching and I'm only going to get a maximum of three opening

6   motions in limine and then three opposition.  And I don't do

7   replies on motions in limine and I do them two weeks, two

8   weeks.  So you can also do one week, one week, but I'll give

9   you two weeks two weeks.

10          I need them by the 7th, which means you folks, they

11  have to be in my hands fully briefed by the 7th, which means

12  they have to open on the January 27 would be the opening.  And

13  the 7th would be the -- February would be the opposition to the

14  motions in limine.

15          Okay.  So the 27th of January.  1/27 is opening MIL.

16  Then the opposition MIL is February 7.

17          Your pretrial materials I have to have sufficiently in

18  advance of the 11th to be able to talk to you about things like

19  which I anticipate putting various witnesses on what I call

20  loose clocks because my guess is that what's going to happen is

21  you're going to come up with a long list of people that you

22  plan on calling, both of which would take up most of the entire

23  time and that's not going to work.  We have to have enough time

24  for to be able to cross people appropriately and everybody gets

25  to put on the case they need to put on.

1        So maybe you'll come up with a discussed schedule

2    where all the witnesses get on and off the stand in three

3    weeks, but if you don't and the time just adds up to more than

4    six and a half hours in a day, which is how much testimony time

5    there is in terms of the trial clock four days a week, I have

6    to have Friday for mostly criminal matters.

7        So I do it four days a week.  I run trial Monday

8    through Thursday.  You're here at nine.  The jurors come in at

9    930.  Jury leaves at five.  We go from 12:45 to two for lunch.

10   Other than that I only take two short ten minute breaks -- one

11   in the morning at about 11 a.m., one in the afternoon somewhere

12   around 3:30.

13       And I make you call witnesses up to the end of the

14   day.  So end at 4:30, call your next witness.  If they end

15   4:45, call the next witness.  At five of five, the jury gets

16   angry.  But 4:45 the jury wants somebody else on the stand

17   because they want out of the trial.

18       And so you get about six and a half hours maximum of

19   testimony in a given day.  So that just gives you an idea of

20   how we have to map it out.  So we've got to have direct and

21   cross and any redirect and any recross.  And it's like death

22   with a thousand cuts with you folks, not that I haven't enjoyed

23   every minute of it, but if your letters are anything like your

24   examinations, we'll have to draw some limits here.

25       So what I've done is loose clocks which is you'll give

DANLTRAC                    Conference

me something.  Hopefully it will look like a real trial

schedule.  I'll then map out on a grid who's going to be on

during what periods of time, when people are going to be

direct, cross, and then limited redirect, recross for each of

the witnesses and will map out to three weeks.  And then we'll

borrow time here and there from different witnesses.  Some

people are going to go faster or slower.

        And I won't give you a hard chess clock in the

beginning.  What I'll do, that's why I call it a loose clock.

I'm going to decide you're recidivists.  If you only respond to

a buzzer, at which point we go to a hard clock if you can't

make it because we will have a hard stop even I think on

February 18.  I do have to move on.

        MS. FORSHAW:  So, your Honor, last day of trial that

you're available the 7th?

        THE COURT:  Would be the week of February 18, the week

of the 24th, the week of March 3.  I could do it the week of

the 10th, but we've got to have the jury has got to be charged

and deliberating I think by the 11th.

        MS. FORSHAW:  Okay.

        THE COURT:  Otherwise we have problems because I don't

know how long it will take them.

        MS. FORSHAW:  Yep.

        THE COURT:  I don't know what's going to be left.  I

don't know, but it could be complicated for them.

DANLTRAC                    Conference

 1          MS. FORSHAW:  Sure.  Thank you.

 2          THE COURT:  So that's what I'm thinking.  So if we do

 3     the final pretrial -- you folks have to give me your pretrial

 4     materials.  That's what we were really aiming at.  I think

 5     around the 4th of February.

