UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRAVELERS INDEMNITY COMPANY, TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, formerly known as TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND, TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as THE AETNA CASUALTY AND SURETY COMPANY, AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, formerly known as TRAVELERS INDEMNITY COMPANY OF ILLINOIS, <br><br>       Plaintiffs, <br><br>    v. <br><br>NORTHROP GRUMMAN CORPORATION, NORTHROP GRUMMAN SYSTEMS CORPORATION, <br><br>       Defendants, <br><br>*and* <br><br>CENTURY INDEMNITY COMPANY, eventual successor in interest to INSURANCE COMPANY OF NORTH AMERICA, <br><br>       Nominal Defendant. | 12-CV-03040 (KBF)(FM) <br><br><br><br><br><br><br><br><br><br><br><br>ECF CASE |

**REPLY IN SUPPORT OF MOTION BY DEFENDANT NORTHROP GRUMMAN CORPORATION AND DEFENDANT AND COUNTERCLAIM/CROSSCLAIM-PLAINTIFF NORTHROP GRUMMAN SYSTEMS CORPORATION TO REALIGN THE PARTIES AND SET THE ORDER OF PROOF FOR TRIAL**

DC: 5125070-1

## TABLE OF CONTENTS

Page

ARGUMENT ............................................................................................................................. 1

I. Courts Routinely Exercise Their Broad Discretion to Realign the Declaratory-Judgment Plaintiff-Insurer and the Defendant-Insured ......................................... 1

II. Realigning NG and the Insurers Is a Proper Exercise of the Court's Discretion ................ 5

III. Travelers' Authorities Are Inapposite ................................................................ 8

CONCLUSION ......................................................................................................................... 11

## TABLE OF AUTHORITIES

Page

**CASES**

*Aetna Cas. & Sur. Co. v. Dow Chem. Co.*,
   44 F. Supp. 2d 870 (E.D. Mich. 1999)..................................................................................3

*Allegro Ventures, Inc. v. Almquist*,
   No. 11 Civ. 2009, 2013 WL 3864329 (S.D. Cal. July 24, 2013)..........................................2

*Allendale Mut. Ins. Co. v. Bull Data Sys.*,
   No. 91 Civ. 6103, 1995 WL 5895 (N.D. Ill. Jan. 4, 1995) ............................................3, 5, 7

*Am. Home Assurance Co. v. Merck & Co.*,
   386 F. Supp. 2d 501 (S.D.N.Y. 2005)...................................................................................9

*Am. Home Assurance Co. v. Merck & Co.*,
   462 F. Supp. 2d 435 (S.D.N.Y. 2006)...........................................................................5, 8, 9

*City of Indianapolis v. Chase Nat. Bank of City of N.Y.*,
   314 U.S. 63 (1941)................................................................................................................1

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
   No. 08 Civ. 2764, 2011 WL 3240456 (D. Md. July 27, 2011).............................................2

*Geico Cas. Co. v. Beauford*,
   No. 8:05 Civ. 697, 2007 WL 2412953 (M.D. Fla. Aug. 21, 2007), *aff'd*, 2007 WL
   2446552 (Aug. 23, 2007) ..................................................................................................3, 6

*L-3 Commc'ns Corp. v. OSI Sys., Inc.*,
   418 F. Supp. 2d 380 (S.D.N.Y. 2005)...................................................................................1

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Reichhold, Inc.*,
   No. 1:06 Civ. 939, 2009 WL 3125483 (M.D.N.C. Sept. 30, 2009).............................3, 4, 5, 6

*Northville Indus. Corp. v. Nat'l Union Fire Ins. Co.*,
   89 N.Y.2d 621 (1997) ...........................................................................................................6

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*,
   467 F.3d 107 (2d Cir. 2006)............................................................................................9, 10

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*,
   No. 01 Civ. 9291 (S.D.N.Y. Nov. 24, 2003) ....................................................................8, 9

*Starter Corp. v. Converse, Inc.*,
   No. 95 Civ. 3678, at *2 (S.D.N.Y. Dec. 3, 1996).................................................................8

*Sweet Jan Joint Venture v. F.D.I.C.*,
   809 F. Supp. 1253 (N.D. Tex. 1992) ...................................................................................2, 7

