

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Rachel Strom**
(212) 402-4069 tel
RachelStrom@dwt.com

October 24, 2025

<u>VIA ECF</u>

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square, Courtroom 1106
New York, New York 10007

> Application **DENIED**.  Newsday LLC ("Newsday") may file a motion to intervene in the action for the purpose of unsealing the records at issue.  The motion shall identify the records sought to be unsealed with specificity and explain the basis for the delay in the intervention.  Newsday shall file any such motion by **November 26, 2025**.  Any response shall be filed by **December 12, 2025**.
>
> Dated: November 12, 2025
> New York, New York
>
> LORNA G. SCHOFIELD
> UNITED STATES DISTRICT JUDGE

    Re:   *The Travelers Indem. Co., et al. v. Northrup Grumman Corp., et al.*,
           12-cv-03040-KBF [rel. 16-cv-8778-LGS] – Unsealing of Records

Dear Judge Schofield,

    This firm represents Newsday LLC ("Newsday"). We write to request the unsealing of the filings in connection with Plaintiff Travelers Indemnity Company ("Travelers"), Defendant Northrup Grumman Corporation ("Grumman"), and Nominal Defendant Century Indemnity Company's ("Century") (collectively, the "Parties") motions for summary judgment filed in this litigation. As explained below, these judicial documents are subject to both the common law and First Amendment rights of access and the high bar required for overcoming those rights has not been met.[1]

    Indeed, it appears that the documents have been kept sealed based only on a finding that the lawyers at issue "in good faith" believe that marking the information as confidential is "***necessary to protect the interests of the client***." Dkt. No. 34 at 1 (emphasis added). Such a lax standard for keeping documents filed in a matter of extreme public concern away from public view falls woefully short of the First Amendment standard required here. Accordingly, Newsday respectfully requests that these records be unsealed in their entirety.

    I.    **Background**

    This action arises from an insurance coverage dispute between Grumman and its insurers, Travelers, regarding Grumman's contamination of land and groundwater around its facilities, including at its plant in Bethpage, New York and the Bethpage Community Park. Given that this litigation implicates the toxic contamination of public property and groundwater, it necessarily

---

[1] The right of access is an affirmative, enforceable public right, and the standing of the press to enforce it is well-settled. *See, e.g.*, *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982); *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83, 91 (2d Cir. 2004).

raises a clear matter of public concern. There can be no real argument on this point: individuals who were exposed to this pollution have a clear interest in this litigation.

The Parties have filed numerous summary judgment motions in this action. *See e.g.*, Dkt. Nos. 60, 198, 238, 250, 344, 352, 355, 358, 387, 619, 625, 653, 656. Critical filings—including the Parties' briefing in support and opposition to these motions, statements of material facts, affidavits, and related exhibits—are presently under seal or under heavy redaction.[2] But, the Parties' many motions to file these materials under seal offer the same rote justification for withholding these documents from the public: they claim that these filings should be sealed because they contain materials that were designated "confidential" pursuant to the Parties' stipulated protective order. *See* Dkt. No. 354 at ¶¶ 3–5.[3] But, the protective order at issue provides for the designation of "any document, information revealed in an interrogatory response or information during a deposition as confidential if counsel determines in good faith that such designation is necessary to protect the interests of the client." Dkt. No. 34 at 1. And, without any further rationale, the Court accepted this justification, holding that there was "good cause" for sealing strictly based on the Parties' self-serving designations under the protective order. *See e.g.*, Dkt. No. 364.[4] That is, there has been wholesale sealing of filed documents in a matter of extreme public importance based only on the basis that a lawyer believes that it would protect the interests of their client to have the information sealed.

## II. Argument

The public has a right of access to the summary judgment filings that is grounded in the common law and the First Amendment. The showing to overcome the public right of access is considerable. Under the common law analysis, summary judgment filings are generally subject to a "strong" presumption of public access, displaced only when the proponent of sealing shows that countervailing factors make secrecy necessary. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (holding that where documents "directly affect an adjudication or are used to determine litigants' substantive legal rights, the presumption of access is at its zenith, and thus can be overcome only be extraordinary circumstances") (citations and internal quotation marks omitted). The First Amendment standard is even more stringent: documents may be sealed only "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *see id.* at 126 (noting that the First Amendment creates a "higher burden" to justify sealing). The Parties have not met this standard here.

---

[2] *See e.g.*, Dkt. Nos. 66, 67, 87, 88, 111, 112, 203, 205, 202, 203, 205, 239, 247, 251, 278, 291, 301, 303, 359, 388, 395, 421, 424, 436, 441, 479, 493, 494, 498, 499, 620, 627, 659, 660, 661, 662.
[3] *See also* Dkt. Nos. 57, 63, 72, 74, 76, 98, 104, 193, 236, 248, 269, 286, 296, 299, 342, 350, 353, 356, 385, 391, 406, 408, 426, 434, 472, 484, 488, 617, 623, 654, 657.
[4] *See also* Dkt. Nos. 59, 86, 89, 90, 103, 110, 209, 246, 252, 277, 289, 306, 307, 363, 365, 366, 389, 397, 415, 416, 429, 439, 480, 495, 496, 621, 628.

