Originally Filed at ECF 111

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TRAVELERS INDEMNITY COMPANY, TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, formerly known as TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND, TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as THE AETNA CASUALTY AND SURETY COMPANY, AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, formerly known as TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

Plaintiffs,

v.

NORTHROP GRUMMAN CORPORATION, NORTHROP GRUMMAN SYSTEMS CORPORATION,

Defendants,

*and*

CENTURY INDEMNITY COMPANY, eventual successor in interest to INSURANCE COMPANY OF NORTH AMERICA,

Nominal Defendant.

12-CV-03040 (KBF)(FM)

ECF CASE

**REPLY IN SUPPORT OF MOTION BY DEFENDANT AND COUNTERCLAIM/CROSSCLAIM-PLAINTIFF NORTHROP GRUMMAN SYSTEMS CORPORATION FOR PARTIAL SUMMARY JUDGMENT ON CENTURY'S AND TRAVELERS' DUTY TO DEFEND THE TOWN OF OYSTER BAY ACTION**

## TABLE OF CONTENTS

Page

I. The Coverage Questions Raised by Century and Travelers Are Irrelevant Because They Do Not Preclude a Potential for Coverage. .... 2

A. Timeliness of Notice .... 3

B. Other Coverage Issues .... 10

II. Travelers' Rule 56(d) Argument Lacks Merit. .... 11

III. Travelers and Century Each Have an Independent Contractual Duty to Provide NGSC with a Complete Defense, Not a Partial "Time on the Risk" Defense. .... 15

A. The Policies and New York Law .... 16

B. Travelers' Course of Dealing Argument .... 19

Conclusion .... 20

## TABLE OF AUTHORITIES

Page

**CASES**

*121 E. 26th Street Assocs. v. QBE Ins. Co.*,
823 N.Y.S.2d 24 (1st Dep't 2006) .......... 8

*Allstate Ins. Co. v. Zuk*,
78 N.Y.2d 41 (1991) .......... 12

*Am. & Foreign Ins. Co. v. Jerry's Sport Center, Inc.*,
2 A.3d 526 .......... 15

*Atl. Mut. Ins. Co. v. Greater N.Y. Mut. Ins. Co.*,
660 N.Y.S.2d 983 (1st Dep't 1997) .......... 19

*Avondale Indus., Inc. v. Travelers Indem. Co.*,
774 F. Supp. 1416 (S.D.N.Y. 1991) .......... 3, 4, 14

*Avondale Industries, Inc. v. Travelers Indemnity Co.*,
887 F.2d 1200 (2d Cir. 1989) .......... 17

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
8 N.Y.3d 708 (2007) .......... 2, 12

*Burke v. Ullico Cas. Co.*,
165 Fed. Appx. 125 (2d Cir. 2006) .......... 14

*Burlington Ins. Co. v. Guma Construction Corp.*,
887 N.Y.S.2d 177 (2d Dep't 2009) .......... 13

*Burroughs Wellcome Co. v. Commerical Union Ins. Co.*,
632 F. Supp. 1213 (S.D.N.Y. 1986) .......... 14

*Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*,
302 F.3d 83 (2d Cir. 2002) .......... 3, 4

*Buss v. Superior Court*,
939 P.2d 766 (Cal. 1997) .......... 14, 15

*Celanese Corp. v. OneBeacon Am. Ins. Co.*,
2008 WL 5784444 (Mass. Super. Ct. Dec. 29, 2008) .......... 18

*Century 21, Inc. v. Diamond State Ins. Co.*,
442 F.3d 79 (2d Cir. 2006) .......... 3, 14

*City of Johnstown, N.Y. v. Bankers Standard Ins.*,
877 F.2d 1146 (2d Cir. 1989)....4, 10

*Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*,
98 N.Y.2d 208 (2002)....19

*Consol. Edison Co. of N.Y. v. Fyn Paint & Lacquer Co.*,
2005 WL 139170 (E.D.N.Y. Jan. 24, 2005)....19

*Continental Cas. Co. v. Rapid-Am. Corp.*,
80 N.Y.2d 640 (1993)....9, 16

*Crucible Materials Corp. v. Aetna Casualty & Surety Co.*,
228 F. Supp. 2d 182 (N.D.N.Y. 2001)....9

*Estee Lauder Inc. v. OneBeacon Ins. Group, LLC*,
873 N.Y.S.2d 592 (1st Dep't 2009)....8

*Fed. Ins. Co. v. Cablevision Sys. Dev. Co.*,
836 F.2d 54 (2d Cir. 1987)....17

*Fitzpatrick v. Am. Honda Motor Co.*,
78 N.Y.2d 61 (1991)....2, 13

*Geisco, LLC v. Greater N.Y. Mut. Ins. Co.*,
844 N.Y.S.2d 44 (2d Dep't 2007)....8

*Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*,
828 N.E.2d 1092 (Ill. 2005)....14

*Generali-U.S. Branch v. Caribe Realty Corp.*,
1994 WL 903279 (N.Y. Sup. Ct. Dec. 5, 1994)....18

*Int'l Bus. Machines Corp. v. Lib. Mut. Ins. Co.*,
363 F.3d 137 (2d Cir. 2004)....2, 12

*Isadore Rosen & Sons, Inc. v. Liberty Mut. Ins. Co.*,
31 N.Y.2d 342 (1972)....8

*Lib. Mut. Ins. Co. v. Ray Indus., Inc.*,
974 F.2d 754 (6th Cir. 1992), *rev'd on other grounds by Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.*, 519 N.W.2d 864 (Mich. 1994)....15

*M.A. Indus., Inc. v. Maryland Cas. Co.*,
1:92-CV-2659-HTW, at 20-21 (N.D. Ga. July 1, 1993)....4

*Maryland Casualty Co. v. W.R. Grace & Co.*,
1994 WL 167962 (S.D.N.Y. Apr. 29, 1994)....9

*Mendes & Mount v. Am. Home Assurance Co.*,
467 N.Y.S.2d 596 (1st Dep't 1983) ........ 17

*Nat'l Cas. Co. v. Vigilant Ins. Co.*,
466 F. Supp. 2d 533 (S.D.N.Y. 2006) ........ 13