 6          Now, I'll tell you this now because we're sort of

 7     talking about this trial business now, but when you give me

 8     your pretrial order materials, I expect you're going to have a

 9     lot of depositions.  Don't even designate from somebody you're

10     going to call live because I won't let you read their

11     designations in.  I will let you, if it's properly

12     designatable, 30(b)(6), something like that, allow you to go

13     beyond the scope of a direct or a cross in order to get that

14     in.  If it's impeachment, you obviously don't need to designate

15     it.  But if it's just you want to designate somebody who's

16     going to testify live and you know that and have a commitment,

17     then don't bother to designate.

18          And those as to which you do designate that are

19     properly designatable I want a transcript, full transcript of

20     the entire deposition and then it's color-coded with -- and you

21     can do it in magic marker, but you folks seem to be

22     technologically savvy.  I don't care what color for the person

23     that's designating, a different color for the counter

24     designating.  And then red for whatever is objected to.  Take

25     all objections out.  Don't designate objections.  Just take

DANLTRAC                    Conference

them out.  You'll have an opportunity to preserve your

objection in your objections to the designations.

        But what I want, when I say objections out, I mean

objection to form, counsel colloquy, all of that should come

out because if it's going to go on a video screen for any of

it, then I want to make sure that I know exactly where the

start and stops are.

        So it will be color-coded.  So I'll get a transcript

that will be color-coded and the side-by-side with that will be

usually in Excel, but I can take it in Word, a spreadsheet that

will have the name of the deponent, line to, line to.

        If there's an objection, nature of the objection

hearsay, lacks foundation, clearly speculating, no firsthand

knowledge, whatever it's going to be.  And then another box

that will have the response which is whatever your response is.

And then there will another empty box for the Court's ruling.

        And I will try to give you rulings on those at the

final pretrial, but if you have eight gazillion objections to

documents, I'll spend more of my time on the documents at the

final pretrial than I will on the depositions and you'll get

the depositions before trial so you'll know what you've got.

        For documents, I want the same format for the exhibits

which is each of them are numbered.  They're all premarked.

It's PX1 and DX1.  And when you see each other's, I don't care

if there are gaps or they skip around, only mark every document

1    once.  One of you gets to mark it.

2            If you want me to instruct the jury that the jury

3    should draw no inference as to who's presenting a particular

4    document, that's fine.  I've done that before.  But we don't

5    want PX1 to actually be the same thing as DX128 because the

6    jury is going to see every document once.

7            So once you see each other's, you may pull a document

8    and then you may have a gap.  Do not worry about gaps, okay,

9    and renumbering everything.  Just do it once.  And so you'll

10   have your numbered documents, PX1 through whatever, DX1 through

11   whatever, and then you'll have the name of the document.  If

12   there's any objection, what the objection is, same thing, you

13   know, hearsay, whatever it is.  A response sufficient to allow

14   the Court to rule.

15           And then I will give you what I call a preliminary

16   ruling in my empty column which I will fill in which will be S

17   or an O, sustained or overruled as to the objection.  However,

18   sometimes I can't tell precisely -- it doesn't look like

19   there's any possible foundation here or it does look like the

20   document is incomplete, but there may be a good response that

21   you weren't able to quite get in in your block.

22           And so I call it preliminary because for you to

23   preserve your evidentiary objections at trial for what I've

24   precluded you need to reoffer it.  You can offer it the morning

25   before we go into court.  That's what the 9 a.m. slot is for.

DANLTRAC                    Conference

So if I've precluded 20 of your most interesting documents that

you really really want to have, No. 1, we can talk about you

trying to fix whatever the problem is and laying a proper

foundation or curing whatever the objection is or, two, if I

don't think it's curable, I think it's still irrelevant or

whatever the issue is, you still think you need it, you'll

proffer it on the morning of a particular trial day.  I then

will make a confirming ruling.  Okay.

So these objections to documents are tentative rulings

to give you a sense as to what you should open on, what you

should not open on, and what you're likely to be able to use.

So it's much more common to have a sustained objection turned

around by fixing an objection than having something I said oh,

that can come in, not come in.  And if you haven't objected to

a document, you have waived your objection.  That should not

encourage you to overobject.