*Tesco Corp. (US) v. Varco I/P, Inc.*,
   No. 05 Civ. 2118, 2006 WL 6625915 (S.D. Tex. Nov. 9, 2006) ................................................8

On November 22, 2013, the Northrop Grumman Defendants ("NG") moved the Court to realign the parties and set the order of proof for trial, such that NG would be designated the plaintiff, would open and close the argument, and would present evidence first.  This request was straightforward and should have been uncontroversial, since it merely reflected the facts (i) that NG is the natural plaintiff with the burden of proof on most issues, including the threshold and logically antecedent issue of whether its underlying environmental liabilities fall within the basic coverage grant of the policies, and (ii) a failure by NG to meet that initial burden of demonstrating that its claims are within the policies' coverage grant would end the case without any need for the Court or the jury to address all of the affirmative defenses asserted by Travelers and Century (together, "the Insurers").  *See* Doc. 394 (NG's Mem.).  In response, however, Travelers has attempted to muddy the waters by misstating the applicable law and mischaracterizing NG's arguments.  *See* Doc. 410 (Trav. Opp.).  Because logic, clarity, and efficiency favor placing NG in the role of the plaintiff, and placing the Insurers in their natural roles as defendants, realignment is well within the Court's discretion and should be ordered here.

## ARGUMENT

I.  **Courts Routinely Exercise Their Broad Discretion to Realign the Declaratory-Judgment Plaintiff-Insurer and the Defendant-Insured**

Despite its efforts, Travelers cannot evade four governing principles.  First, "[t]he trial court has broad discretion in deciding the realignment of parties and order of proof." *L-3 Commc'ns Corp. v. OSI Sys., Inc.*, 418 F. Supp. 2d 380, 383 (S.D.N.Y. 2005) (emphasis added).  Although Travelers' brief strikes the word "broad" from this axiom, *see* Trav. Opp. at 2, it is plain that a district court has wide latitude to structure its own proceedings and "arrange the parties according to their sides in the dispute" to promote efficient and logical dispute resolution. *See City of Indianapolis v. Chase Nat. Bank of City of N.Y.*, 314 U.S. 63, 69 (1941).

1

Second, the trial court "ordinarily . . . extends the privilege of opening and closing the case to the party that has the burden of proof," and a declaratory judgment action does not automatically upset this natural ordering. *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, No. 08 Civ. 2764, 2011 WL 3240456, at *4 (D. Md. July 27, 2011) (citation, internal quotation marks, and alteration omitted); *see also Allegro Ventures, Inc. v. Almquist*, No. 11 Civ. 2009, 2013 WL 3864329, at *1-*2 (S.D. Cal. July 24, 2013) (realigning parties where defendant's "affirmative positions made him more suitable to be in the plaintiff position, and [declaratory-relief plaintiff's] defensive positions made it more suitable to be in the defendant position," and "burdens of proof . . . support[ed] realignment," as defendant had more substantial burden of proof). Furthermore, where both parties in the case carry burdens of proof, courts have recognized that the party with the predominant or threshold burden of proof is more naturally the plaintiff. *See, e.g.*, *Sweet Jan Joint Venture v. F.D.I.C.*, 809 F. Supp. 1253, 1258 (N.D. Tex. 1992) (permitting defendant "to present evidence first" and "participate in trial as plaintiff," even though both parties had burdens of proof, because defendant had threshold burden of proof, and noting: "[u]ntil [defendant] establishes that it is entitled to recover on [certain notes], the plaintiffs are not obligated to adduce evidence to support their defenses to liability").

Third, courts will regularly realign the parties or set the order of proof to make the presentation of evidence clearer for the jury or make the trial run more efficiently. Indeed, to ensure an orderly and sensible presentation of evidence to the fact-finder, courts often rearrange the parties to bring the parties' central dispute to the forefront of trial. *See id.* (permitting defendant to proceed as plaintiff to "present . . . case to the jury" in the "clearest manner").