### A. The Common Law Right of Access Mandates Unsealing of the Summary Judgment Filings

The common law right to inspect and copy judicial records is beyond dispute. This common law presumption is intended to promote accountability in the judicial process and to encourage public confidence in the administration of justice. *See*, *e.g.*, *id.* at 119. The common law presumption of access attaches to any "judicial document." *Id*. (defining "judicial document" as any material presented to the court "relevant to the performance of the judicial function and useful in the judicial process") (citation and internal quotation marks omitted). The weight of the common law presumption turns on "the role of the material at issue in the exercise of Article III judicial power" and "the resultant value of such information to those monitoring the federal courts." *Bernstein*, 814 F.3d at 142 (citation and internal quotation marks omitted). Once the right of access attaches and the appropriate weight of the presumption determined, it may be overcome only where "competing considerations" such as "the privacy interests of those resisting disclosure" outweigh the presumption. *Id.* (quoting *Lugosch*, 435 F.3d at 119–20).

Courts have consistently reaffirmed that "documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Lugosch*, 435 F.3d at 121; *see also Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) ("[I]t is well-settled that documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.") (citation and internal quotation marks omitted). The Second Circuit has held that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

Here, the only justification offered by the Parties for sealing is that the materials have been designated as "confidential" subject to the stipulated protective order in this case. *See e.g.*, Dkt. Nos. 300 at ¶¶ 3–5; 351 at ¶¶ 3–5; 354 at ¶¶ 3–5; 357 at ¶¶ 3–5. As noted above, that protective order provides for information to be deemed confidential simply because "counsel determines in good faith that such designation is necessary to protect the interests of the client." Dkt. No. 34 at 1. But, if this self-serving justification were sufficient, almost every case in America would be sealed because parties usually do not like to have their "dirty laundry" aired out in the public—particularly if they are accused of contaminating public land. A party's position that their interests are best served in secret is literally the antithesis of the "extraordinary circumstances" that would overcome the strong common law presumption of access here. *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). The summary judgment filings should be made available to the public.

### B. The First Amendment Right of Access Also Mandates Unsealing of the Summary Judgment Filings

Similarly, the First Amendment right of access applies to the summary judgment filings for similar reasons.

As an initial matter, the First Amendment right attaches to civil proceedings and associated records—including summary judgment filings—because such proceedings "have historically been open to the press and general public" and because "public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (quoting *Press-Enter. Co. v. Super. Ct.* ("*Press-Enter. II*"), 478 U.S. 1, 8 (1986)); *see, e.g., id.* at 124 (First Amendment right attaches to summary judgment papers).

The First Amendment imposes a heavy burden on litigants seeking to restrict public access to such proceedings and records. *See Globe Newspaper*, 457 U.S. at 606 ("the State's justification in denying access must be a weighty one"); *Lugosch*, 435 F.3d at 126 (holding that the First Amendment "gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption"). Any litigant must satisfy four factors as a prerequisite to sealing a judicial record.

*First*, a party must establish that sealing is necessary to prevent harm to "a compelling interest." *Under Seal v. Under Seal*, 273 F. Supp. 3d 460, 469 (S.D.N.Y. 2017). This "compelling interest" must be "articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press-Enter. Co. v. Super. Ct.* ("*Press-Enter. I*"), 464 U.S. 501, 510 (1984). *Second*, the party must establish that there is no alternative to sealing that can adequately protect the threatened interest. *See, e.g., Press-Enter. II*, 478 U.S. at 14; *In re Herald Co.*, 734 F.2d 93, 100 (2d Cir. 1984). *Third*, if no adequate alternative exists, any sealing must be no broader than necessary to protect the threatened interest. *See Lugosch*, 435 F.3d at 124 (sealing order must be "narrowly tailored" to protect compelling interest). *Fourth*, the proponent of sealing must establish that a denial of access would be effective in preventing the harm to the compelling interest. *See Press-Enter. II*, 478 U.S. at 14. Further, a court is required to make specific, on-the-record findings to justify a denial of access, and such findings must be made with respect to each document to be sealed. *Press-Enter. I*, 464 U.S. at 510; *accord Lugosch*, 435 F.3d at 120.

These requirements have not been met here. As an initial matter, protecting materials that have been designated as "confidential" under a protective order is not a compelling interest that justifies sealing. *See Bernstein*, 814 F.3d at 144–45 (finding that the sealing of a complaint was not justified to protect "confidential client information"). But even if this were a compelling interest—and it is not—blanket sealing of nearly every summary judgment filing in this action would not be a sufficiently tailored remedy. *See, e.g., Press-Enter. II*, 478 U.S. at 14–15. Finally, the Court has not made a "specific on the record finding" supporting the denial of access here. *Press-Enter. I*, 464 U.S. at 510. Specifically, the Court failed to engage with each document and instead summarily concluded that there was "good cause" to seal all summary judgment filings because they referenced "confidential" materials. *See e.g.*, Dkt. No. 364.[5] In short, the Parties have failed to satisfy *any* of the requirements imposed by the First Amendment presumption of access and the summary judgment filing should be unsealed for this independent reason.

\* \* \*

---

[5] *See also* Dkt. Nos. 59, 86, 89, 90, 103, 110, 209, 246, 252, 277, 289, 306, 307, 363, 365, 366, 389, 397, 415, 416, 429, 439, 480, 495, 496, 621, 628.

Hon. Lorna G. Schofield
October 24, 2025
Page 5

    In sum, Newsday respectfully requests that the Court order that summary judgment materials be unsealed in a matter of the utmost importance to the public. If it would assist the Court in reaching its decision, counsel for Newsday respectfully requests a hearing on this matter. We thank the Court for its consideration in this matter.

                Respectfully Submitted,

                Davis Wright Tremaine LLP

                */s/ Rachel F. Strom*

                Rachel F. Strom
                Alexandra M. Settelmayer

cc: Attorneys of Record (via ECF)