*Newmont USA Ltd. v. Am. Home Assurance Co.*,
676 F. Supp. 2d 1146 (E.D. Wash. 2009) ........ 18

*NL Industries, Inc. v. Commercial Union Insurance Co.*,
935 F. Supp. 513 (D.N.J. 1996) ........ 19

*Perdue Farms, Inc. v. Travelers Cas. and Sur. Co.*,
448 F.3d 252 (4th Cir. 2006) ........ 15

*Petr-All Petroleum Corp. v. Fireman's Ins. Co. of Newark, N.J.*,
593 N.Y.S.2d 693 (4th Dep't 1993) ........ 3

*Resolution Trust Corp. v. Walke*,
1994 U.S. Dist. LEXIS 8919 (W.D. La. Feb. 28, 1994) ........ 4

*Seaboard Sur. Co. v. Gillette Co.*,
64 N.Y.2d 304 (1984) ........ 14

*Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*,
64 N.Y.2d 419 (1985) ........ 14

*State of N.Y. Ins. Dep't, Liquidation Bureau v. Generali Ins. Co.*,
844 N.Y.S.2d 13 (1st Dep't 2007) ........ 17

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*,
98 N.Y.2d 435 (2002) ........ 2

*Town of Windsor v. Hartford Acc. & Indem. Co.*,
885 F. Supp. 666 (D. Vt. 1995) ........ 4

*Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*,
954 N.Y.S.2d 23 (1st Dep't 2012) ........ 17

*Upjohn Co. v. Aetna Cas. & Sur. Co.*,
768 F. Supp. 1186 (W.D. Mich. 1990) ........ 4

*Vermont Gas Sys., Inc. v. U.S. Fid. & Guar. Co.*,
805 F. Supp. 227 (D. Vt. 1992) ........ 4

*Wausau Underwriters Ins. Co. v. QBE Ins. Corp.*,
496 F. Supp. 2d 357 (S.D.N.Y. 2007) ........ 13

**OTHER AUTHORITIES**

Angela R. Elbert & Stanley C. Nardoni, "*Buss* Stop: A Policy Language Based Analysis," 13 Conn. Ins. L. J. 61 (2006)....................14

Northrop Grumman Systems Corporation ("NGSC" or "Grumman") is entitled to a defense from Travelers and Century as a matter of law because there is no dispute about the only *material* facts that pertain to this motion -- the insurance policies and the allegations made in the underlying complaint filed against NGSC by the Town of Oyster Bay (the "TOB Action" or the "TOB Complaint").

In an effort to stave off a legal ruling that is compelled by the plain language of the insurance policies, the allegations of the TOB Complaint, and decades of New York jurisprudence liberally construing the defense promise, Century and Travelers have flooded the Court with extraneous legal and factual arguments that are not material to this motion. As shown below, these arguments are both diversionary and misleading. The duty to defend would be a hollow promise if insurers could avoid it simply by manufacturing doubts about ultimate coverage based on a selective rendition of facts extrinsic to the underlying complaint. Instead, the duty to defend attaches *even when* there are disputes about coverage. This is so because the very existence of such factual disputes necessarily establishes a potential for coverage, which is the only showing a policyholder has to make in order to obtain a defense. Thus, as a matter of law, the factual issues that the insurers have attempted to identify are irrelevant to the legal standard governing the duty to defend, and NGSC's request for a declaration that Travelers and Century each have an independent contractual duty to defend NGSC against the pending TOB Action should be granted.

As NGC demonstrated in its opening brief, New York law is crystal clear that an insurer must provide a defense against an underlying suit unless and until it shows *to a certainty* that there is no factual or legal basis upon which it might eventually be obligated to indemnify the policyholder. That is, the insurer must show conclusively that there is not even a bare potential

or possibility of coverage. *See infra* at 3 (citing cases). Century and Travelers have not made that showing here.

## I. The Coverage Questions Raised by Century and Travelers Are Irrelevant Because They Do Not Preclude a Potential for Coverage.

Typically, only two kinds of facts are relevant when a policyholder seeks a defense from its liability insurer: the terms of the policies, and the allegations in the underlying complaint. *See, e.g.*, *Int'l Bus. Machines Corp. v. Lib. Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (whether an insurer has a duty to defend is determined "by comparing the allegations of a complaint with the wording of the insurance contract"); *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714 (2007) (the duty to defend "is derived from the allegations of the complaint and the terms of the policy"). In this case, Travelers and Century do not dispute that their policies obligate them to provide a defense against any suit seeking damages from NGSC on account of accidental property damage "even if any of the allegations of the suit are groundless, false or fraudulent." *See* NGSC Mem. at 3-4, 12-13. Travelers and Century also do not dispute that the TOB Complaint alleges accidental property damage during the period of the Travelers and Century liability policies, thus bringing the allegations within the protection purchased under the policies. *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002) ("If the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend"). The material facts relevant to this motion are not in dispute.

Indeed, because the duty to defend ordinarily rests solely upon a comparison of the policy with the underlying complaint, it has often been said that an insurer cannot introduce extrinsic facts to defeat its duty to defend. *See Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 66 (1991) (insurers may not "look beyond the complaint's allegations to avoid their obligation to

defend"); *Petr-All Petroleum Corp. v. Fireman's Ins. Co. of Newark, N.J.*, 593 N.Y.S.2d 693, 695 (4th Dep't 1993) (insurers "cannot use extrinsic facts to show that there is no coverage").

An insurer's duty to defend attaches as soon as the underlying complaint is filed and continues until and unless the insurer can show definitively and conclusively *as a matter of indisputable fact* that there is not even a *potential or possibility of* coverage for a particular claim. *See, e.g.*, *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. 2006); *see also* NGSC Mem. at 10-13 (citing additional cases). Thus, in the rare circumstances in which courts have looked outside the underlying complaint in the duty to defend context, it has been where such extrinsic facts establish conclusively and with certainty that there is not even a bare potential for coverage, as where the alleged insured is not a named or additional insured under the policy. *See, e.g.*, *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002) (extrinsic evidence may be considered for purposes of deciding the duty to defend only if that evidence "may *conclusively establish* that an insurer faces no possible liability") (emphasis added); *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1424 (S.D.N.Y. 1991) (a court may "in exceptional circumstances, look outside the four corners of the complaint to consider whether extrinsic evidence *establishes to a certainty* that the insurer faces no liability for indemnity") (emphasis added). Neither Century nor Travelers has shown that there is no potential for coverage in this case. Accordingly, NGSC's motion for summary judgment on the duty to defend should be granted.