So you know if I have -- at trial I'll have all of

your objections in front of me and if I say, somebody stands

up, Ms. Kazakis stands up and says DX7, I move to admit.  And

you folks, Ms. Forshaw, haven't object and you get up and say

yes, we have an objection, and there's no objection here, I'm

going to overrule you.

MS. FORSHAW:  Okay.

THE COURT:  All right.  So all that stuff will be in.

You'll give me a list of the documents that are objected to and

DANLTRAC                         Conference

1    I'll get binders of the documents that are objected to only

2    pretrial.  I don't need all of your documents, okay.  I only

3    want those that are objected to.

4         I have been known when people have tried to put in

5    over a thousand trial exhibits to throw the list back at people

6    and say -- I'm not saying you won't have a thousand.  I'm

7    saying if you come up with what I believe in the context of the

8    case as this then exists a number that is too large for human

9    beings to really think is going to be used, I will tell you to

10   take another stab at thinking about your case because I'm not

11   going to go through 500 objections pretrial.  It's neither

12   humane nor reasonable.

13        So that gives you a sense of what I'm going to need.

14   So that's what you're looking at, Ms. Canella, that's what

15   you're looking at.  Okay.

16        MS. FORSHAW:  She's been there.

17        THE COURT:  I don't know.  That's between everybody

18   who's doing what.

19        So all right.  Now in terms of the other briefing, so

20   if we're looking at February 18 and you folks need to get your

21   pretrial materials in by the 4th, the next thing I'm going to

22   hear is we need rulings on summary judgment in order to know

23   whether to put in any documents on X, Y, or Z.

24        MS. FORSHAW:  Right.

25        THE COURT:  And we also need to know your rulings to

DANLTRAC                    Conference

know whether or not we have a motion in limine on X, Y, or Z.
So you're going to immediately start telling me even though you
want the time that you can't possibly have me ruling on summary
judgment sometime before trial like, you know, the 6th because
it's going to screw you all up.

So that means I have to have things fully briefed, I
think I've got to have it fully briefed by the 10th of January.
I don't think there's any way for me humanly to get through
this number of motions.

MS. KAZAKIS:  I don't think you will.  260 pages of
briefing and 250 some exhibits.

MS. FORSHAW:  Your Honor, it's the same issues:
pollution exclusion, notice.  I think you're pretty familiar
with the legal issues.

THE COURT:  It's going to be a lot of work.  I can
tell you from working on the ones I'm working on right now that
just going through the documents and trying to figure out
Calverton one from Scanlon 27 from Heskin 94 is, you know, see
attachment D which appears four times in different -- it's a
challenge.

So I need the briefing completed by January 10.  And I
think that that means that I'm going to let you folks, I'm
going to give you a view and I'm going to let you folks have
one more conversation now that you have these dates before I
impose something.

DANLTRAC                    Conference

1          Okay.  My view is that expert reports need to be in,

2     but depositions don't need to happen before summary judgment is

3     opposed.  I think that is a fair way to split this baby which

4     is we don't have to have the depositions and, by the way, if

5     the person is opining on something that's not in their report,

6     you've got a different problem on your hands.

7          So see if you can come up with what works.  If not,

8     write me a letter tomorrow saying we're still at an impasse.  I

9     still think it should be staged in this way, I still don't, and

10    I'll just decide it.  But now I've given you all these other

11    dates.  I've told you I think the report should be in but the

12    depositions should happen afterwards.  I'll decide summary

13    judgment without the benefit of the deposition testimony.

14         Unless you folks want to agree that certain

15    depositions, for instance, Mr. or Ms. Pollution exclusion or

16    accidental, nonaccidental, that that deposition can and should

17    happen earlier because it's going to be fully in.

18         So, for instance, if the rebuttal reports go in on

19    October 30 and you can start taking expert depositions as to

20    some but not all of these depositions, if it's one individual

21    who's done at that point, you've got that person done and in

22    the can and cite that person to your heart's content in your

23    summary judgment opposition.  Okay.

24         MS. FORSHAW:  Okay.

25         THE COURT:  So have one more conversation --

DANLTRAC                    Conference

1          MS. FORSHAW:  We'll do that now.

2          THE COURT:  -- about those two things.  So it's really

3     just how you want to stage the experts and how you're going to

4     do the briefing.  And if you can't agree, I will impose.