Fourth, in the insurance context, where the defendant-policyholder has the threshold and predominant burdens of proof in a coverage dispute with a declaratory-judgment insurer, or

where the interests of efficiency and clarity call for realignment, courts will not hesitate to realign the parties and properly set the order of proof.  *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Reichhold, Inc.*, No. 1:06 Civ. 939, 2009 WL 3125483, at *9 (M.D.N.C. Sept. 30, 2009); *Geico Cas. Co. v. Beauford*, No. 8:05 Civ. 697, 2007 WL 2412953, at *2 (M.D. Fla. Aug. 21, 2007) (realigning declaratory-relief plaintiff-insurer as defendant, and defendant-policyholders as plaintiffs, where defendants' counterclaims demonstrated that they had the "major burden in the action," and where realignment would focus trial on the primary dispute in the case), *aff'd*, 2007 WL 2446552, at *1 (Aug. 23, 2007); *Allendale Mut. Ins. Co. v. Bull Data Sys.*, No. 91 Civ. 6103, 1995 WL 5895, at *3 (N.D. Ill. Jan. 4, 1995).[1]

These four principles are well established and non-controversial.  Nonetheless, Travelers attempts to conjure from the case law another principle—one that does not harmonize with the rest: "[C]ourts will not [realign the parties] unless the defendant solely bears the burden of proof on the issues to be tried or the plaintiff's contentions allege facts in the negative." Trav. Opp. at 2-3 (emphasis in original).  This purported statement of the law is inaccurate.  Neither of Travelers' purported requirements is a necessary condition for realignment.  Courts may exercise their discretion to realign, even where both the declaratory-judgment plaintiff and the defendant have burdens of proof on certain issues to be tried to the jury.  In particular, realignment is ordered when a defendant named in a defensive declaratory judgment action carries the burden of proof on most issues and when the declaratory judgment plaintiff's burden of proof is logically subordinate to the defendant's burden.

---

[1] *See also Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 44 F. Supp. 2d 870, 876 (E.D. Mich. 1999), where the court—in the context of determining diversity jurisdiction—realigned the declaratory-relief plaintiff-insurer and other insurers as defendants, and the defendant-insured as plaintiff, because "the primary dispute" was "whether the [i]insurers have a duty to defend and indemnify [the insured]."  Although diversity jurisdiction is not the reason for realignment in this case, the *Aetna* court readily recognized that the insured was more naturally the plaintiff .

*Reichhold*, for example, establishes the falsity of Travelers' legal assertion. In *Reichhold*, as here, the declaratory-judgment plaintiff-insurer and the defendant-policyholder both carried burdens of proof on issues to be tried to the jury—and yet, the trial court realigned the parties. *See* 2009 WL 3125483, at *9. The facts of *Reichhold* are analogous to those here: The insurer filed a preemptive declaratory judgment action against the insured-manufacturer, seeking a judgment that a customer's third-party claims against the insured were not covered by the commercial liability insurance policy, and the insured brought counterclaims, seeking a determination that coverage did exist. *Id.* *1. To bring the claims within the coverage grant, the insured had to prove that the underlying liability resulted from "property damage" and that the "property damage" had been caused by an "occurrence," which required showing that the property damage happened during the policy period and had been caused by an "accident" that was "neither expected nor intended from the standpoint of the insured." *Id.* at *2; *see also id.* at *5. Additionally, the insured had to show that it had provided sufficient and timely notice to the insurer. *Id.* at *7-*8. The insurer, on the other hand, had the burden to prove certain policy exclusions, including an "Intentional Acts" exclusion, which "exclude[d] coverage for property damage 'expected or intended from the standpoint of the [i]nsured.'" *Id.* at *3 n.1.

Like NG, the insured in *Reichhold* bore the burden to prove that the underlying claims were within the policy's basic coverage grant and the condition precedent of timely notice. Like Travelers and Century, the insurer in *Reichhold* bore the burden to prove the applicability of certain policy exclusions. Based on these facts, the *Reichhold* court held that the motion to realign the parties was "well-taken" and that "realignment would remove unnecessary confusion." *Id.* at *9. Realignment is likewise appropriate here. *Reichhold* not only contradicts Travelers' assertion that a court may realign the parties only if the defendant bears the sole

4

burden of proof on an issue for trial, but also provides a guidepost for the Court in resolving this motion in favor of realignment.[2]

## II.     Realigning NG and the Insurers Is a Proper Exercise of the Court's Discretion

Realignment is especially warranted in this case because NG will carry the predominant and threshold burdens of proof at trial.  To be sure, the Insurers will carry burdens, too.  But even if the burdens are split, they are not split evenly.  NG has a much greater share.  Therefore, this case is unlike Travelers' primary supporting authority, *American Home Assurance Co. v. Merck & Co.*, 462 F. Supp. 2d 435, 441-42 (S.D.N.Y. 2006).  In that case (as discussed in more detail below), the insured and the insurer bore roughly equivalent burdens of proof.