**A. Timeliness of Notice**

As a matter of law, the existence of a factual dispute about whether timely notice was given of an occurrence or claim does not defeat the duty to defend. If it did, the defense promise would be worthless, because an insurer could always argue that it received late notice of the "occurrence," or that the notice letter was not clear enough, or that it was sent to the wrong

address, which is the "dog ate my homework" excuse proffered by Century here. To avoid such legerdemain by insurers who are in the business of defending third-party lawsuits, courts repeatedly have held that there is a potential for coverage, and thus an obligation to defend, even if there is a factual dispute over the timeliness of notice. *See, e.g.*, *Town of Windsor v. Hartford Acc. & Indem. Co.*, 885 F. Supp. 666, 670 (D. Vt. 1995) (granting summary judgment to insured on insurer's duty to defend even though there was genuine factual dispute about timeliness of notice because "[i]t is at least possible that . . . the [insured] provided the [insurer] with timely notice of the pollution problems at the [site]"); *Vermont Gas Sys., Inc. v. U.S. Fid. & Guar. Co.*, 805 F. Supp. 227, 232-33 (D. Vt. 1992) (granting summary judgment to insured on insurer's duty to defend even though timeliness of notice was in question because "a possibility of coverage exists until such time as the notice issue is resolved, even though notice is a condition precedent to coverage") (emphasis added).[1] *See also Burt Rigid Box*, 302 F.3d at 97; *Avondale*, 774 F. Supp. at 1424; *M.A. Indus., Inc. v. Maryland Cas. Co.*, 1:92-CV-2659-HTW, at 20-21 (N.D. Ga. July 1, 1993), *reported in* Mealey's Litig. Reports: Ins., August 17, 1993 (granting summary judgment to insured on insurer's duty to defend because late notice "is a factual issue beyond the allegations of the underlying complaint, and the possibility of late notice simply does not relieve the insurer of its duty to defend"); *Resolution Trust Corp. v. Walke*, 1994 U.S. Dist. LEXIS 8919, at *8-9 (W.D. La. Feb. 28, 1994) (insurer had duty to defend despite alleged failure of insured to provide proper notice because "the determination of the existence of a duty to defend involves only a comparison of the allegations of the plaintiff's pleadings and the terms of the insurance policy"); *Upjohn Co. v. Aetna Cas. & Sur. Co.*, 768 F. Supp. 1186, 1203 (W.D. Mich.

[1] *Town of Windsor* and *Vermont Gas* are particularly instructive because of the similarities between Vermont and New York duty to defend and notice law. *Town of Windsor*, 885 F. Supp. at 670 n.6; *Vermont Gas*, 805 F. Supp. at 231 & 231 n.6 (citing *City of Johnstown, N.Y. v. Bankers Standard Ins.*, 877 F.2d 1146, 1148 (2d Cir. 1989)).

1990) ("In assessing the duty to defend, facts outside the allegations that might negate coverage are not properly considered. . . . The late notice facts are thus inappropriate to a discussion of the duty to defend -- they certainly go beyond the allegations and policy language.").

**NGSC's Notice Was Timely.** NGSC's motion for summary judgment should be granted because (a) NGSC provided timely notice of both the TOB Action and the environmental contamination alleged in that suit to Century and Travelers, and (b) even if there were a dispute about this notice, the dispute is irrelevant to the duty to defend. *See supra* at 2-4.

For example, the insurers fail to inform the Court that Grumman provided notice both to Century's predecessor (Insurance Company of North America) and to Travelers *in 1984* of the New York State Department of Environmental Conservation's claim alleging that Grumman "may be responsible for the release or threatened release of hazardous substances" at the Bethpage Facility, *see* Declaration of Shelli Calland ("Calland Decl.") Ex. 16, which the insurers apparently concede was sufficient to inform them of the contamination at the Bethpage Community Park, as they equate the two locations for purposes of notice.[2] The insurers also fail to mention that Grumman provided a briefing to its liability insurers on water quality issues at the Bethpage facility and surrounding areas in August 1989. *Id.* Exs. 17, 18. INA ignored the notice letter in 1984, declined to attend the 1989 briefing, and proceeded for the next 30 years to sit on its hands and provide no assistance to Grumman in its ongoing dealings with the regulators or other claimants. There is no excuse for Century to ignore those prompt and early notifications in its misleading rendition of selected "facts."

The insurers (and particularly Century) have also larded their briefs with irrelevant and

[2] *See, e.g.*, Century Opp. at 19-20 (arguing that notice of contamination at the Park was late because Grumman knew of contamination at the Bethpage Facility thirty years ago); Trav. Opp. at 24 (arguing that Grumman "was aware of contamination at the Bethpage Facility . . . decades before it purported to give notice to Travelers").

inaccurate assertions about what was happening at the Bethpage Facility during various periods. Three examples will show how misleading the insurers' factual presentation is. First, contrary to the insurers' suggestion, the documents they have submitted do not show that any regulatory agency was threatening to take action against Grumman for groundwater problems at Bethpage in the 1970s or that Grumman knew it was the source of any groundwater contamination. Instead, they show only a concern that Grumman's pumping activities might be drawing toward municipal water supplies and its own drinking wells certain industrial contaminants that originated at the Hooker/RUCO Chemical Plant directly upgradient of the Bethpage Facility.[3] The same documents from New York regulators cited by Century and Travelers show that Hooker Chemical (which went on to become famous for Love Canal) was believed to be the source of the contaminants at issue, *not* Grumman. *Id.* Second, isolated incidents of on-site well contamination in the 1940s and 1950s due to the presence of chromium (an inorganic metal) that were promptly remedied is a far cry from the liability that Grumman currently faces and for which it is seeking coverage -- namely, remediation of a region-wide groundwater plume of TCE, an organic solvent; in any event, the historic documents show that Grumman was commended by both the federal government and state regulators for maintaining environmentally