5          MS. FORSHAW:  Okay.

6          MS. KAZAKIS:  Your Honor, one question.  If there is

7     deposition testimony that's highly relevant, will you permit us

8     to supplement our briefing?  Because I've been in that position

9     before.

10          THE COURT:  I understand.  I think in this case if I

11     said yes to that, I can guarantee that I'll have a series of

12     letters.  I'll do with you guys which I never do with anybody

13     else which is stop.  You have gotten two or three of these

14     enough, stop orders.

15          MS. FORSHAW:  You do have a rule no reply is allowed.

16          THE COURT:  I do but you know.

17          MS. KAZAKIS:  That's why I asked because we have

18     gotten some of those.  On the other hand, experts have been

19     known to be pushed back on their opinions and --

20          THE COURT:  Then what I suggest is that what I had

21     written down before when I was doing my little scratchings that

22     because of the issue -- here it is -- of the documents and if

23     you folks on Travelers side, on Century can help out finding

24     some documents if your experts have just given a bunch of

25     mishmash, I don't think that's fair.  Write me a letter if

DANLTRAC                    Conference

1  somebody gives you a bunch of crap and I will tell them to put

2  Bates numbers next to it.

3          But November 8.  So here's what you should do.  You

4  should do your rebuttals by November 8.  It gives you an extra

5  week.  Then the depositions should happen immediately and then

6  that gives you plenty of time for the briefing.

7          MS. FORSHAW:  Okay.  We'll go talk and hopefully we

8  can.

9          THE COURT:  I think that makes sense.  That way

10 November 8, take the depositions.

11         You'll still have that one that's going to be hanging

12 over, right?

13         MS. KAZAKIS:  The damages.

14         MS. FORSHAW:  There's not.

15         THE COURT:  That was a different one.

16         MR. CELLUCI:  Your Honor, just one other thing.  We do

17 have one minor fact issue, potential fact deposition that was

18 alluded to by --

19         THE COURT:  H2M.

20         MR. CELLUCI:  Exactly, your Honor.  So we're trying to

21 work it out right now to see if they can point us to some

22 documents to tie up the pictures we just had produced to us of

23 the barrels and what the contents were and try to work it out.

24 If not, we'd like to get a deposition maybe next week if we

25 can.

DANLTRAC                    Conference

1          MS. KAZAKIS:  Your Honor, if I may, sort of what we're

2     trying to get away from.  Mr. Celluci said it's a minor issue.

3     It's actually not such a minor issue.  And I won't go into it

4     because it deals with the deep opinions of their experts.  But

5     we just we feel like Northrop feels like it's death by a

6     thousand cuts.

7          THE COURT:  So do I.

8          MS. KAZAKIS:  I just want to put that on the record

9     because those -- what they're seeking may very well have a very

10    significant effect on expert reports and opposition.

11         THE COURT:  That will be next week would be a good

12    time then.  Why don't you take it this week.  Can you take it

13    on Friday?

14         MR. CELLUCI:  Your Honor, it's not within our control.

15    H2M has to identify the person with the knowledge that can tie

16    up what was in the barrels with the --

17         THE COURT:  You guys should identify -- work with H2M.

18    It sounds like you're go to have the deposition immediately if

19    you're going to take it.

20         MS. KAZAKIS:  Or not at all.  We feel like fact

21    discovery is ended.

22         THE COURT:  Well, this is one of those situations.  I

23    strike everything I said on H2M apart from using the word H2M

24    that I said so far.  I have given no rulings on H2M.

25              Here's what I think.  I have no idea what these

1    photographs are.  I don't know whether or not they were late

2    produced, timely produced, who produced them, what they relate

3    to.  Write me a letter immediately if you guys can't figure out

4    how to deal with H2M and you feel there is some relief because

5    discovery is closed.  So but if there's something that's good

6    cause shown, then it's good cause shown.  So I need to

7    understand better and I don't want to understand it now.