Here, NG bears substantial and logically antecedent burdens of proof.  For example, NG carries the threshold burden to prove the existence, material terms, and limits of missing insurance policies in effect during a number of years; that it complied with various "conditions precedent," including timely notice of occurrences and claims, or that it had a valid excuse for delayed compliance; that latent environmental damage actually happened during policy periods stretching from 1951 until 1985; that such damage was caused by one or more covered "occurrences"; that it is "legally obligated to pay . . . damages" because of the environmental damage; that it incurred recoverable defense costs in seeking to minimize or reduce the extent of its liability to NYSDEC; and the amount of damages it sustained as a result of the Insurers' non-performance.  All of these issues are logically antecedent to the applicability of the Insurers'

---

[2] Travelers' conclusory attempts to dub *Reichhold* and NG's other supporting authorities as "paltry" or "inapposite" are meritless.  *See* Trav. Opp. at 2, 7.  To illustrate, the *Allendale* court did not conclude that "it would be clearer for the jury to reorder the presentation because … only the defendants had a burden to prove"—as Travelers' avers.  *Id.* at 10.  Travelers mischaracterizes *Allendale*'s reasoning.  *See* 1995 WL 5895, at *3 (permitting defendant-insureds "to put their case on first," because they bore "the burden of proof on their [c]ounterclaims and [c]ross-claims, including the burden to prove the existence and the amount of coverage," and because "such a procedure" promoted the "goal of ensuring the presentation of evidence to the fact-finder in an orderly and sensible manner").

various defenses to coverage.

NG even has the burden of proof with respect to the applicability of key exclusions in the case. For example, Travelers itself insists that NG has the burden of proving that the "sudden and accidental" exception to the statutory pollution exclusion applies, citing *Northville Industries Corp. v. National Union Fire Insurance Co.*, 89 N.Y.2d 621, 634 (1997). Since there is no dispute that the environmental damage in this case arises out of the "discharge, dispersal, release or escape" of contaminants or pollutants, Travelers' supposed burden of proof on the statutory pollution exclusion is no burden at all.

Indeed, NG's burdens go to the logically antecedent, core issues in this case: whether the policies exist and their material terms can be established and, if so, whether NG has affirmatively demonstrated that its claims fall within the coverage grant. In sharp contrast, Travelers' burdens—such as the applicability of "owned property" and certain pollution exclusions—are logically subordinate to NG's burdens. Thus, by realigning the parties according to their respective burdens, the Court would clarify the order of proof at trial by placing the antecedent, core issues in the litigation at the outset of the trial. *Cf. Reichhold*, 2009 WL 3125483, at *9; *Geico Cas. Co.*, 2007 WL 2412953, at *2.

Furthermore, Travelers does not—and cannot—dispute that realignment would enhance the efficiency and clarity of trial presentation. As an empirical matter, permitting NG to proceed first would be more efficient: If NG fails to meet its threshold burden to establish coverage, the trial ends. And from a juror's perspective, it would make considerably more sense to hear evidence as to why coverage exists <u>before</u> hearing evidence about whether an exclusion to such coverage applies. In fact, Travelers appears to concede such procedural realities; rather than explaining why the current ordering is more efficient or sensible than NG's requested ordering,

6

Travelers faults NG for underestimating the intelligence of the jury and the Court.  *See* Trav. Opp. at 1, 10.  NG has never suggested that no jury could conceivably comprehend the current haphazard ordering, in which Travelers would put on a series of affirmative defenses, NG would then put on an affirmative case and rebut Travelers' affirmative defenses, Century would then put on its defensive case (which overlaps with, but is not the same as, Travelers' defensive case), and NG would then have to rebut Century's defenses all over again.  But surely such a disorderly presentation makes no sense in a jury trial.  Faced with the <u>choice</u>—which the Court indeed has—of (i) a clear, logical presentation and (ii) a comparatively confusing presentation that would require numerous jury instructions to clear up the confusion, NG urges the Court to select the former.  *Cf. Allendale*, 1995 WL 5895, at \*3; *Sweet Jan*, 809 F. Supp. at 1258.