[3] *See, e.g.*, Heskin Decl. Ex. 1/Pashler Decl. Ex. 13 at NGINS000674403/NGINS000210669 (Hooker Chemical Co.'s "discharge . . . to a PVC Latex Sump appeared to be the most likely source of the problem at the Grumman wells."); *id.* at NGINS000674408/NGINS000210674 ("Mr. Smith further directed that a full-scale investigation be undertaken of the Hooker Chemical Corporation operation"); Heskin Decl. Ex. 9/Pashler Decl. Ex. 15 at NGINS000619195 ("The discharge of sanitary wastes *in the vicinity of the Grumman Corporation* and the discharge of industrial wastes, *particularly those previously discharged by the Hooker Chemical Corporation*, is considered responsible for the degradation in quality of Grumman Corporation wells.") (emphasis added); *see also* Calland Decl. Ex. 31 (noting that a "Hooker dump" gave rise to the Love Canal disaster and that "Hooker Chemical Corp. has taken responsibility for the contamination of drinking water wells at Grumman"). These documents thus show that the "deep concern" expressed by Grumman's representative to the Nassau County Department of Health ("NCDOH") in 1975 was not an admission that Grumman was the source, as the insurers erroneously contend, Century Opp. at 7-8, Trav. Opp. at 4-5, but reflective of a company that wanted to take "immediate action . . . to determine the cause of the contamination problem and to take prompt corrective action." *See* Heskin Decl. Ex. 1/Pashler Decl. Ex. 13 at NGINS000674409/NGINS000210675.

sound facilities and promptly addressed isolated incidents by proactively developing highly sophisticated wastewater treatment systems.[4] Finally, the focus on Grumman's designation as an "active hazardous waste site" in 1980, Century Opp. at 9, and the selective quotation from Grumman's 2005 notice letter regarding the TOB Complaint that the company has "no immediate knowledge of [its] specific involvement," *id.* at 15-16, are also distortions. As the insurers know, every current manufacturer that handles industrial waste receives an "active hazardous waste site" designation; thus, the designation is of no import.[5] *See* Calland Decl. Ex. 24. The notice letter was simply stating that the company had not yet had a chance to evaluate the merits of the Town's specific allegations.

Century's argument that NGSC failed to provide it with prompt notice of the 2005 TOB Complaint is also without merit.[6] There is no dispute that Grumman sent its initial notice letters to Century in 2005. Calland Decl., Exs. 25, 26. Century argues that it never received copies of the 2005 notice letters because NGSC's broker sent them "to the wrong address." Century Opp. at 15. But that assertion is untrue. The 2005 letters were sent to a perfectly valid address -- one that Century's 30(b)(6) witness admitted was still being used by Century and its parent (ACE USA) at the time. *See* Calland Decl., Ex. 11 at 63-64. Moreover, Century does not assert that the 2005 letters were returned as undeliverable or that NSGC knew or should have known that

[4] Calland Decl. Exs. 19, 20 (Navy inspection reports from 1949 and 1954 showing that Grumman's facilities were in good condition and properly maintained); *id.* Ex. 21 (1966 letter from NCDOH stating "[a]s the expression goes 'You must be doing something right.' Keep up the good work."); *id.* Ex. 22 (1969 notes of NYSDOH visit to Bethpage facility stating "[t]he wastewater treatment systems appear to be under the direct control of able and interested people who have complete management endorsement."); *id.* Ex. 23 (showing that Grumman installed a chromium treatment plant in Bethpage well before others in the industry).

[5] The 1980 Report simply lists any site in New York "known or suspected of having received hazardous wastes," and did not indicate (as Century argues) that the Grumman site was "significant" or that it posed any risk to public health or the environment. *See* NGSC's Response to Century's Counter-Statement of Undisputed Facts ¶¶ 21-22.

[6] Travelers does not dispute that it received timely notice of the TOB Complaint. It suggests only that "notice of the occurrence" was late. Trav. Opp. at 2.

the address was in any way outdated. *See Geisco, LLC v. Greater N.Y. Mut. Ins. Co.*, 844 N.Y.S.2d 44, 45 (2d Dep't 2007) (notice of claim effective even though mailed to incorrect address because there was no evidence that notice was returned to sender). Indeed, Century concedes that it received a March 2007 letter from NGSC's broker that was sent to the same address as the 2005 letters. *See* Calland Decl., Ex. 11 at 62. The fact that Century apparently mishandled or misfiled the 2005 notice letters does not mean that notice was untimely.

**The Insurers Have Waived Any Late Notice Defense.** Furthermore, even if Century and Travelers could prove as a matter of undisputed fact that Grumman's notice was late (which they have not), any alleged late notice would not defeat coverage here. With respect to Century, several of the policies expressly state that "[u]nintentional errors or omissions shall not invalidate the insurance provided hereunder." *E.g.*, Declaration of John F. Scanlon in Supp. of NGSC's Mot. for Partial Summ. J. (Jan. 4, 2013) ("Scanlon Decl.") Ex. 1 at CEN00000009. Thus, unless Century can show that Grumman *intentionally* provided late notice (which it cannot), it would have to demonstrate that late notice somehow caused it prejudice (a showing Century also cannot make). Moreover, it is well settled under New York law that late notice does not defeat coverage unless the insurer disclaims coverage in a timely manner.[7] In this case, even if Century did not receive the 2005 notice letters -- and there is every reason to think it did -- Century admits that it received subsequent notice of the TOB Action in the form of a

[7] An insurer waives its ability to assert a late-notice defense by failing to disclaim coverage on that basis within a reasonable time after it knew or should have known of grounds for asserting it. *See Isadore Rosen & Sons, Inc. v. Liberty Mut. Ins. Co.*, 31 N.Y.2d 342, 347 (1972) ("unreasonable delay by the insurer, in dealing with a claim" amounts to constructive denial of coverage and waiver of right to insist on compliance with policy conditions); *Estee Lauder Inc. v. OneBeacon Ins. Group, LLC*, 873 N.Y.S.2d 592, 594 (1st Dep't 2009) ("insurer must give written notice of disclaimer on the ground of late notice as soon as is reasonably possible after it learns of the accident or of grounds for disclaimer of liability, and failure to do so precludes effective disclaimer") (citation and quotation marks omitted); *121 E. 26th Street Assocs. v. QBE Ins. Co.*, 823 N.Y.S.2d 24, 25 (1st Dep't 2006) (insurer's three-year delay in asserting late notice waives the defense even absent a prior disclaimer on other grounds).