8              MR. CELLUCI:  Sure, I understand.

9              MS. KAZAKIS:  I totally agree.  We just that's why we

10   want the Court's indulgence if something happens in depositions

11   to be able to tell the Court because we feel like indulgences

12   have been given many other ways.

13             THE COURT:  I have to say it's going to be really hard

14   to add anything, which is why the November 8 date should be the

15   date for the expert rebuttals.  Okay.  That gives you relief

16   from October 30.  It's not going to stage everything as you

17   would like it.  I understand and would set a schedule normally

18   if I could, believe you me, where everything is in a reasonable

19   way.  You're going to have this other one that's hanging out.

20             MS. FORSHAW:  Your Honor, we're also going to have

21   Calverton.

22             THE COURT:  That's the one that's hanging out.

23             MS. FORSHAW:  I just wanted to make sure.

24             MS. KAZAKIS:  Damages is hanging out.

25             MS. FORSHAW:  Damages.

DANLTRAC                    Conference

1          MS. KAZAKIS:  So Calverton, we're going through a

2     staggered schedule on that?

3          THE COURT:  What you're saying is I have a choice

4     between staggered schedule and getting additional death by a

5     thousand cuts in January on the briefing.  I choose your

6     staggered schedule to my death.

7          MS. KAZAKIS:  Rebuttals are due on the 8th.  That's

8     great.

9          THE COURT:  Take the depositions.

10          MS. FORSHAW:  For Bethpage.

11          MS. KAZAKIS:  But Calverton, I think we just want to

12     be clear on what the deadlines are.  Their proposal is

13     Calverton disclosures are due next week and then three weeks

14     after that their rebuttals.  They have a Calverton motion

15     sitting out there.

16          THE COURT:  But you guys are -- the one thing I

17     haven't resolved --

18          MS. KAZAKIS:  Is when the motions.

19          THE COURT:  -- when the briefing is going to come in.

20          MS. KAZAKIS:  I want to make that clear.

21          THE COURT:  But I am resolving November 8.

22          MS. KAZAKIS:  Right, okay.

23          THE COURT:  And the expert schedule actually we can do

24     it all together.  November 8 is for the rebuttal for the group

25     that's already been served.  Take the depositions immediately.

DANLTRAC                    Conference

1    Start them right away.  Particularly those --

2                MS. KAZAKIS:  Same experts though.  We don't want

3    experts to be deposed twice.

4                THE COURT:  No, but you're going to have eight of the

5    experts done.  There's got to somebody in that eight.

6                MS. FORSHAW:  There's at least two.

7                MS. KAZAKIS:  That's what I think Ms. Forshaw was

8    trying to say.  Eight of the ten also deal with Calverton.  So

9    if we have a staggered Calverton schedule, that means that

10   you're going to have experts being deposed twice on what

11   they've already submitted and then what they're submitting for

12   Calverton.

13               THE COURT:  You'll figure it out.  All I'm saying

14   is -- here's what I'm saying:  After the briefing is in on

15   January 10, no more briefing.  The wall comes down.  Figure out

16   how to stage your expert disclosures, discovery, depositions in

17   a manner that allows you to take those individual's depositions

18   whose depositions you think you need.

19               MS. FORSHAW:  Yep.

20               THE COURT:  If it's a battle of the experts, then

21   obviously there's going to be a problem with summary judgment.

22               MS. FORSHAW:  Right.

23               THE COURT:  Potentially, if it's just a fact question

24   where they're battling.

25               Daubert motions.  If anybody has a Daubert motion, you

DANLTRAC                        Conference

1    have to have it in on the same schedule when I have summary

2    judgment in my hands, right.  I can't do it on an MIL schedule.

3    You've got to have a Daubert in, if there's a Daubert used on

4    summary judgment.

5                MS. KAZAKIS:  You want it fully briefed by 10th.

6                THE COURT:  If you're going to say this person should

7    be precluded and it's somebody who's utilized on summary

8    judgment, I need to preclude them or not for trial.

9                MS. FORSHAW:  Got it.

10               THE COURT:  Okay.  Thanks.  We're adjourned.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25