      Century's presence underscores the need for realignment.  The Insurers have still not explained why Century should share Travelers' asserted privilege to open and close the case, when Travelers, not Century, is the only insurer that sought declaratory relief.  Nor have the Insurers explained how Century, a "Nominal Defendant" whose interests have been relentlessly adverse to NG's, could plausibly share a case-in-chief with NG.  The Insurers have also neglected to clarify whether NG's presentation at trial would be sandwiched between their own presentations—which, again, would hopelessly confuse the jury.  To these concerns, all of which were detailed in NG's opening brief, *see* NG Mem. at 6, the Insurers offer only a bold prediction in response: Century will prevail on its summary judgment motions.  *See* Trav. Opp. at 10 n.1 ("Century's involvement in this case does not raise any concerns."); Doc. 414, at 1 (Century's Joinder) ("As to Century's alignment, it is a nominal defendant and has filed dispositive motions that, if granted, will resolve all Phase I Sites prior to trial.").  This response is presumptuous; it is a non-sequitur to NG's repeated contention that the current alignment risks confusion.

7

Finally, realignment will not unfairly prejudice Travelers, which is thoroughly accustomed in coverage cases to putting on its inherently defensive case after the policyholder has put on its affirmative case for coverage. In fact, realignment would permit Travelers and Century to move for a directed verdict, without putting on any defensive case at all, if they believe at the conclusion of NG's case-in-chief that it has failed to establish one or more essential elements of its affirmative claim for coverage.

### III. Travelers' Authorities Are Inapposite

Travelers relies on only two insurance cases to support its unsubstantiated argument that courts deny motions to realign where both parties carry a burden of proof at trial: (i) *Merck*, 462 F. Supp. 2d at 441-42, mentioned above; and (ii) *SR International Business Insurance Co. v. World Trade Center Properties*, No. 01 Civ. 9291 (S.D.N.Y. Nov. 24, 2003). When placed in proper context, each case is plainly inapposite.[3]

Although the court in *Merck* denied the defendant-insured's motion because "each party had the burden of proof on separate issues," 462 F. Supp. 2d at 442, the insured there clearly did not have the predominant burden of proof. The insured carried the burden to prove that its claims fell within a solitary transit insurance policy. *Id.* But the insured did not bear, as NG does here, the burden of establishing the existence, terms and limits of missing policies, establishing coverage under separate policies in effect over the course of 35 years, establishing compliance with "condition precedents" to coverage and proving the applicability of exceptions to qualified exclusions in Travelers' policies. *See Am. Home Assurance Co. v. Merck & Co.*, 386

---

[3] Most of Travelers' remaining supporting authorities involve intellectual property litigation and present unique issues that render them irrelevant. *See, e.g.*, Trav. Opp. at 3, 4 (citing *Starter Corp. v. Converse, Inc.*, No. 95 Civ. 3678, at *2 (S.D.N.Y. Dec. 3, 1996), a trademark infringement case where the court's reasoning on realignment was entirely driven by standards that are unique to trademark infringement suits); *see also id.* at 4 (citing *Tesco Corp., (US) v. Varco I/P, Inc.*, No. 05 Civ. 2118, 2006 WL 6625915 (S.D. Tex. Nov. 9, 2006), a patent infringement case where the court stated that a "recognized basis for realignment is to make the issues clearer for the jury").

F. Supp. 2d 501, 505-07 (S.D.N.Y. 2005) (describing the dispute).  Indeed, as an earlier decision in the case demonstrates, a central issue in *Merck* was whether the <u>insurer</u> could satisfy its burden to show that the insured had violated the transit policy's "sue and labor clause."  *See id.* at 517-18; *see also id.* at 507 ("American Home argues that Merck violated its obligations under this clause, which is of ancient origin, to salvage the pharmaceuticals that are the subjects of the Prototype Claims.").  *Merck* does not cabin the Court's discretion to realign the parties.