March 8, 2007 letter, a May 29, 2008 email, and subsequent documents, yet it failed to disclaim coverage on notice grounds or even reserve its rights for five years, until 2012. *See* Century Opp. at 16. Despite having had ample information and opportunity to determine whether to assert a late-notice defense many years ago, Century said nothing about late notice (or anything else) until after the filing of this coverage litigation. Century's unreasonable delay in disclaiming coverage has resulted in a waiver of its late notice defense. Thus, Century cannot escape its contractual obligation to defend NGSC in the TOB Action, because it cannot conclusively show that there is no possibility of coverage here.[8]

For the foregoing reasons, factual disputes about whether notice was timely do not abrogate Century's and Travelers' duty to defend because they do not foreclose a potential for coverage. The cases cited by Century are not to the contrary. Those cases do not discuss late notice in the context of an insurer's duty to defend, fail to address the broad scope of the duty to defend, or both. For example, *Crucible Materials Corp. v. Aetna Casualty & Surety Co.*, 228 F. Supp. 2d 182 (N.D.N.Y. 2001), *see* Century Opp. at 19-21, dealt only with whether late notice affected an insurer's duty to *indemnify* its insured for environmental clean-up costs. It is black-letter law in New York (and the insurers do not dispute) that the duty to defend is far broader than the duty to indemnify. *See, e.g.*, *Continental Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993). Moreover, the statement in *Maryland Casualty Co. v. W.R. Grace & Co.*, 1994 WL 167962 (S.D.N.Y. Apr. 29, 1994), *see* Century Opp. at 18, that the insured had to establish the

---

[8] Travelers likewise never once disclaimed coverage for the TOB Action based on late notice. Indeed, it does not even dispute that notice of the action was timely. Instead, it belatedly, for the first time since 2005 when it received notice of the action, argues that it has no duty to defend the suit because notice of the occurrence was late. To the extent Travelers relies on late notice here to escape its duty to defend, that defense has been waived because Travelers failed promptly to disclaim coverage for the suit based on late notice. Rather than disclaiming promptly, Travelers continued for years to pay "pro rata" shares of defense costs.

timeliness of its notice before it was entitled to a defense, is dictum, as the insurers in that case were awarded summary judgment based upon pollution exclusions and other grounds.

**B. Other Coverage Issues**

To the extent that Century and Travelers have raised other questions about coverage, those questions too do not foreclose the potential for coverage, and thus they cannot defeat the duty to defend as a matter of law.

For example, Century attempts to portray NGSC as a willful and admitted polluter, and implies that none of the environmental contamination at the sprawling, 600-acre Bethpage Facility and the Park could possibly have been accidental and thus potentially covered under the policies. As shown in NGSC's Response to Century's Counter-Statement of Undisputed Facts, there is a genuine dispute of fact with respect to most of Century's allegations. In particular, NGSC does not concede, and never has conceded, that Grumman caused the environmental contamination at issue in the TOB Action. To the contrary, NGSC moved for summary judgment in the TOB Action based in part on its contention that the Town could not establish that any of the contamination it alleged in that suit was attributable to Grumman. Calland Decl. Ex. 27 at 15-17. Moreover, NGSC also disputes that any (let alone all) of Grumman's varied waste handling and disposal practices at Bethpage over the course of decades were expected or intended to cause groundwater and other environmental contamination.[9] To the contrary, Grumman was many years ahead of its time in its waste handling, disposal, and treatment methods, and Grumman was commended for its responsible environmental practices by state

[9] *See City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149-52 (2d Cir. 1989) (reversing summary judgment for Century affiliate and requiring it to defend city in underlying CERCLA action, because neither the complaint nor isolated extrinsic facts selected by insurer unambiguously demonstrate that City subjectively "intended the resulting damage" or knew ("expected") that damage alleged in complaint "would flow directly and immediately from the City's intentional acts" of waste disposal).

regulatory agencies and the United States government (which tightly monitored every aspect of Grumman's operations at the Bethpage Facility). *See supra* at 7 n.4. Century and Travelers' discussion of groundwater contamination at Bethpage is also puzzling because such contamination is not even alleged in the TOB Complaint, which provides the exclusive referent for assessing the insurers' threshold defense obligation. The Complaint alleges that Grumman is liable for the Town's costs of remediating *soil* contamination. Scanlon Decl. Ex. 14 ¶¶ 20, 22.

Century has blatantly mischaracterized other facts. For example, Century cites a 1995 letter from the State of New York Department of Health to support its assertion that Grumman "declined to further investigate the nature and extent of this PCB contamination [in soil adjacent to the Bethpage Community Park] because the levels did not exceed commercial use thresholds." Century Opp. at 11. In fact, as that letter shows on its face, it was actually the New York Department of Health that saw no need for additional sampling. Heskin Decl. Ex. 21.

Instead of fulfilling its contractual obligation to defend NGSC against the TOB Action, Century has turned on its insured and acted as though NGSC's liability in the TOB Action were self-evident -- even though NGSC was awarded summary judgment in the TOB Action. Century's position cannot be squared with New York law, which prohibits insurers from evading their duty to defend merely by manufacturing doubts about coverage, and instead requires insurers to defend their insureds as long as there is even a bare potential for coverage.

## II. Travelers' Rule 56(d) Argument Lacks Merit.

Like Century, Travelers does not dispute that the allegations in the TOB Action are potentially covered by its policies and thus give rise to a duty to defend. Nevertheless, Travelers has asked the Court to postpone indefinitely its consideration of NGSC's motion for partial summary judgment on the duty to defend, arguing that Travelers "cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), because further discovery *might* uncover facts

that *might* allow Travelers to assert certain coverage defenses that the Court *might* find persuasive.[10] *See* Trav. Opp. at 23-25. Travelers' argument would eviscerate the defense promise by allowing insurers to delay providing a defense indefinitely while they troll for facts supporting a disclaimer. No court has ever permitted such a result, and neither should this Court.