As for the second purported authority upon which Travelers has relied, *SR International Business Insurance Co. v. World Trade Center Properties*, No. 01 Civ. 9291 (S.D.N.Y. Nov. 24, 2003), Travelers does not cite to a written decision, but instead presents a transcript from a hearing in which the court denied an insured's informal request to realign the parties.  *See* Doc. 411 (Akers Decl.).  Travelers urges the Court to accept, as precedential authority, a snippet from the sprawling World Trade Center ("WTC") insurance litigation—which has spanned more than a decade and generated dozens of opinions—without bothering to provide any context.  *See* Trav. Opp. at 4, 7, 9.  Once the case is examined, its irrelevance to NG's motion becomes clear.

At the time of the 2003 hearing Travelers highlights, the primary issue was which of the WTC insurers had bound themselves to the "WilProp form"—a form that the policyholder's broker had distributed to prospective WTC insurers in the spring of 2001, and which included an insurer-friendly definition of "occurrence."  *See SR Int'l Bus. Ins. Co. v. World Trade Cntr. Prop.*, 467 F.3d 107, 115-16 (2d Cir. 2006) (summarizing background).  As the Second Circuit recounted, "Chief Judge Mukasey structured a two-phase jury trial to adjudicate the two principal factual disputes that remained": (i) "in each case where an insurer claimed to have bound to the 'single-occurrence' Wilprop form, whether the parties actually bound to that form"; (ii) in each case where the form was found not to govern, "whether the parties intended to issue

9

coverage based on a definition of occurrence that contemplated a one- or two-occurrence treatment of the events of September 11." *Id.* at 118.

Thus, when Chief Judge Mukasey declined to realign the parties in 2003, he was <u>not</u> facing a case in which the central dispute was the policyholder's claim for coercive relief, with all of the attendant burdens such a claim imposes on a policyholder to establish the terms of numerous policies (some of which are missing), the existence of a covered "occurrence" and damages flowing from that occurrence. Rather, the central dispute was whether the <u>insurers</u> could demonstrate that they had bound coverage on a pro-insurer policy form.[4]

Accordingly, neither of Travelers' principal authorities contradicts the proposition that, where the defendant-policyholder has the threshold and predominant burdens of proof in a coverage dispute with a declaratory-judgment plaintiff-insurer, and where efficiency, clarity, and avoidance of jury confusion call for realignment, the court may properly realign the parties. Therefore, the Court should exercise its broad discretion to permit NG to proceed at trial as the plaintiff—with the corresponding rights to open and close the case and to present evidence first that the policies exist, that the underlying liabilities fall within the basic coverage grant, and that its damages are provable. Absent such evidence, there is no need to even consider the Insurers' defenses to coverage.[5]

---

[4] *See* Akers Decl. at 7 (Tr. at 6:22-25 (The Court): "It doesn't have anything to do with racing to the Court. It has to do with . . . the effect of whether somebody is or isn't bound by Wilprop limits."); *id.* at 8 (Tr. at 8:25–9:1 (Trav. Counsel): "[T]he only thing I thought was being tried in [the] case was, Are you or are you not in the Wilprop form[?]"); *id.* at 15 (Tr. at 25:2-5 (Trav. Counsel): "Trial 1 will involve who bound on the Wilprop form. Whoever wins [T]rial 1 goes home as a matter of law."); *id.* at 17 (Tr. at 9:15 (Trav. Counsel): "[I]nsurers have assumed the burden of proving that the identified insurers in [P]hase 1 [are] bound on Wilprop . . .").

[5] NG respectfully reiterates its request for a prompt resolution of this motion. *See* NG. Mem. at 7.

**CONCLUSION**

For the foregoing reasons, NG respectfully requests that the Court grant NG's Motion to Realign the Parties and Set the Order of Proof for Trial.

                    COVINGTON & BURLING LLP

                    By:  s/ Georgia Kazakis
                          Georgia Kazakis

                    William F. Greaney
                    Georgia Kazakis
                    John F. Scanlon
                    COVINGTON & BURLING LLP
                    1201 Pennsylvania Avenue, NW
                    Washington, DC 20004-2401
                    (202) 662-6000
                    gkazakis@cov.com

                    *Attorneys for Northrop Grumman Corporation and Northrop Grumman Systems Corporation*

Dated: December 16, 2013