Under longstanding New York law, the only "facts essential" to determining whether Travelers has a duty to defend the TOB Action are the Travelers policies and the allegations made in the TOB Complaint. *BP Air Conditioning*, 8 N.Y.3d at 714; *Int'l Bus. Machines*, 363 F.3d at 144. Tellingly, Travelers nowhere disputes that a comparison of the policies and the TOB Complaint shows that Travelers is contractually obligated to defend the TOB Action. Travelers instead seeks to defer a ruling on its duty to defend so as to take discovery regarding whether it has any ultimate duty to indemnify under its policies (on top of the decade it has spent investigating the TOB claims). Travelers' request for further discovery under Rule 56(d) is a clear concession that it cannot currently point to any facts that conclusively defeat coverage, and is tantamount to an admission that there is a potential for coverage and thus a duty to defend. *See, e.g.*, *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991) (insurer's duty to defend ends only when the insurer "establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision").

Travelers has not cited a single case in support of its argument that Rule 56(d) can be used to defer summary judgment on an insurer's duty to defend. This lack of authority is unsurprising because Travelers' position directly contravenes fundamental principles governing the duty to defend in New York. *See supra* at 2-3. Whether an insurer has a duty to defend its

---

[10] Like Century, Travelers did not move for summary judgment on any alleged coverage defenses, despite urging that early summary judgment motions should be filed prior to the end of discovery.

insured against a lawsuit presents a straightforward question of law that is routinely decided on summary judgment. *See, e.g.*, *Wausau Underwriters Ins. Co. v. QBE Ins. Corp.*, 496 F. Supp. 2d 357, 360 (S.D.N.Y. 2007) (citing cases); *Nat'l Cas. Co. v. Vigilant Ins. Co.*, 466 F. Supp. 2d 533, 538 (S.D.N.Y. 2006). If the rule were otherwise, an insurer could routinely avoid its obligation to provide an immediate defense against a potentially covered lawsuit by citing a dispute over its ultimate duty to indemnify, and nobody would ever get a defense until it was no longer needed -- i.e., long after the underlying action was resolved and the insurer's duty to indemnify had been thrashed out in a coverage trial.

Thus, even if the discovery that Travelers says it intends to pursue did raise significant issues relating to ultimate coverage, such discovery has no bearing on Travelers' duty to defend because the facts Travelers seeks to develop are extrinsic to the underlying complaint and thus are not to be considered when ruling on Travelers' duty to defend. *See Burlington Ins. Co. v. Guma Construction Corp.*, 887 N.Y.S.2d 177, 180 (2d Dep't 2009) (rejecting insurer's argument that duty to defend determination was premature because discovery was not yet complete; evidence obtained through discovery "would be irrelevant" because it would be extrinsic to the underlying complaint); *see also Fitzpatrick*, 78 N.Y.2d at 63 ("It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.").

Travelers complains that, if it were ultimately shown that NGSC had not complied with the notice provisions in the policies, Travelers would be entitled to recoup the defense costs it has paid. Trav. Opp. at 22-23. This argument is frontally inconsistent with the settled principle that the duty to defend is much broader than the duty to indemnify, and that an insurer often may

have a duty to defend an underlying action even if it eventually establishes that there is no duty to indemnify an adverse judgment or settlement. *See, e.g.*, *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984) ("The duty is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the [underlying] complaint . . . asserts additional claims that fall outside the policy's general coverage."). Travelers' position also cannot be reconciled with the principle that, if the defense promise is to have any practical value, it must attach as soon as an underlying complaint is filed, and continue until the insurer "confines the claim" to uncovered facts and shows the absence of any potential for coverage.[11]

Thus, Travelers cannot forestall NGSC's right to a defense determination by speculating about what facts it may develop through discovery and what impact, if any, those facts may have on its ultimate duty to indemnify NGSC's cleanup liabilities. A contrary result would make the duty to defend coextensive with, and dependent upon, the eventual resolution of Travelers' separate and narrower duty to indemnify, which is at odds with decades of New York precedent. *See Burke v. Ullico Cas. Co.*, 165 Fed. Appx. 125, 128 (2d Cir. 2006) (while the duty to defend is a threshold determination based on a potential for coverage in the underlying complaint, the duty to indemnify is determined much later, "from the actual facts adduced in the course of the litigation") (quotation marks omitted); *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64

---

[11] *See Century 21*, 442 F.3d at 83 (if an underlying complaint reveals a bare potential for coverage, the defense obligation attaches "and perdures until it is determined *with certainty* that the policy does not provide coverage"); *Avondale*, 774 F. Supp. at 1427 ("Normally, where an insurer is relieved of the duty to defend by a judicial determination . . . the insurer nonetheless is liable for the defense costs incurred in the underlying action up until the time of the judicial determination."); *Burroughs Wellcome Co. v. Commerical Union Ins. Co.*, 632 F. Supp. 1213, 1219-20 (S.D.N.Y. 1986) (insurer must defend DES lawsuits unless and until insurer "confines a particular plaintiff's claim so as to exclude the possibility of recovery" under the policies). *See also Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1102 (Ill. 2005) ("[W]e cannot condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend."); Angela R. Elbert & Stanley C. Nardoni, "*Buss* Stop: A Policy Language Based Analysis," 13 Conn. Ins. L. J. 61 (2006).

N.Y.2d 419, 424 (1985) (the duty to indemnify is "distinctly different" than the duty to defend, because the indemnity obligation "is determined by the actual basis for the insured's liability to a third person," not by the allegations of the complaint) (quotation marks omitted). While Travelers has not filed a motion for summary judgment seeking recoupment of defense costs -- presumably because no such "right of recoupment" appears anywhere in its policies[12] and it cannot establish the absence of any potential for coverage here -- the asserted "right" is irrelevant to Travelers' *existing* obligation to provide NGSC with a defense to the TOB Action.

## III. Travelers and Century Each Have an Independent Contractual Duty to Provide NGSC with a Complete Defense, Not a Partial "Time on the Risk" Defense.

Travelers' main argument, in which Century joins, Century Opp. at 22-24, is that its broad contractual promise to "defend any suit" potentially covered by the policies should be retroactively transformed at the point of claim into a rump obligation to "defend part of a suit" or to "reimburse a pro rata, time-on-the-risk fraction of the insured's defense costs" incurred in the TOB Action. The argument defies both common sense and the language of these insurer-drafted policies, which confirm (a) that the duty to defend is an obligation to provide an affirmative litigation service -- to *manage* the insured's defense --- and cannot be reduced to an after-the-fact obligation to reimburse ratable shares of the costs of defense based on time-on-the-risk formulas that have no textual moorings in the policies or in the underlying notice pleading complaint;[13]

[12] *See, e.g.*, *Perdue Farms, Inc. v. Travelers Cas. and Sur. Co.*, 448 F.3d 252, 258 (4th Cir. 2006) (recognizing implied right of recoupment would "serve only as a backdoor narrowing of the duty to defend," and would "appreciably erode" the principle that the duty to defend is broader than the duty to indemnify); *Am. & Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 543-46 (Pa. 2010) (rejecting similar "right of recoupment").

[13] *See, e.g.*, *Lib. Mut. Ins. Co. v. Ray Indus., Inc.*, 974 F.2d 754, 770 (6th Cir. 1992) (rejecting apportionment of defense costs to insured, and stating that "[t]he duty to defend constitutes the provision of a service, not the payment of money; such a duty is not easily apportioned."), *rev'd on other grounds by Mich. Millers Mut. Ins. Co. v. Bronson Plating Co.*, 519 N.W.2d 864 (Mich. 1994); *Buss v. Superior Court,* 939 P.2d 766, 773 (Cal. 1997) (unlike the duty to indemnify, which "entails the payment of money," the duty to defend "entails the rendering of a service, *viz.*, the mounting and funding of a defense in order to avoid or at least minimize liability") (citations omitted).

and (b) that Travelers and Century each have an independent and indivisible contractual duty to provide that litigation service to NGSC.

### A. The Policies and New York Law

Courts have repeatedly rejected Travelers' relentless efforts to shrink its duty to defend into a limited obligation to reimburse only a pro rata "time on the risk" portion of the policyholder's legal fees. In *Continental Casualty Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640 (1993), the Court of Appeals considered and rejected the same argument Travelers and Century advance here: that an insurer with a duty to defend an action may restrict the scope of that defense promise by offloading pro rata shares of defense costs onto other insurers and its own policyholder, based on speculation that the claimant's injury might have occurred both within and outside a certain policy period. The court held that it would defeat the purpose of purchasing an insurance policy with a broad defense promise if an insurer were able to escape its obligation to provide "litigation insurance" simply because another carrier might also have an independent contractual duty to defend. As the court explained:

> [T]he duty to defend is broader than the duty to pay, requiring each insurer to defend if there is an asserted occurrence covered by its policy, and the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible. That is the "litigation insurance" the insured has purchased.

80 N.Y.2d at 655 (citations omitted). The Court of Appeals was equally emphatic in rejecting the insurer's argument that the policyholder should bear a portion of the defense costs for self-insured years: "[T]he allegation that [the policyholder] was self-insured for a period of time predating the [insurer's] coverage cannot operate to deny [the policyholder] the complete defense to which it is entitled under the [insurer's] policies." *Id.* at 656. Travelers ignores *Rapid-American* except to cite it for the self-evident proposition that an insurer with a duty to defend may be able to seek contribution from other insurers. Trav. Opp. at 16. That one insurer may

seek contribution against another for the payment of defense costs, however, does not alter or diminish each insurer's independent contractual obligation to *defend* the insured -- i.e., provide the litigation service of managing the insured's defense.[14]

Many other New York courts, both before and after *Rapid-American*, have similarly held that any insurer whose policy is potentially triggered by even one factual or legal allegation in an underlying complaint must provide its insured with a complete defense of the entire lawsuit. For example, in *Avondale Industries, Inc. v. Travelers Indemnity Co.*, 887 F.2d 1200, 1207-08 (2d Cir. 1989), the Second Circuit, applying New York law, ordered Travelers to provide the policyholder with a complete defense to underlying tort suits alleging environmental property damage that allegedly happened over many insured and uninsured years. The court emphasized that the insured "had the clear right to choose which insurance company it would name as a defendant, regardless of whatever rights Travelers may have had to demand defense costs from the other carriers." *Id. See also, e.g., Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*, 954 N.Y.S.2d 23, 24-25 (1st Dep't 2012) (ordering Travelers to provide a "complete defense" and rejecting its argument that it only had to pay defense costs on a "pro rata 'time on the risk' basis"); *State of N.Y. Ins. Dep't*, 844 N.Y.S.2d at 15 (rejecting insurer's attempt to reduce its defense obligation according to its "time on the risk"); *Fed. Ins. Co.*, 836 F.2d at 57 (holding that "under New York law each insurer had an equal and unlimited duty to defend [the insured]");

[14] Even as between insurers seeking contribution for payment of defense costs, Travelers' "time on the risk" formulation has been rejected in favor of per capita apportionment in recognition that insurers are co-obligors each with an independent contractual duty to defend. *See, e.g., State of N.Y. Ins. Dep't, Liquidation Bureau v. Generali Ins. Co.*, 844 N.Y.S.2d 13, 15 (1st Dep't 2007) (affirming equal allocation of defense costs between insurers); *Fed. Ins. Co. v. Cablevision Sys. Dev. Co.*, 836 F.2d 54, 58 (2d Cir. 1987) (as to insurers' cross-motions against third insurer, holding that, "[u]nder New York law, the duty of each of the three insurers to defend [the insured] is separate and equal. Since the insurers cannot defend 'part' of the antitrust claims against [the insured], it is logical that the insurers bear the costs of defense equally.").

*Mendes & Mount v. Am. Home Assurance Co.*, 467 N.Y.S.2d 596, 598 (1st Dep't 1983) (insured's "right to recover the entire amount expended in the defense from [insurer] cannot be diminished because there may be additional insurers which may also have duties to defend").[15] These cases implicitly or explicitly recognize that prorating defense costs for allegations relating to claims that allegedly fall within and outside periods of coverage would undo fifty years of New York duty to defend law holding that even if a single allegation in an underlying complaint is potentially covered under a policy, the insurer must defend the entire suit. *See* NGSC Mem. at 10-11.

None of the cases that Travelers or Century cites is to the contrary. *See* Trav. Opp. at 18-19; Century Opp. at 24. In *Generali-U.S. Branch v. Caribe Realty Corp.*, 1994 WL 903279 (N.Y. Sup. Ct. Dec. 5, 1994), the parties *stipulated* that the lead poisoning for which the insured was seeking coverage happened partly outside the policy period; thus, the court held, there was a "clear basis" for apportioning defense obligations. *Id.* at *2. Here, by contrast, the parties never stipulated to chop the defense promise into segments, and the TOB Action provides no empirical basis for allocating defense costs based on Travelers' "time on the risk" formula. For example, Travelers' proffer of 1938 as the date to start the period during which property damage occurred (i.e., the denominator of Travelers' "time on the risk" formula) is not supported by any allegation in the TOB Complaint, which is silent as to precisely when the property damage occurred and how it happened, alleges that Grumman did not even begin operations at the Park until 1943, and

---

[15] Courts outside New York have reached the same conclusion after examining New York law. *See Newmont USA Ltd. v. Am. Home Assurance Co.*, 676 F. Supp. 2d 1146, 1158 (E.D. Wash. 2009) ("New York law . . . provide[s] that once triggered, an insured is entitled to a full and complete defense from every insurer having a duty to defend. Any contrary rule would encourage foot dragging by insurers and potentially leave the insured without a prompt and proper defense.") (citations omitted); *Celanese Corp. v. OneBeacon Am. Ins. Co.*, 2008 WL 5784444, at *8 (Mass. Super. Ct. Dec. 29, 2008) ("Massachusetts law is to similar effect" to New York's that "the insured was entitled to a full and complete defense from every insurer having a duty to defend.") (quotation marks and citation omitted).

nowhere mentions the year 1938. *See* Scanlon Decl. Ex. 14 ¶ 15. Travelers' apportionment scheme is drawn from thin air, not from the allegations of the complaint or adjudicated facts.

*NL Industries, Inc. v. Commercial Union Insurance Co.*, 935 F. Supp. 513 (D.N.J. 1996), *see* Trav. Opp. at 19, *defeats* Travelers' argument. Although the court in *NL Industries* initially found that the duty to defend lead exposure suits could be carved up into arbitrary apportioned shares, it later concluded after rehearing that the holding in *Rapid-American* "appears logical and appropriate: an insured *should be entitled to a complete defense initially*; whether it may have to contribute to such costs can and should be decided later." *Id.* at 521 (emphasis added).[16]

In sum, the duty to defend is a service that cannot be allocated based on "time on the risk" concepts. Accordingly, Travelers' request for "time on the risk" allocation of the duty to defend should be denied.

**B. Travelers' Course of Dealing Argument**

Travelers' final argument is that "Northrop Grumman has followed a pro rata approach to allocation of defense costs for years" and that it "agreed to accept" only a pro rata defense from Travelers in the TOB Action. Trav. Opp. at 2, 8. Travelers goes so far as to assert that NGSC "negotiated [an] interim funding arrangement" with Travelers. *Id.* at 20. These assertions are false. In any event, they have not been established beyond factual dispute.

NGSC never released Travelers from any of its contractual obligations to defend, nor did it ever agree to accept less than the full defense that Travelers owes under the policies. Travelers has not produced any document that could be characterized as an interim funding agreement --

[16] The other cases cited by the insurers are also inapposite. They deal with proration of indemnity costs, *see, e.g.*, *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208 (2002), *see* Trav. Opp. at 15, Century Opp. at 22-23; are contribution actions between insurers, *see, e.g.*, *Atl. Mut. Ins. Co. v. Greater N.Y. Mut. Ins. Co.*, 660 N.Y.S.2d 983 (1st Dep't 1997), *see* Trav. Opp. at 15-16; or involve situations where the insured has impaired an insurer's contribution rights, *see, e.g.*, *Consol. Edison Co. of N.Y. v. Fyn Paint & Lacquer Co.*, 2005 WL 139170 (E.D.N.Y. Jan. 24, 2005), see Trav. Opp. at 16, Century Opp. at 23-24.

no such document exists. To the contrary, Travelers acknowledges that NGSC reserved its rights under the policies in its dealings with Travelers. *Id.* at 12, 20. Thus, Travelers' course of dealing argument lacks any substance.

Travelers' argument is also unsupported by any articulated legal theory. By asserting that the parties decided "to agree to an allocation formula in 2006," *id.* at 21, Travelers seems to suggest that NGSC's current position is a breach of contract, but Travelers does not assert such a breach (presumably because it has no contract other than the policies, which unambiguously promise to "defend any suit," not "part of a suit."). Nor does Travelers invoke the law of waiver, estoppel, accord and satisfaction, laches, or any other legal or equitable doctrine. Travelers merely asserts that NGSC's position here is "suspect," *id.*, and that NGSC's current argument "should not be heard," *id.* at 20. These conclusory statements have no legal significance.

Finally, the fact that NGSC accepted Travelers' checks for a fraction of the TOB defense costs under an express reservation of rights -- because NGSC realized that it was unlikely to obtain anything more from Travelers without going to court -- has no bearing on Travelers' contractual obligation under its policies. It was Travelers, not NGSC, that started this litigation. Having started it, Travelers should not be surprised that the policyholder is now seeking the full defense to which it is entitled under the policies.

## Conclusion

For the foregoing reasons, NGSC's motion for a declaration that Century and Travelers each have an independent duty to defend the TOB Action should be granted.

COVINGTON & BURLING LLP

By: ______________________

William F. Greaney
Georgia Kazakis
R. Laird Hart
John F. Scanlon
Shelli L. Calland
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
(202) 662-6000
fscanlon@cov.com

*Attorneys for Northrop Grumman Corporation and Northrop Grumman Systems Corporation*

Dated: February 22, 2013