Originally Filed at ECF 111

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRAVELERS INDEMNITY COMPANY, TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, formerly known as TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND, TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as THE AETNA CASUALTY AND SURETY COMPANY, AND TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, formerly known as TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

Plaintiffs,

v.

NORTHROP GRUMMAN CORPORATION, NORTHROP GRUMMAN SYSTEMS CORPORATION,

Defendants,

*and*

CENTURY INDEMNITY COMPANY, eventual successor in interest to INSURANCE COMPANY OF NORTH AMERICA,

Nominal Defendant.

12-CV-03040 (KBF)(FM)

**NORTHROP GRUMMAN SYSTEMS CORPORATION'S RESPONSE TO TRAVELERS' "COUNTER STATEMENT OF UNDISPUTED MATERIAL FACTS" REGARDING ITS OPPOSITION TO NORTHROP GRUMMAN'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE DUTY TO DEFEND THE TOWN OF OYSTER BAY ACTION**

ECF CASE

In accordance with Local Civil Rule 56.1(b), Defendant and Counterclaim/Crossclaim-Plaintiff Northrop Grumman Systems Corporation ("NGSC") submits this response to Travelers' "Counter Statement of Undisputed Material Facts" regarding its opposition to NGSC's Motion for Partial Summary Judgment on the Duty to Defend the Town of Oyster Bay Action. NGSC submits this response solely for purposes of NGSC's instant motion.

1. Travelers Assertion 1: The 600-acre Bethpage Facility is located in Nassau County and has been owned and operated by Northrop Grumman since the 1930s.[20]

**NGSC's Response to Travelers Assertion 1: Not disputed that the Bethpage Facility is located in Nassau County. Disputed that the Bethpage Facility is currently located on approximately 600 acres, that the Bethpage Facility has been owned and operated by NGSC since the 1930s to today, and that the evidence cited by Travelers supports the assertions. The evidence cited by Travelers instead states that in 1983 the Bethpage Facility site consisted of "some 600 acres" but, since then, "many portions of the [site] were delisted as the investigation of areas was completed." (Declaration of Bryce A. Pashler dated February 1, 2013 ("Pashler Decl.") Ex. 8 at NGINS000751714.) The evidence cited by Travelers further states that the Bethpage Facility "included both Grumman owned and operated plants, and government owned (United States Navy) and contractor (Grumman) operated plants," and that "[a]ll manufacturing ceased at the [Bethpage Facility] in 1996." (*Id.*)**

**NGSC further disputes that Travelers' Assertion 1 is material to NGSC's motion for summary judgment; the size, location, and dates of operation of the Bethpage Facility are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the litigation styled *Town of Oyster Bay v. Northrop Grumman Corp., et al.*, Case No. 05 CV 1945 (E.D.N.Y.) ("TOB Action").**

[20] Pashler Decl. Ex 8, Proposed Remedial Action Plan, Northrop Grumman – Bethpage facility, Operable Unit Number: 03, State Superfund Project, Bethpage, Nassau County, Site No. 130003A, Prepared By New York State Department of Environmental Conservation, Division of Environmental Remediation, dated May 2012 ("May 2011 Proposed Remedial Action Plan") at NGINS000751714; Pashler Decl. Ex. 12. Map of Public Water Districts surrounding Naval Weapons Industrial Reserve Plant, Bethpage, Nassau County, New York.

**NGSC further disputes that all evidence cited in support of Travelers Assertion 1 is admissible. Exhibit 8 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c); the document consists of a collection of out-of-court statements that Travelers offers to prove the truth of the matters asserted therein, and the cited portions of the document do not fall within any exception to the rule against hearsay set forth in the Federal Rules of Evidence. *See* Fed. R. Evid. 803.**

**Exhibit 8 to the Pashler Declaration is a Proposed Remedial Action Plan ("PRAP") for Operable Unit 3 ("OU3") of the Bethpage Facility prepared by the New York State Department of Environmental Conservation ("NYSDEC") and dated May 2012. The first page of the PRAP states that it "is a summary of the information that can be found in the site-related reports and documents in the document repository" located at the Bethpage Public Library. (Pashler Decl. Ex. 8 at NGINS000751712.) The document therefore does not "set[] out . . . factual findings from a legally authorized investigation," as is required to fall within the exception to the rule against hearsay set forth in Federal Rule of Evidence 803(8)(A)(iii). The document is instead hearsay as to the contents of the reports and documents it purportedly summarizes. The PRAP also falls outside the exception to the rule against hearsay set forth in Federal Rule of Evidence FRE 803(6) because, among other reasons, it was not "made at or near the time" of the acts and/or events set forth therein for which Travelers cites the document.**

2. Travelers Assertion 2: The Bethpage Facility was established in 1930 and from this location, Grumman Corporation and its subsidiaries ("Grumman") developed and manufactured naval aircraft, amphibious craft and satellites for NASA.[21]

**NGSC's Response to Travelers Assertion 2: Not disputed that Grumman Corporation and its subsidiaries developed and manufactured naval aircraft, amphibious craft, and satellites for NASA at the Bethpage Facility. Disputed that the Bethpage Facility was established in 1930; in fact, Grumman Aircraft Engineering Corporation's initial plant in Bethpage opened in 1938. (Declaration of Shelli L. Calland dated February 22, 2013 ("Calland Decl.") Ex. 1 at TRAV007177.)**

**NGSC further disputes that Travelers Assertion 2 is material to NGSC's motion for summary judgment; the date that the Bethpage Facility opened and the types of products that were developed and manufactured there are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

**NGSC further disputes that all evidence cited in support of Travelers Assertion 2 is admissible. Exhibits 8 and 9 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c); the documents consist of a collection of out-of-court statements that Travelers offers to prove the truth of the matters asserted therein, and the cited portions of the document do not fall within any**

---

[21] Pashler Decl. Ex. 8, May 2012 Proposed Remedial Action Plan at NGINS000751714; Pashler Decl. Ex. 9, New York State Department of Environmental Conservation, Division of Environmental Remediation, Record of Decision, Operable Unit 2 Groundwater, Northrop Grumman and Naval Weapons Industrial Reserve Plant Sites, Nassau County, Site Numbers 1-30-003A & B, dated March 2001 ("March 2001 ROD") at NGINS000010540; Pashler Decl. Ex. 10, Feb. 1, 2012 Letter at NGINS000010315-000010316.

**exception to the rule against hearsay set forth in the Federal Rules of Evidence. *See* NGSC's Response to Travelers Exhibit 1 (discussing Exhibit 8 to the Pashler Declaration).**

**Exhibit 9 to the Pashler Declaration is a Record of Decision ("ROD") for Operable Unit 2 of the Bethpage Facility and Bethpage Naval Weapons Industrial Reserve Plant ("NWIRP") sites prepared by NYSDEC and dated March 2001. The first page of the ROD states that it "presents the selected remedy for the . . . Operable Unit 2 regional groundwater contaminant plume" and that it "is based on the Administrative Record of . . . NYSDEC . . . and upon public input to the Proposed Remedial Action Plan (PRAP) presented by the NYSDEC." (Pashler Ex. 9 at NGINS000010534.) The document therefore does not "set[] out . . . factual findings from a legally authorized investigation," as is required to fall within the exception to the rule against hearsay set forth in Federal Rule of Evidence 803(8)(A)(iii). The document is instead hearsay as to the contents of and the facts set forth in the "Administrative Record," as well as the "public input" upon which the ROD is purportedly based. The ROD also falls outside the exception to the rule against hearsay set forth in Federal Rule of Evidence FRE 803(6) because, among other reasons, it was not "made at or near the time" of the acts and/or events set forth therein for which Travelers cites the document.**

3. Travelers Assertion 3: While conducting its operations at the Bethpage Facility, Grumman generated and disposed of various industrial and hazardous wastes, including

the dumping of pollutants directly on the ground or in open seepage basins on its land. These pollutants include chromic acid wastes.[22]

<u>NGSC's Response to Travelers Assertion 3</u>: **Disputed. The evidence cited by Travelers does not support Assertion 3; the evidence cited by Travelers does not refer to "dumping," specifies that in 1949, a chromic acid treatment system was put on-line at the Bethpage Facility, and explains that the Bethpage facility also established systems for treating phenols, oils, and organic compounds. (Pashler Decl. Ex. 9 at NGINS000010540.) The evidence cited by Travelers further states that predecessors of NGSC stored and disposed of various wastes in various ways and at various locations over the relevant time period, including by having particular wastes stored in drums and taken off-site by private haulers. (*Id.* Ex. 4 at NGINS000010540-41.)**

**NGSC further disputes that Travelers Assertion 3 is material to NGSC's motion for summary judgment; the alleged manner in which NGSC's predecessors disposed of chromic waste in the 1940s is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

**NGSC further disputes that Assertion 3 is supported by admissible evidence. Exhibit 9 to Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c). *See* NGSC's Responses to Travelers Assertion 2.**

4. <u>Travelers Assertion 4</u>: The 105-acre Bethpage Naval Weapons Industrial Reserve Plant ("Bethpage NWIRP Site") is located in the northern part of the Bethpage Facility

[22] Pashler Decl. Ex. 9, March 2001 ROD at NGINS000010540.

and was owned by the United States Navy and operated by Northrop Grumman since the 1930s.[23]

<u>NGSC's Response to Travelers Assertion 4</u>: **Not disputed that the former Bethpage NWIRP occupied approximately 105 acres of the Bethpage Facility, that the Bethpage NWIRP was owned by the U.S. Navy, and that NGSC's predecessors previously operated the Bethpage NWIRP, along with the U.S. Navy. Disputed that the Bethpage NWIRP is currently 105 acres, that Northrop Grumman operated the Bethpage NWIRP since the 1930s, and that the evidence cited by Travelers supports the assertions. The evidence cited by Travelers instead states that "[i]n June 2004, a portion of the [NWIRP] was delisted reducing the NWIRP site to 8.7 acres," and that "[a]ll manufacturing ceased at the . . . NWIRP facilities in 1996." (Pashler Decl. Ex. 8 at NGINS000751714.) In addition, Grumman Aircraft Engineering Corporation completed construction in 1941 of the first of several Navy-owned plants, a number of which would later be known as the NWIRP. (Calland Decl. Ex. 2 at NGINS001903423, NGINS001903432, NGINS001903454 (providing construction completion date and specifications for Emergency Plant Facilities Contract NOd-1571).)**

**NGSC further disputes that Travelers Assertion 4 is material to NGSC's motion for summary judgment; the alleged size, location, and dates of operation of the Bethpage NWIRP are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

23 Pashler Decl. Ex. 8. May 2012 Proposed Remedial Action Plan at NGINS000751714; Answer, Counterclaims and Crossclaims of Northrop Grumman Corporation and Northrop Grumman Systems Corporation ("Answer") at , ¶ 48, June 8, 2012, Dkt. No. 11.

**NGSC further disputes that all the evidence cited in support of Assertion 4 is admissible. Exhibit 8 to Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c).** ***See*** **NGSC's Responses to Travelers Assertion 1.**

5. Travelers Assertion 5: Established in 1933, the Bethpage NWIRP Site was established in 1933 and used for research, prototyping, testing, design engineering, fabrication. and primary assembly of military aircraft.[24]

**NGSC's Response to Travelers Assertion 5: Disputed that the Bethpage NWIRP was established in 1933; in fact, Grumman Aircraft Engineering Corporation completed construction in 1941 of the first of several Navy-owned plants, a number of which would later be known as the NWIRP. (Calland Decl. Ex. 2 at NGINS001903423, NGINS001903432, NGINS001903454 (providing construction completion date and specifications for Emergency Plant Facilities Contract NOd-1571).)**

**NGSC further disputes that Travelers Assertion 5 is material to NGSC's motion for summary judgment; the alleged uses and date of establishment of the NWIRP are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[24] Pashler Decl. Ex. 8, May 2012 Proposed Remedial Action Plan at NGINS000751714 Answer at , ¶ 48, Dkt. No. 11; Pashler Decl. Ex. 11, Record of Decision, Naval Weapons Industrial Reserve Plant, Bethpage, New York, Operable Unit 2 – Groundwater, NYS Registry: 1-30-0038, Prepared by Engineering Field Activity, Northeast, Naval Facilities Engineering Command, dated January 2003 ("2003 ROD") at NGINS000176753.

**NGSC further disputes that all the evidence cited in support of Assertion 5 is admissible. Exhibits 8 and 11 to Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c); the documents consist of collections of out-of-court statements that Travelers offers to prove the truth of the matters asserted therein, and the cited portions of the document do not fall within any exception to the rule against hearsay set forth in the Federal Rules of Evidence. *See* NGSC's Response to Travelers Assertion 1 (discussing Exhibit 8 to the Pashler Declaration).**

**Exhibit 11 to the Pashler Declaration is a ROD for Operable Unit 2 of the Bethpage NWIRP prepared by the U.S. Navy and dated April 2003. (Pashler Decl. Ex. 11 at NGINS000176741.) The first page of the ROD states that it "presents the selected remedial action for Operable Unit (OU) 2" of the Bethpage NWIRP, that "[t]he Navy's decision for groundwater is based on the Administrative Record for NWIRP Bethpage," and that "[m]uch of the information presented in this Navy ROD was taken from the NYSDEC OU 2 ROD." (*Id.* at NGINS000176743.) The document therefore does not "set[] out . . . factual findings from a legally authorized investigation," as is required to fall within the exception to the rule against hearsay set forth in Federal Rule of Evidence 803(8)(A)(iii). The document is instead hearsay as to the contents of and the facts set forth in the "Administrative Record" and the "NYSDEC OU 2 ROD" upon which the Navy ROD is purportedly based. In addition, the Navy ROD was prepared by a potentially responsible party at the Bethpage NWIRP site and therefore fails the "trustworthiness" requirement of Federal Rule of Evidence 803(8)(B). Finally, the Navy ROD falls outside the exception to the rule against hearsay set forth in Federal Rule of Evidence FRE 803(6)**

**because, among other reasons, it was not "made at or near the time" of the acts and/or events set forth therein for which Travelers cites the document.**

6. Travelers Assertion 6: Grumman's operations at the Bethpage NWIRP Site involved the generation, storage, treatment and disposal of hazardous materials, including the dumping of hazardous waste directly into drainage sumps and in dry wells, and directly onto the ground; the hazardous wastes included volatile organic compounds, perchloroethene and trichloroethene polychlorinated biphenyls (PCBs), and chromium and cadmium.[25]

**NGSC's Response to Travelers Assertion 6: Disputed that all wastes generated, stored, or treated at the Bethpage NWIRP were "dump[ed] directly into drainage sumps and in dry wells," and that the evidence cited by Travelers supports the assertion; the evidence cited by Travelers (one page of a longer document) does not use the term "dump," addresses only certain "[w]astes generated by plant operations" at the Bethpage NWIRP, and refers to Sections 3 and 4 of the same document for a "more full[]" description of historical operations; Sections 3 of the cited document, for example, explains that waste disposal operations at the Bethpage NWIRP included storing waste in drums and having drummed waste taken offsite by private contractor. (Pashler Decl. Ex. 11 at NGINS000176749, NGINS000176754.)**

**NGSC further disputes that Assertion 6 is material to NGSC's motion for summary judgment; the alleged waste disposal practices relating to certain wastes at the Bethpage NWIRP are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[25] Pashler Decl. Ex. 11, 2003 ROD at NGINS000176749.

**NGSC further disputes that Assertion 6 is supported by admissible evidence. Exhibit 11 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c).** ***See*** **NGSC's Response to Travelers Assertion 5.**

7. Travelers Assertion 7: The Bethpage Community Park is a 12-acre parcel that Northrop Grumman deeded to the Town of Oyster Bay in 1962 after using it as a hazardous waste dump site for decades.[26]

NGSC's Response to Travelers Assertion 7: **Disputed. The Bethpage Community Park is situated on approximately 18 acres of land that Grumman Aircraft Engineering Corporation donated to the Town of Oyster Bay in 1962. (*See* Calland Decl. Ex. 3 at NGINS001267495.) NGSC further disputes that the evidence cited by Travelers supports the assertion that NGSC's predecessors used the Park property "as a hazardous waste dump site for decades;" the cited evidence makes no mention of NGSC's predecessors using property as a "dump site" for anything, let alone "hazardous waste." (*See* Heskin Decl. Exs. 8, 11.)**

**NGSC further disputes that Assertion 7 is material to NGSC's motion for summary judgment; the alleged waste disposal practices on property that ultimately became the Bethpage Community Park are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

26 Pashler Decl. Ex. 8. May 2012 Proposed Remedial Action Plan at NGINS000751714, NGINS000751714; Answer at ¶ 48, Dkt. No. 11.

**NGSC further disputes that Assertion 7 is supported by admissible evidence. Exhibit 8 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c), (*see* NGSC's Response to Travelers Assertion 1), and paragraph 48 of NGSC's Answer, Counterclaim and Crossclaim in this Action makes no mention of the Bethpage Community Park or waste disposal practices conducted there (*see* Dkt. No. 11 ¶ 48).**

8. Travelers Assertion 8: Grumman used the Bethpage Community Park land from at least the 1940s as a dumping area and treatment area for hazardous wastes.[27] Grumman dug various "ponds" in this area that it would pour wastes into in order to separate the water from the sludge. Contaminants were allowed to seep into the soil.[28] Grumman used this area to bury dirty rags and other debris contaminated with pollutants, and used a portion of the site to set fire to wastes, supposedly to conduct fire training drills.[29]

**NGSC's Response to Travelers Assertion 8: Disputed. The evidence cited by Travelers to support the first sentence of Assertion 8 makes no mention of Grumman using the land on which the Bethpage Community Park is now situated as "a dumping area," nor does the cited evidence make any mention of "hazardous waste." (*See* Pashler Decl. Ex. 8**

[27] Pashler Decl. Ex. 8, May 2012 Proposed Remedial Action Plan at NGINS000751714; Pashler Decl. Ex. 13, Geraghty & Miller, Inc. Remedial Investigation, Feasibility Study Work Plan, Grumman Aerospace Corporation, Bethpage, New York, Volume 11, Appendix D ("Geraghty & Miller 1990") at NGINS000210665.

[28] Pashler Decl. Ex. 17, Dvirka and Bartilucci, Town of Oyster Bay, Bethpage Community Park Investigation, Sampling Program, Field Report, December 2003 ("December 23, 2003 Field Report") at NGINS000007369-000007370.

[29] Pashler Decl. Ex. 17, December 23, 2003 Field Report at NGINS000007370.

**at NGINS000751714; *id.* Ex. 13 at NGINS000210665.) Moreover, although Grumman did use portions of the land on which the Bethpage Community Park is now situated before it donated the land to the Town of Oyster Bay in 1962, Grumman denies that its operations took place over the entire area, including the location of the Town of Oyster Bay skating rink. (*See* Calland Decl. Ex. 27 at 7-8, 15-17.) NGSC further disputes that the evidence cited to support the second and third sentences of Assertion 8 supports the statements contained therein. The cited evidence makes no mention of "ponds" or allowing "contaminants . . . to seep into the soil;" the cited evidence instead states that "[w]astewater treatment sludge generated at the . . . Industrial Wastewater Treatment Facility was transported to the Park property and placed in one of two sludge drying beds." (*See id.* Ex. 17 at NGINS000007369-70.) NGSC further disputes that the evidence cited to support the final sentence of Assertion 8 supports the statements contained therein; the evidence instead states that "[s]pent rags generated during the wipe-down of a paint-booth water curtain . . . were emptied into a pit located on the property," and that a portion of the current Park property was used as "a fire training area where waste oil and jet fuel were ignited and extinguished" because "[t]he requirement to develop, operate and maintain an on-site fire fighting force ("Crash Crew"), including a fire training program, was imposed on Grumman Aircraft Engineering Corporation by the U.S. Navy." (*See id.* Ex. 17 at NGINS000007370.)**

**NGSC further disputes that the first sentence of Assertion 8 is supported by admissible evidence. Exhibit 13 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c); the document consists of**

**collections of out-of-court statements that Travelers offers to prove the truth of the matters asserted therein, and the cited portions of the document do not fall within any exception or exclusion to the rule against hearsay set forth in the Federal Rules of Evidence. *See* Fed. R. Evid. 801, 803.**

**Exhibit 13 to the Pashler Declaration is a compilation of two chronologies entitled "Chronological Record of the Bureau of Water Pollution Control Relating to the Regulation of Industrial Wastes of the Grumman Aerospace Corporation Plant at Bethpage, New York" and "Chronological Record of the Bureau of Water Resources' Investigation of Groundwater Contamination East Central Nassau County." (*See* Pashler Decl. Ex. 1 at NGINS000210665, NGINS000210668.) These chronologies do not set out the "activities" of a "public office," as is required to fall within the exception to the rule against hearsay set forth in Federal Rule of Evidence 803(8)(A)(i). The chronologies instead characterize various meetings, letters, memoranda, discussions, test results and other documents or events involving Nassau County Department of Health ("NCDOH") personnel and/or various outside parties that occurred over an approximately 34-year period (1943 - 1977). (*See id.* Ex. 13 at NGINS000210665-733; *see also id.* at NGINS000210688-89 (August 23, 1976 entry describing events and documents involving only the Navy and Grumman).) The chronologies likewise do not "set[] out . . . factual findings from a legally authorized investigation," as is required to fall within the exception to the rule against hearsay set forth in Federal Rule of Evidence 803(8)(A)(iii). As discussed above, the document instead comments on numerous events that allegedly took place over an approximately 34-year period. (*See id.* Ex. 13.)**

**Exhibit 13 to the Pashler Declaration likewise does not fall within the exception to the rule against hearsay set forth in Federal Rule of Evidence 803(6) because the document was not made at or near the time of the events that it purports to record. *See Fed.* R. Evid. 803(6)(A). To the contrary, the first chronology -- which purports to record events that occurred from 1943 to 1976 -- is dated February 7, 1977, (*see id.* Ex. 13 at NGINS000210667), and the second chronology -- which purports to record events that occurred from August 1970 to January 1977 -- has no date of creation, consists of numerous entries that are similar in style, and is set forth on 66 continuously paginated sheets, (*see id.* Ex. 13 at NGINS000210668-733.) The chronologies are inadmissible under Federal Rule of Evidence 803(6) & (8) for the additional reason that no evidence has been submitted demonstrating that the unknown individual(s) who drafted the document possessed personal knowledge of the facts set forth therein.**

**Exhibit 13 to the Pashler Declaration also does not fall within the exclusion to the rule against hearsay set forth in Federal Rule of Evidence 801(d)(2)(B) because NGSC did not manifest that it adopted the statements set forth in the document or believed them to be true. Although the document was attached as an appendix to a report submitted by a Grumman to NYSDEC (the report was prepared by an outside consultant), the report specified that the chronology was simply a document that Grumman had originally obtained from NYSDEC, not a truthful rendition of the facts stated therein. (*See id.* Ex. 13 at NGINS000210659.)**

9. Travelers Assertion 9: Grumman donated the Bethpage Community Park land to the Town of Oyster Bay in 1962, and the Town turned the land into a park.[30] The Town built a baseball field on top of Grumman's former waste ponds.[31]

**NGSC's Response to Travelers Assertion 9: Not disputed that Grumman Aircraft Engineering Corporation donated the land on which the Bethpage Community Park is now situated to the Town of Oyster Bay in 1962, and that the Town turned the land into a Park. Disputed that the evidence cited by Travelers supports the second sentence of Assertion 9; the cited evidence instead states that the Town built a "Ball-field" over the location of the "Former Grumman Settling Ponds." (*See* Pashler Decl. Ex. 8 at NGINS000751714.)**

**NGSC further disputes that Assertion 9 is material to NGSC's motion for summary judgment; the date that Grumman Aircraft Engineering Corporation donated the property on which the Bethpage Community Park is now located to the Town of Oyster Bay and the alleged construction of baseball field on the Park are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

**NGSC further disputes that Assertion 9 is supported by admissible evidence. Exhibit 8 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c). *See* NGSC's Response to Travelers Assertion 1.**

---

[30] Pashler Decl. Ex. 8, May 2012 Proposed Remedial Action Plan at NGINS000751714.

[31] Pashler Decl. Ex. 8, May 2012 Proposed Remedial Action Plan at NGINS000751714.

10. Travelers Assertion 10: Grumman learned in 1947 that an on-site well at the Bethpage Facility was contaminated with hexavalent chromium.[32]

**NGSC's Response to Travelers Assertion 10: Disputed. The evidence cited by Travelers to support Assertion 10 makes no mention of an "on-site" well being "contaminated;" the cited evidence states that Grumman learned in 1947 that a single well of the Central Park Water District contained 1.4 parts per million of hexavalent chromium, and that Grumman designed and installed a chromic acid treatment system. (*See* Pashler Decl. Ex. 14 at NGINS000016468-69; Dkt. No. 11 ¶ 49.)**

**NGSC further disputes that Assertion 10 is material to NGSC's motion for summary judgment; the alleged discovery of hexavalent chromium in an on-site well in 1947 is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

**NGSC further disputes that all the evidence cited by Travelers to support Assertion 10 is admissible. Exhibit 14 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c); the document consists of a collection of out-of-court statements that Travelers offers to prove the truth of the matters asserted therein, and the cited portions of the document do not fall within any exception to the rule against hearsay set forth in the Federal Rules of Evidence. *See* Fed. R. Evid. 803.**

[32] Answer at ¶ 49, Dkt. No. 11; Pashler Decl. Ex. 14, New York State Department of Environmental Conservation, Division of Hazardous Waste Remediation, Record of Decision, Grumman Aerospace, Bethpage Facility, Operable Unit 1, Inactive Hazardous Waste Site, Site Number 130003A, dated March 1995 ("March 1995 ROD") at NGINS000016468-000016469

**Exhibit 14 to the Pashler Declaration is a ROD for Operable Unit 1 of the Bethpage Facility prepared by NYSDEC and dated March 1995. The first page of the ROD states that "[t]he selected remedial action for Operable Unit 1 at the Grumman Aerospace - Bethpage Facility is presented in this decision document" and that "[t]he documents in the Administrative Record were used to provide the bases for this Record of Decision." (Pashler Decl. Ex. 14 at NGINS000016465.) The document therefore does not "set[] out . . . factual findings from a legally authorized investigation," as is required to fall within the exception to the rule against hearsay set forth in Federal Rule of Evidence 803(8)(A)(iii). The document is instead hearsay as to the contents of and the facts set forth in the "Administrative Record" upon which the ROD is purportedly based. The ROD also falls outside the exception to the rule against hearsay set forth in Federal Rule of Evidence FRE 803(6) because, among other reasons, it was not "made at or near the time" of the acts and/or events set forth therein for which Travelers cites the document.**

11. Travelers Assertion 11: As early as 1970, the Nassau County Department of Health met with Grumman to discuss water quality surveillance at the Bethpage Facility.[33]

**NGSC's Response to Travelers Assertion 11: Not disputed that the evidence cited by Travelers states that in 1970 a representative from the NCDOH met with a representative of Grumman to discuss "procedures for routine water quality surveillance by the Department at the wells and in the distribution system." Disputed that Assertion 11 is supported by admissible evidence. Exhibit 13 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as**

[33] Pashler Decl. Ex. 13, Geraghty & Miller 1990 at NGINS000210668.

**required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c).** ***See*** **NGSC's Response to Travelers Assertion 8.**

**NGSC further disputes that Assertion 11 is material to NGSC's motion for summary judgment; the alleged discussion of procedures for routine monitoring of Grumman's wells by the NCDOH in 1970 is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

12. Travelers Assertion 12: Between 1964 and 1975, Grumman replaced thirteen wells "due to problems of deterioration and odor" and abandoned a number of other wells due to peculiar tastes and a "sweet paint" odor in the groundwater.[34]

**NGSC's Response to Travelers Assertion 12: Disputed. Grumman replaced approximately thirteen wells between 1964 and 1975, but not all due to "problems of deterioration and odor;" in fact, Grumman replaced several wells between 1964 and 1975 solely due to a need for increased capacity or deterioration of older wells,** ***i.e.*** **because the wells "had deteriorated to the point that it [was] no longer practical to attempt to repair them." (*See* Calland Decl. Ex. 29 at NGINS000990027 (impractical to repair two wells); *id.* Ex. 28 at NGINS000925528 (four wells replaced due to "deterioration and loss of yield"); *id.* Ex. 30 at NGINS000925068 ("replacing a 27-year-old 800 GPM, 150' deep well with a new 1200 GPM, 400' deep well").) NGSC further disputes that the evidence cited by Travelers supports the assertion that Grumman "abandoned a number of other wells due to peculiar tastes and a 'sweet paint' odor;" the cited evidence instead states that "well**

[34] Pashler Decl. Ex. 15, 1975 Dept. of Health Summary of Ground water Quality at NGINS000619195 Pashler Decl. Ex. 13, Geraghty & Miller 1990 at NGINS000210671

**#8 . . . was subsequently removed from service," and that the wells that allegedly developed "a peculiar taste and 'sweet paint' odor" were tested for phenols, but the results came back negative. (*See* Pashler Decl. Ex. 13 at NGINS000210671.)**

**NGSC further disputes that Assertion 12 is material to NGSC's motion for summary judgment; the alleged replacement of wells on the Bethpage Facility during the 1964 to 1975 time period is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

13. Travelers Assertion 13: In 1975, Grumman expressed "deep concern that immediate action be taken to determine the cause of the contamination problem and to take prompt corrective action."[35]

**NGSC's Response to Travelers Assertion 13: Not disputed that Assertion 13 contains an accurate partial quotation from a document prepared by an unknown author that purports to be a chronology of past events attached as Exhibit 13 to the Pashler Declaration. Disputed that Assertion 13 is supported by admissible evidence. Exhibit 13 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c). *See* NGSC's Response to Travelers Assertion 8.**

**NGSC further disputes that Assertion 13 is material to NGSC's motion for summary judgment; the alleged expression of concern that immediate action be taken to find the source of well contamination in 1975 is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[35] Pashler Decl. Ex. 13. Geraghty & Miller 1990 at NGINS000210675.

14. Travelers Assertion 14: A 1976 Nassau County Department of Health Water Quality Assessment report concluded that a "serious problem of industrial waste contamination was evident at the Grumman Aerospace Corporation."[36]

**NGSC's Response to Travelers Assertion 14: Not disputed that Assertion 13 contains an accurate partial quotation from a document prepared by an unknown author that purports to be a chronology of past events attached as Exhibit 13 to the Pashler Declaration. Disputed that the NCDOH had determined by 1976 that Grumman was the source of any such contamination. (*See* Pashler Decl. Ex. 15 at NGINS000619195 ("The discharge of sanitary wastes *in the vicinity of the Grumman Corporation* and the discharge of industrial wastes, *particularly those previously discharged by the Hooker Chemical Corporation*, is considered responsible for the degradation in quality of Grumman Corporation wells.") (emphasis added).) NGSC further disputes that Assertion 14 is supported by admissible evidence. Exhibit 13 to the Pashler Declaration cannot be presented in a form that would be admissible in evidence to support the facts asserted, as required by Local Civil Rule 56.1(d) and Federal Rule of Civil Procedure 56(c). *See* NGSC's Response to Travelers Assertion 8.**

**NGSC further disputes that Assertion 14 is material to NGSC's motion for summary judgment; the alleged discovery of certain groundwater contamination in the vicinity of Grumman in the mid-1970s is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[36] Pashler Decl. Ex. 13, Geraghty & Miller 1990 at NGINS000210684.

15. Travelers Assertion 15: During the 1970s, the New York State Department of Environmental Conservation ("NYSDEC"), the Nassau County Department of Health, the New York Attorney General, the U.S. Environmental Protection Agency and U.S. Geological Survey were all involved in investigating groundwater contamination at the Bethpage Facility.[37]

**NGSC's Response to Travelers Assertion 15: Not disputed that, in the 1970s, NYSDEC, the NCDOH, the New York Attorney General, and U.S. Environmental Protection Agency, and U.S. Geological Survey were involved in investigating groundwater contamination in the vicinity of the Bethpage Facility. Disputed that in the 1970s any of these organizations determined that Grumman was the source of any such contamination. (*See, e.g.*, Pashler Decl. Ex. 15 at NGINS000619195 ("The discharge of sanitary wastes *in the vicinity of the Grumman Corporation* and the discharge of industrial wastes, *particularly those previously discharged by the Hooker Chemical Corporation*, is considered responsible for the degradation in quality of Grumman Corporation wells.") (emphasis added).)**

**NGSC further disputes that Assertion 15 is material to NGSC's motion for summary judgment; the investigation of groundwater contamination at and around the Bethpage Facility in the mid-1970s is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

[37] Pashler Decl. Ex. 13, Geraghty & Miller 1990 at NGINS000210666, NGINS000210681, NGINS000210708; Pashler Decl. Ex. 15, 1975 Dept. of Health Summary of Groundwater Quality at NGINS000619196.

16. Travelers Assertion 16: In October 1989, Grumman started a Remedial Investigation at the Bethpage Facility with oversight from the NYSDEC, which lasted for five years.[38]

**NGSC's Response to Travelers Assertion 16: Disputed. Grumman performed a remedial investigation at the Bethpage Facility, with oversight from NYSDEC, in two phases beginning in February 1991 and ending in September 1994. (Calland Decl. Ex. 4.) NGSC further disputes that Assertion 16 is material to NGSC's motion for summary judgment; the performance of a remedial investigation at the Grumman Facility in the early 1990s is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

17. Travelers Assertion 17: In October 1990, Grumman and the NYSDEC entered into a Consent Order that memorialized Grumman's agreement to conduct a Remedial Investigation and Feasibility Study at the Bethpage Facility.[39]

**NGSC's Response to Travelers Assertion 17: Not disputed that in October 1990, Grumman entered into an Order on Consent with NYSDEC in which Grumman agreed to conduct a remedial investigation and feasibility study ("RI/FS") at the Bethpage Facility. Disputed that Assertion 17 is material to NGSC's motion for summary judgment; Grumman's entry into a consent order with NYSDEC to perform an RI/FS at the Bethpage Facility and NYSDEC's division of the Bethpage Facility into separate Operable Units is**

[38] Pashler Decl. Ex. 10, February 1, 2012 Letter at NGINS000010317.

[39] Pashler Decl. Ex. 14, March 1995 ROD at NGINS000016469.

**irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

18. Travelers Assertion 18: In 1995, the NYSDEC issued separate Records of Decision setting out required remedial actions for soil contamination at the Bethpage Facility and the Bethpage NWIRP Site.[40]

NGSC's Response to Travelers Assertion 18: **Disputed that the Records of Decision issued by NYSDEC in 1995 set out "required" remedial actions for soil contamination at the Bethpage Facility and Bethpage NWIRP. The Records of Decision set out NYSDEC's "selected remedial action" for Operable Unit 1 at the Bethpage Facility site and Operable Unit 1 at the Bethpage NWIRP. (*See* Pashler Decl. Ex. 14 at NGINS000016465; *id.* Ex. 16 at NGINS000126484.) NGSC further disputes that Assertion 18 is material to NGSC's motion for summary judgment; NYSDEC's issuance of Records of Decision for Operable Unit 1 of the Bethpage Facility site and the Bethpage NWIRP site is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

19. Travelers Assertion 19: In 2001, the NYSDEC issued a Record of Decision for the Bethpage Facility and for the Bethpage WIRP Site setting out required remedial actions for groundwater contamination at the Sites.[41]

---

[40] Pashler Decl. Ex. 14, March 1995 ROD; Pashler Decl. Ex. 16, Record of Decision, Naval Weapons Industrial Reserve Plant, Bethpage, New York, Sites, 1, 2, 3, NYS Registry: 1-30-0038, Prepared by Northern Di vision, Naval Facilities Engineering Command and New York State Department of Environmental Conservation.

[41] Pashler Decl. Ex. 9, March 2001 ROD at NGINS000010534-000010536.

**<u>NGSC's Response to Travelers Assertion 19</u>: Disputed that the Record of Decision issued by NYSDEC in 2001 set out "required" remedial actions for groundwater contamination at the Bethpage Facility site and Bethpage NWIRP site. The Record of Decision set out NYSDEC's "selected remedy" for Operable Unit 2 at the Bethpage Facility site and the Bethpage NWIRP site. (*See* Pashler Decl. Ex. 9 at NGINS000010534.) NGSC further disputes that Assertion 19 is material to NGSC's motion for summary judgment; NYSDEC's issuance of a Record of Decision for Operable Unit 2 of the Bethpage Facility site and the Bethpage NWIRP site is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

20. <u>Travelers Assertion 20</u>: By early 2002, Northrop Grumman determined that the soil at Bethpage Community Park was contaminated with PCBs and metals as a result of its prior waste disposal activities.[42]

**<u>NGSC's Response to Travelers Assertion 20</u>: Disputed. The evidence cited by Travelers does not support Assertion 20. The cited evidence does not state that the Bethpage Community Park was contaminated with PCBs and metals "as a result of [NGSC's] prior waste disposal activities;" the cited evidence instead states that "soil samples indicated that PCBs and some RCRA metals were present at some locations in the park at concentrations exceeding the NYSDEC's TAGM 4046 Recommended Soil Cleanup Objectives," without making any determination as to the source of those PCBs and metals. (*See* Pashler Ex. 17 at NGINS000007370-72.) NGSC further disputes that Assertion 20 is material to NGSC's motion for summary judgment; the discovery of PCBs and metals in**

[42] Pashler Decl. Ex. 17, December 23, 2003 Field Report at NGINS000007370-000007372.

**soils at the Bethpage Community Park in 2002 is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

21. Travelers Assertion 21: Northrop Grumman had previously determined that the soil on its plant adjacent to the Bethpage Community Park was contaminated with PCBs that exceeded NYSDEC guidelines.[43] The Town closed the Bethpage Community Park in May 2002.[44]

**NGSC's Response to Travelers Assertion 21: Disputed. The evidence cited by Travelers does not support the first sentence of Assertion 21; the cited evidence instead states that NGSC had previously "detect[ed] PCB concentrations in excess of the NYSDEC TAGM 4064 Recommended Soil Cleanup Objectives on an adjacent property." (*See* Pashler Decl. Ex. 17 at NGINS000007371-72.) Not disputed that the Town of Oyster Bay closed the Bethpage Community Park in May 2002; the Town partially reopened the Park in November 2002. (*See id.* Ex. 17 at NGINS000007372.) NGSC further disputes that Assertion 21 is material to NGSC's motion for summary judgment; the discovery of PCBs in soils not on the Bethpage Community Park and the temporary closure of the Park in 2002 are irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[43] Pashler Decl. Ex. 17. December 23, 2003 Field Report at NGINS000007371-000007372.

[44] Pashler Decl. Ex. 18, July 26, 2002 Letter from NYSDEC at NGINS000011759.

22. Travelers Assertion 22: In July 2002, the NYSDEC demanded that Northrop Grumman address the Bethpage Community Park Site and submit a corrective action plan.[45]

**NGSC's Response to Travelers Assertion 22: Disputed. The evidence cited by Travelers does not support the first sentence of Assertion 22; the cited evidence -- a letter from NYSDEC to NGSC and the Navy that is dated July 26, 2002 and that bears an "August 2002" received stamp from NGSC -- instead states that "Grumman and the Navy must now move to the next phase of the investigation and provide the Department with a Corrective Measures Study." (*See* Pashler Decl. Ex. 18 at NGINS000011759.) NGSC further disputes that Assertion 22 is material to NGSC's motion for summary judgment; NYSDEC's request that NGSC submit a corrective action plan for the Bethpage Community Park in 2002 is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

23. Travelers Assertion 23: By letter dated October 10, 2002, Northrop Grumman informed Travelers for the first time or [sic] correspondence with the NYSDEC indicating that Northrop Grumman had caused contamination at the Bethpage Community Park and faced potential liability.[46]

**NGSC's Response to Travelers Assertion 23: Disputed that the evidence cited by Travelers supports Assertion 21; the cited evidence -- a letter from NGSC's broker, Aon, to Travelers dated October 10, 2002 -- states instead that it is enclosing recent**

[45] Pashler Decl. Ex. 18, July 26, 2002 Letter from NYSDEC at NGINS000011759.

[46] Pashler Decl. Ex. 19, October 10, 2002 Letter from Aon attaching letter from NYSDEC at NGINS000011757.

**correspondence received from NYSDEC that "discuss[s] detected levels of PCB and metals contamination which allegedly exceed federal and state cleanup objectives for soils." (See Pashler Decl. Ex. 19 at NGINS0000117573.) NGSC further disputes Assertion 23 to the extent it suggests that NGSC had not previously provided information to Travelers regarding alleged environmental property damage related to operations at the Bethpage Facility. On January 30, 1984, Grumman, through its insurance broker, Frank B. Hall & Co. of New York, sent a letter to Travelers enclosing a letter from NYSDEC in which NYSDEC stated that it "ha[d] determined that [Grumman] may be responsible for the release or threatened release of hazardous substances" at the Bethpage Facility, that Grumman "may be liable for the present and future costs of response, removal and remediation and for damages to the natural resources of the State of New York at and around the" Bethpage Facility, and that the letter "constitutes a claim by the State of New York." (Calland Decl. Ex. 16 at CEN00001110, CEN00001114.) In addition, Grumman provided a briefing to Travelers regarding water quality issues at the Bethpage Facility and surrounding areas in August 1989. (*Id.* Exs. 17, 18.)**

**NGSC further disputes that Assertion 23 is material to NGSC's motion for summary judgment; NGSC's forwarding to Travelers in 2002 certain correspondence from NYSDEC regarding the Bethpage Community Park is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

24. Travelers Assertion 24: Travelers responded to this letter by declining coverage on several grounds, including that Northrop Grumman had provided unacceptably late notice of the occurrence.[47]

**NGSC's Response to Travelers Assertion 24: Disputed. Travelers has stated that after receiving NGSC's letter dated October 10, 2002, Travelers "repeated[ly] request[ed] additional information about the NY-DEC assertions relating to Bethpage Community Park." (Dkt. 1 Ex. A, Travelers' Complaint ¶ 84.) Travelers has also specifically characterized its March 5, 2003 letter to NGSC -- the evidence that Travelers cites in support of Assertion 23 -- as a "reservation of rights" letter, not a denial of coverage. (*See* Calland Decl. Ex. 5 at TRAV007600.) In addition, Travelers has reimbursed a percentage of costs incurred by NGSC in defending the TOB Action, an action that involves alleged environmental property damage at the Bethpage Community Park. (*See* Scanlon Decl. Ex. 22 at NGINS000011177-78.)**

25. Travelers Assertion 25: Travelers issued primary liability insurance policies and certain excess liability policies to Grumman and various of its predecessors and/or affiliates from January 1, 1968 to January 1, 1985 (the "Policies").[48]

**NGSC's Response to Travelers Assertion 25: Not disputed.**

[47] Pashler Decl. Ex. 20, March 5, 2003 Letter at TRAV007029, TRAV007033.

[48] Answer at ¶ 23, Dkt. 11.

26. Travelers Assertion 26: Pursuant to these Policies, Travelers agreed to indemnify the insured for covered claims (which are specifically limited to property damage that takes place "during the policy period") and to defend against covered suits.[49]

**NGSC's Response to Travelers Assertion 26: Disputed. The insuring agreement in Travelers Policy Nos. TRNSL-932208-68 and T-RNSL-932208-69 provides, in relevant part, that "[t]he company will indemnify the insured for all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this policy applies caused by an occurrence . . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent." (Declaration of John F. Scanlon dated January 4, 2013 ("Scanlon Decl.")[50] Ex. 8 at TRAV000425; *id.* Ex. 9 at NGINS000005927.)**

**The insuring agreement in Travelers Policy No. TR-NSL-107T510-1-74 provides, in relevant part, that Travelers will "pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed by law upon the insured, or assumed by the insured under any contract, for damages because of . . . property damage to which this policy applies . . . . With respect to any claim or suit alleging . . . property damage, the company shall have right and duty to . . . defend any suit**

[49] Scanlon Decl. Ex. 8, Policy No. TRNSL-932208-68 at TRAV000435-436; Pashler Decl. Ex. 1, Policy No. TRNSL-932208-69 at TRAV000460-000461; Pashler Decl. Ex. 2, Policy No. TR-NSL-107T510-1-74 at TRAV000771; Pashler Decl. Ex. 3, Policy No. TR-NSL-162T582-2-78 at TRAV002274; Scanlon Decl. Ex. 12, Policy No. TR-NSL-181T215-4-80 at TRAV002324.

[50] The "Scanlon Declaration" refers to the declaration of John F. Scanlon dated January 4, 2013, which was submitted in support of NGSC's Motion for Partial Summary Judgment on Century's and Travelers' Duty to Defend the TOB Action.

**against the insured brought within the United States of America . . . alleging such injury or damage and seeking damages on account thereof, even if any of the allegations of the suit are groundless, false or fraudulent." (Scanlon Decl. Ex. 10 at NGINS000006025, NGINS000006030.)**

**The insuring agreement in Travelers Policy Nos. TR-NSL-162T582-2-78 and TR-NSL-181T215-4-80 provides, in relevant part, that "[t]he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies caused by an occurrence . . . . The company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury or damage, even if any of the allegations of the suit are groundless, false or fraudulent." (Scanlon Decl. Ex. 11 at TRAV002264; *id.* Ex. 12 at TRAV002316.)**

27. Travelers Assertion 27: Grumman agreed to various conditions and terms as part of the contract, such as providing timely notices of occurrences and suits, cooperating with Travelers regarding the defense of claims, and not incurring voluntary payments.[51]

**NGSC's Response to Travelers Assertion 27: Disputed. The primary liability insurance policies that Travelers issued to Grumman and various of its predecessors and/or affiliates and that were in effect from January 1, 1968 to January 1, 1985 do not contain the language set forth in Assertion 27. (*See* Scanlon Decl. Exs. 8-12.)**

[51] Scanlon Decl. Ex. 8, Policy No. TRNSL-932208-68 at TRAV000441-000442; Pashler Decl. Ex. 1, Policy No. TRNSL-932208-69 at TRAV000466-000467; Pashler Decl. Ex. 2. Policy No. TR-NSL-107T510-1-74 at TRAV000771-000772; Pashler Decl. Ex. 3, Policy No. TR-NSL-162T582-2-78 at TRAV002275; Scanlon Decl. Ex. 12, Policy No. TR-NSL-181T215-4-80 at TRAV002328-02329.

**The terms and conditions set forth in the primary liability insurance policies that Travelers issued to Grumman and various of its predecessors and/or affiliates and that were in effect from January 1, 1968 to January 1, 1985 speak for themselves.**

28. Travelers Assertion 28: Beginning on January 1, 1972, the Travelers' Policies at issue in Northrop Grumman's motion either have provisions that exclude coverage for pollution (in various language formulations) or are deemed to include a statutory pollution exclusion by virtue of N.Y. Insurance Law Section 46(a)(13)&(14).[52]

**NGSC's Response to Travelers Assertion 28: Disputed. Only three of the five primary liability policies that Travelers issued to predecessors of NGSC and that are at issue in NGSC's motion for partial summary judgment contain any pollution exclusion language at all, and the earliest of those policies went into effect on January 1, 1974. (*See* Scanlon Decl. Ex. 8; *id.* Ex. 9; *id.* Ex. 10 at NGINS000006022, NGINS000006027; *id.* Ex. 11 at TRAV002262, TRAV002266; *id.* Ex. 12 at TRAV002314, TRAV002317.)**

**Travelers Policy Nos. TR-NSL-107T510-1-74, TR-NSL-162T582-2-78, and TR-NSL-181T215-4-80 each provides, in relevant part, that it "does not apply . . . . to . . . property damage arising out of any emission, discharge, seepage, release or escape of any liquid, solid, gaseous or thermal waste or pollutant . . . if such emission, discharge, seepage, release, or escape is either expected or intended from the standpoint of any insured or any person or organization for whose acts or omissions any insured is liable . . . ." (*Id.* Ex. 10 at NGINS000006027; *id.* Ex. 11 at TRAV002266; *id.* Ex. 12 at TRAV002317.))**

[52] Pashler Decl. Ex. 2, Policy No. TR-NSL-107T510-1-74 at TRAV000765; Pashler Decl. Ex. 3, Policy No. TR-NSL-162T582-2-78 at TRAV002266; Scanlon Decl. Ex. 12, Policy No. TR-NSL-181T215-4-80 at TRAV002317, TRAV002351.

**NGSC further disputes that any of the primary liability policies that Travelers issued to predecessors of NGSC and that are at issue in NGSC's motion for partial summary judgment contains or is deemed to contain "a statutory pollution exclusion by virtue of N.Y. Insurance Law Section 46(a)(13)&(14)." Such an assertion constitutes a legal conclusion, not a statement of fact.**

**NGSC further disputes that Assertion 28 is material to NGSC's motion for summary judgment; the alleged existence of certain qualified pollution exclusion language in certain of the policies issued by Travelers to NGSC's predecessors is irrelevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

29. Travelers Assertion 29: The Town of Oyster Bay filed suit against Northrop Grumman and the United States Navy in the United States District Court for the Eastern District of New York on April 21, 2005 ("TOB Lawsuit").[53]

**NGSC's Response to Travelers Assertion 29: Not disputed.**

30. Travelers Assertion 30: The Town sought to recover "costs that have been and will be incurred by the Town in responding to the release or threatened release of hazardous substances at or from real property known as the Bethpage Community Park (the 'Park Property'), located in Bethpage, Town of Oyster Bay, Nassau County, New York."[54]

---

[53] Scanlon Decl. Ex. 14, Complaint, Town of Oyster Bay v. Northrop Grumman Sys. Corp., No. 5-cv-01945-TCP-AKT ("Town of Oyster Bay Complaint").

[54] Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 1.

__NGSC's Response to Travelers Assertion 30__: **Not disputed that Assertion 30 contains an accurate partial quotation from the Complaint filed in the TOB Action (the "TOB Complaint").**

31. Travelers Assertion 31: The complaint alleged:

a. "[D]uring the 1930s the Navy and Grumman entered into one or more contracts to conduct operations at Grumman's Bethpage Facility, located at Hicksville Road, Bethpage, Nassau County, New York, which operations also involved use of [Bethpage Community Park]."[55]

b. "[T]he Navy and Grumman conducted operations at [Bethpage Community Park] from approximately 1943 to 1962, including but not limited to operating [Bethpage Community Park] as a waste water settling pond(s), in connection with the Grumman Bethpage Facility, and as a fire training area."[56]

c. "[A]s part of the operations conducted by defendants on [Bethpage Community Park property], the Navy and Grumman generated, used, handled, transported, stored and/or disposed of, on [Bethpage Community Park] [p]roperty, hazardous waste and hazardous substances, which included, but are not limited to, arsenic, cadmium, chromium. lead. mercury, and polychlorinated biphenyls('PCBs')."[57]

---

55 Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 14.

56 Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 15.

57 Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 18.

d. "As a result of the defendants' generation, use, handling, transportation, storage, and/or disposal of hazardous waste and hazardous substances on [Bethpage Community Park property], the [Bethpage Community Park] is contaminated."[58]

e. "In or around June 2002, Grumman issued a report entitled 'Town of Oyster Bay Bethpage Community Park Soil Sampling Program,' which revealed the presence of arsenic, cadmium, chromium, lead, mercury and PCBs in the soil on the [Bethpage Community Park property]."[59]

f. "By letter dated June 11, 2002, the DEC informed Grumman that there were elevated levels of PCBs on the [Bethpage Community Park property] that required abatement."[60]

g. "By letter dated July 26, 2002, the DEC identified the Navy and Grumman as potentially responsible parties with respect to the presence of arsenic, cadmium, chromium, lead, mercury and PCBs in the soil on the [Bethpage Community Park property]."[61]

h. "On March 18, 2005, the DEC signed an Administrative Order on Consent with the Town that became effective March 28, 2005, and that requires and obligates the Town to develop and implement a remedial program to undertake a clean-up of [the Bethpage Community Park] because of the presence of hazardous waste and contamination at [the Bethpage Community Park]."[62]

---

[58] Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 19.

[59] Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 20.

[60] Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 21.

[61] Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 22.

[62] Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 25.

i. "Grumman and the Navy have refused to accept responsibility for contamination of the [Bethpage Community Park] which thereby has caused a further release of hazardous substances from the [Bethpage Community Park]."[63]

**<u>NGSC's Response to Travelers Assertion 31</u>: Not disputed that subparts a through h of Assertion 31 contain accurate partial quotations from the TOB Complaint, except that subparts a through h of Assertion 31 replace the term "Park Property" with "Bethpage Community Park" or "Bethpage Community Park property." (See Scanlon Decl. Ex. 14 ¶¶ 14-15, 18-22, 25.) Disputed that subpart i of Assertion 31 contains an accurate partial quotation from the TOB Complaint. (*See id.* Ex. 14 ¶ 26.) Paragraph 26 of the TOB Complaint speaks for itself.**

32. <u>Travelers Assertion 32</u>: On May 14, 2009, the court entered summary judgment in favor of Northrop Grumman in the TOB Lawsuit.[64]

**<u>NGSC's Response to Travelers Assertion 32</u>: Not disputed that on May 14, 2009, the court granted NGSC's motion for summary judgment against the Town of Oyster Bay on the Town's federal claims against NGSC, and denied the Town of Oyster Bay's motion for summary judgment against NGSC on the Town's claims against NGSC. (*See* Pashler Decl. Ex. 27 at 1-2, 63.) Disputed that the court's entry of summary judgment in favor of NGSC on the Town's claims against it is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[63] Scanlon Decl. Ex. 14, Town of Oyster Bay Complaint at ¶ 26.

[64] Scanlon Decl. Ex. 18, TOB Docket Sheet at Dkt. No. 94.

33. Travelers Assertion 33: The court concluded that the Town's selection of a $22 million remediation plan for the Bethpage Community Park over a $6 million plan deemed acceptable by the NYSDEC was not consistent with the National Oil and Hazardous Substances Pollution Contingency Plan and did not meet CERCLA's cost effective requirement.[65]

**NGSC's Response to Travelers Assertion 33: Disputed that the court's reasoning for entering summary judgment in favor of NGSC on the Town's claims against it is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action. The court's decision speaks for itself.**

34. Travelers Assertion 34: On July 31, 2011, the court denied the plaintiff's motion for reconsideration of the order granting summary judgment in Northrop Grumman's favor.[66]

**NGSC's Response to Travelers Assertion 34: Disputed that the court's denial of the Town's second motion for reconsideration of the order granting summary judgment in favor of NGSC on the Town's federal claims is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action. The court's decision speaks for itself.**

35. Travelers Assertion 35: No substantive documents have been filed on the TOB Lawsuit docket since July 31, 2011.[67] The case has essentially been inactive since then.

---

65 Pashler Decl. Ex. 27, Memorandum and Order, *Town of Oyster Bay v. Northrop Grumman Sys. Corp.*, No. 5-cv-01945-TCP-AKT, May 14, 2009, Dkt. No. 94

66 Scanlon Decl. Ex. 18, TOB Docket Sheet at Dkt. No. 112.

67 Scanlon Decl. Ex. 18, TOB Docket Sheet.

**NGSC's Response to Travelers Assertion 35: Not disputed that no substantive documents have been filed with the Court in the TOB Action since July 31, 2011. Disputed that the second sentence of Assertion 35 is supported by admissible evidence, as required by Local Civil Rule 56.1(d). NGSC further disputes that the lack of of substantive filings in the TOB Action since July 31, 2011 is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

36. Travelers Assertion 36: Northrop Grumman's broker, Aon Risk Services, Inc. ("Aon"), sent Travelers a copy of the TOB complaint by letter dated June 14, 2005.[68] Aon's letter stated "[t]he town of Oyster pay [sic] alleges pollution of the specified site from 1930 through 1962."[69]

**NGSC's Response to Travelers Assertion 36: Not disputed that NGSC's broker, Aon, sent Travelers a copy of the TOB Complaint by letter dated June 14, 2005, and that Assertion 36 contains an accurate partial quotation from that June 14, 2005 letter.**

37. Travelers Assertion 37: Travelers responded on June 20, 2005 asking for additional information in order to determine whether to participate in the defense of the TOB Lawsuit.[70]

**NGSC's Response to Travelers Assertion 37: Not disputed that Travelers responded to NGSC's letter dated June 14, 2005 with a letter dated June 20, 2005 in which**

---

[68] Pashler Decl. Ex. 4, June 14, 2005 Letter at TRAV007123.

[69] Pashler Decl. Ex. 4, June 14, 2005 Letter at TRAV007123.

[70] Pashler Decl. Ex. 21, June 20, 2005 Letter at TRAV007139-007140.

**Travelers requested that NGSC send a copy of the summons from the TOB Action. Disputed that the evidence cited by Travelers supports the assertion that Travelers requested the summons "to determine whether to participate in the defense of the TOB" Action; the cited evidence instead states that Travelers "will inform [NGSC] of the SLCU's determination regarding whether Travelers will participate in Grumman's defense of the [TOB Action]" after "reviewing the captioned Town of Oyster Bay Lawsuit, in conjunction with any verified policies and any other information available to Travelers . . . ." (*See* Pashler Decl. Ex. 21 at TRAV007140.)**

38. Travelers Assertion 38: On February 9, 2006, Travelers agreed to participate in the defense of the TOB Lawsuit "subject to a reservation of all rights and defenses" under the relevant Travelers Policies in effect from January 1, 1968 to January 1, 1980 while Travelers "investigate[d] whether any potential indemnity obligation may exist to Northrop Grumman under these policies."[71]

NGSC's Response to Travelers Assertion 38: **Not disputed that by letter dated February 9, 2006, Travelers agreed to "participate" in the defense of the TOB Action "subject to a reservation of all rights and defenses under the Primary Policies, in effect from January 1, 1968 to January 1, 1980, while the SLCU investigates whether any potential indemnity obligation may exist to Northrop Grumman under these policies." (Scanlon Decl. Ex. 20 at TRAV007159.)**

[71] Pashler Decl. Ex. 5, February 9, 2006 Letter at TRAV007159.

39. Travelers Assertion 39: In the February 9, 2006 letter, Travelers stated: "Travelers offer to participate in Northrop Grumman's defense of the Town of Oyster Bay Lawsuit is not intended to be, and shall not be deemed or construed as: an admission that any coverage is available for the captioned Town of Oyster Bay Lawsuit; a waiver of any right or defense to coverage available to Travelers, whether under its insurance policies or at law or in equity; an expansion of any obligation that Travelers may subsequently acknowledge (if any); grounds for any claim of estoppel; or as a course of performance."[72]

**NGSC's Response to Travelers Assertion 39: Not disputed that Assertion 39 contains an accurate partial quotation from Travelers' letter dated February 9, 2006.**

40. Travelers Assertion 40: Travelers also reserved its right "to seek recoupment of any defense costs or other sums paid to Northrop Grumman, or on its behalf, should it be determined that no potential indemnity obligation exists in the captioned matter."[73]

**NGSC's Response to Travelers Assertion 40: Not disputed that Assertion 40 contains an accurate partial quotation from Travelers' February 9, 2006 letter. Disputed that Travelers' purported reservation of its right to seek recoupment of defense costs or other sums paid to NGSC is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action. NGSC further disputes that Travelers is entitled to any such recoupment.**

---

[72] Pashler Decl. Ex. 5, February 9, 2006 Letter at TRAV007163-007164.

[73] Pashler Decl. Ex. 5, February 9, 2006 Letter at TRAV007165.

41. Travelers Assertion 41: In its February 9, 2006 letter, Travelers asked Northrop Grumman about other insurers notified of the TOB Lawsuit, stated that other insurers should be asked to participate in the defense, and requested information about their responses.[74]

**NGSC's Response to Travelers Assertion 41: Disputed that in the February 9, 2006 letter, Travelers "stated that other insurers should be asked to participate in the defense." The letter instead states, "Travelers anticipates that Northrop Grumman has notified its other insurance carriers whose insurance policies may be potentially applicable to the Town of Oyster Bay Lawsuit, and has sought their participation in the defense of the captioned Town of Oyster Bay Lawsuit." (*See* Scanlon Decl. Ex. 20 at TRAV007166.) Not disputed that Travelers asked about "any other carriers to whom Northrop Grumman tendered the Town of Oyster Bay Lawsuit and requested information about their responses. Disputed that Travelers' request for information related to other insurers in a letter dated February 9, 2006 is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

42. Travelers Assertion 42: On March 22, 2006, Travelers again wrote to Northrop Grumman, indicating the pro rata share of defense costs it would pay would be 16%.[75] Travelers based this determination on the allegations in the TOB Lawsuit that operations at the Bethpage Community Park began in "approximately 1930" and that contamination continued through the 2005 filing of the Lawsuit.[76] Travelers believed that it had potentially responsive

---

[74] Pashler Decl. Ex. 5, February 9, 2006 Letter at TRAV007166.

[75] Pashler Decl. Ex. 7, March 22,2006 Letter at TRAV007168.

[76] Pashler Decl. Ex. 7, March 22, 2006 Letter at TRAV007168.

policies for 12 years (from 1968 to 1980) of the 75 years at issue, and thus offered to pay a 16% share.[77]

**<u>NGSC's Response to Travelers Assertion 42</u>: Not disputed that by letter dated March 22, 2006, Travelers informed NGSC that Travelers would "contribute its pro-rata share of 16% of Northrop Grumman's reasonable and necessary defense costs" in the TOB Action. Not disputed that Travelers purported to calculate this "pro-rata share of the defense costs" based on "the allegations of the [TOB Complaint, which] encompass the period of time 'from approximately 1930' until Northrop Grumman was served with [the TOB Complaint] in June 2005." Not disputed that Travelers stated that it had "issued potentially applicable insurance to Grumman for twelve (12) of those 75 years and, based on the above, Travelers pro-rata share of defense costs in this matter would be 16%." (Scanlon Decl. Ex. 21 at TRAV007168-69.)**

43. <u>Travelers Assertion 43</u>: In the March 22, 2006 letter, Travelers continued to reserve its rights and defenses to coverage.[78]

**<u>NGSC's Response to Travelers Assertion 43</u>: Not disputed that Travelers purported to "reserve all of its rights and defenses to coverage" in its letter dated March 22, 2006. (Scanlon Decl. Ex. 21 at TRAV007169.) Disputed that Travelers' purported reservation of rights and defenses in a letter dated March 22, 2006 is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

77 Pashler Decl. Ex. 7, March 22, 2006 Letter at TRAV007168.

78 Pashler Decl. Ex. 7, March 22, 2006 Letter at TRAV007169.

44. Travelers Assertion 44: In its March 22, 2006 letter, Travelers specifically asked for a follow-up discussion with Northrop Grumman and any other insurers participating in the defense concerning a defense cost sharing agreement.[79]

**NGSC's Response to Travelers Assertion 44: Not disputed that in its March 22, 2006 letter, Travelers asked "to discuss a defense cost sharing agreement" with NGSC and "any other carriers participating in Northrop Grumman's defense." (Scanlon Decl. Ex. 21 at TRAV007168-69.) Disputed that Travelers' request for information related to other insurers in a letter dated March 22, 2006 is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

45. Travelers Assertion 45: On June 8, 2006, Aon thanked Travelers for the March 22, 2006 letter, asked where to send invoices, reserved Northrop Grumman's rights with respect to the matter, and inquired about coverage under the post-1980 Policies.[80]

**NGSC's Response to Travelers Assertion 45: Not disputed that Aon acknowledged the March 22, 2006 letter, reserved all rights that NGSC has -- both in law and equity -- in the matter, inquired to whom Aon should send bills and other materials, and inquired about coverage under policies that Travelers issued to Grumman from 1980 to 1994. (*See* Pashler Decl. Ex. 22 at NGINS000011180.) Disputed that Aon's thanking of Travelers for a letter dated March 22, 2006, Aon's request for information about where to send invoices, and Aon's inquiry about coverage under post-1980 policies are material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[79] Pashler Decl. Ex. 7, March 22, 2006 Letter at TRAV007168-007169.

[80] Pashler Decl. Ex. 22, June 8, 2006 Letter at NGINS000011180

46. Travelers Assertion 46: Following the June 8, 2006 letter, Travelers continued to pay 16% of defense invoices submitted by Northrop Grumman for payment.[81]

**NGSC's Response to Travelers Assertion 46: Not disputed that following the June 8, 2006 letter, Travelers did not change its offer to reimburse only 16% of defense costs for the TOB Action. Travelers did not change its offer to reimburse 16% of defense costs until 2007.**

47. Travelers Assertion 47: On February 26, 2007, Aon provided some of the additional information requested by Travelers regarding the Bethpage Community Park.[82] Attached to Aon's February 26, 2007 letter was one of the 1995 Records of Decision and the 2001 Record of Decision, which was the first time that Northrop Grumman ever provided Travelers with these or other material documents attached to the letter.[83]

**NGSC's Response to Travelers Assertion 47: Not disputed that by letter dated February 26, 2007, Aon provided additional information to Travelers about the Bethpage Facility in general and about the TOB Action in particular. (*See* Pashler Decl. Ex. 26 at NGINS000010302.) Not disputed that the letter dated February 26, 2007 attached Records of Decision for Operable Unit 1 and Operable Unit 2 of the Bethpage Facility site. NGSC disputes Assertion 47 to the extent that it suggests Travelers had previously requested the specific documents attached to Aon's letter dated February 26, 2007, or that**

---

[81] Pashler Decl. Ex. 23, June 2, 2006 Transaction Record at TRAV034483; Pashler Decl. Ex. 24, August 17, 2006 Transaction Record at TRAV034520.

[82] Pashler Decl. Ex. 25, February 26, 2007 Letter at NGINS000010302.

[83] Pashler Decl. Ex. 25, February 26, 2007 Letter at NGINS000010303.

**such public-domain documents were not previously available to Travelers. (*See* Pashler Decl. Exs. 5, 7, 20, 21.) NGSC further disputes that NGSC's provision to Travelers of two Records of Decision relating to the Bethpage Facility in 2007 is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

48. Travelers Assertion 48: In its February 26, 2007 letter, Aon represented that the first plant at the Bethpage Facility had opened in 1938 and requested that Travelers modify the formula for allocating defense costs to account for a 67-year of potential property damage rather than a 75-year period.[84]

**NGSC's Response to Travelers Assertion 48: Not disputed that in its February 26, 2007 letter, Aon stated that "initial plant [at the Bethpage Facility] opened in 1938" and stated the following concerning Travelers' payment of defense costs:**

> **Travelers is currently paying 16% of defense costs. We specifically reserve any and all rights Northrop Grumman Corporation has in this regard. However, the 16% formula appears to be based upon an allocation model from 1930 to 2005. Since the plant was not completed until 1938 at the earliest, your allocation model should probably be modified."**

**(Pashler Decl. Ex. 25 at NGINS000010302-03.) Disputed that Aon's provision of additional information about the Bethpage Facility and request for additional defense costs are material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

[84] Pashler Decl. Ex. 25, February 26, 2007 Letter at NGINS000010302-000010303.

49. Travelers Assertion 49: On March 14, 2007, Travelers advised Northrop Grumman that it would calculate the allocation of defense costs based on a 67-year period.[85] In addition, Travelers indicated that after further investigation, it believed it had issued potentially applicable insurance to Northrop Grumman for 17 years (from 1968 to 1985), not 12 years; Travelers thus recalculated the pro rata share of Northrop Grumman's TOB Lawsuit defense costs that it would pay as 25% (representing 17 of 67 years).[86]

**NGSC's Response to Travelers Assertion 49: Not disputed that by letter dated March 14, 2007, Travelers stated that it would modify its calculation of its pro-rata share of defense costs and stated it would contribute its pro rata share of 25% of Northrop Grumman's reasonable and necessary defense costs in the TOB Action. (Scanlon Decl. Ex. 22 at NGINS000011177-78.) Disputed that Travelers' recalculation of what it determined to be its pro rata share of defense costs for the TOB Action is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

50. Travelers Assertion 50: In the March 14, 2007 letter, Travelers requested a follow-up contact with Northrop Grumman and any other insurers participating in the defense in order to discuss a defense cost sharing agreement.[87]

**NGSC's Response to Travelers Assertion 50: Not disputed that in its March 14, 2007 letter, Travelers asked "to discuss a defense cost sharing agreement" with NGSC and "any other carriers participating in Northrop Grumman's defense." (Pashler Decl.**

[85] Pashler Decl. Ex. 26, March 14, 2007 Letter at TRAV007177-0007178.

[86] Pashler Decl. Ex. 26, March 14, 2007 Letter at TRAV007177-007178.

[87] Pashler Decl. Ex. 26, March 14, 2007 Letter at TRAV007177-007178.

**Ex. 26 at TRAV007178.) Disputed that Travelers' request for information related to other insurers in a letter dated March 14, 2007 is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

51. Travelers Assertion 51: Travelers proceeded to pay 25% of Northrop Grumman's defense costs for the TOB Lawsuit (including an additional 9% for the invoices previously processed at 16%).[88]

**NGSC's Response to Travelers Assertion 51: Disputed. Travelers has reimbursed less than 25% of NGSC's total defense costs for the TOB Action. (*See* Pashler Decl. Ex. 6 at page 2 of spreadsheet (listing "UNPAID/VENDERS/CONSULTANTS").) Disputed that Travelers' reimbursement of a portion of NGSC's defense costs for the TOB Action is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

52. Travelers Assertion 52: While Travelers was making these payments, no one at Aon or Northrop Grumman objected to Travelers' pro rata contribution to defense costs, despite repeated communications with Travelers about Travelers' payments.[89]

**NGSC's Response to Travelers Assertion 52: Disputed. NGSC, through Aon, repeatedly reserved its rights to challenge Travelers' decision to pay only a pro-rata**

---

[88] Pashler Decl. Ex. 6, August 7, 2009 Email at TRAV026723 (and attachment)

[89] Pashler Decl. Ex. 28, September 11, 2007 Email at TRAV016142-016144; Pashler Decl. Ex. 29, September 13. 2007 Email at TRAV026656-026659; Pashler Decl. Ex. 30. November 12, 2008 Email at TRAV026685-026688; Pashler Decl. Ex. 31, March 5, 2009 Email at TRAV016331; Pashler Decl. Ex. 32, March 12,2009 Email at TRAV016244-016247; Pashler Decl. Ex. 33, May 14, 2009 Email at TRAV026721; Pashler Decl. Ex. 35, June 18, 2009 Email at TRAV027193.

**share of defense costs, and in the very document cited by Travelers in support of Assertion 52, Aon refers to the situation as "the current unilateral cost sharing agreement Travelers is following." (*See* Pashler Ex. 28 at TRAV016142; *see also id.* Ex. 25 at NGINS000010303 ("Additionally, Travelers is currently paying 16% of defense costs. We specifically reserve any and all rights Northrop Grumman Corporation has in this regard.").)**

53. Travelers Assertion 53: As of August 7, 2009, after the TOB Lawsuit had been dismissed on summary judgment, Travelers had paid Northrop Grumman for a total of $577,463.20 in defense costs.[90]

**NGSC's Response to Travelers Assertion 53: Not disputed that as of August 7, 2009, Travelers had paid NGSC $577,463.20 in defense costs for the TOB Action. Disputed that Travelers' reimbursement of a portion of NGSC's defense costs for the TOB Action is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

54. Travelers Assertion 54: By letter dated February 1, 2012, Northrop Grumman's prior counsel wrote to Travelers about the Bethpage Facility and demanded both defense and indemnity coverage for various alleged claims against Northrop Grumman related to the Bethpage Facility.[91] Northrop Grumman requested that Travelers pay "its share" of past costs and "Travelers' share" of future costs. The letter stated: "On behalf of Northrop Grumman, this letter will also serve as a demand that Travelers acknowledge that it will perform its

[90] Pashler Decl. Ex. 6, August 7, 2009 Email attachment at p. 2.

[91] Pashler Decl. Ex. 10, February 1, 2012 Letter at NGINS000010315-10321

obligations to defend and indemnify Northrop Grumman against the various claims made against Northrop Grumman in connection with the Bethpage Facility. . . . Please confirm that Travelers will reimburse Northrop Grumman for its share of the past costs and will pay Travelers' share of the future costs. "[92]

**<u>NGSC's Response to Travelers Assertion 54</u>: Not disputed that Assertion 54 contains accurate partial quotations of a letter sent by NGSC's former counsel to Travelers dated February 1, 2012. Disputed that NGSC's request that Travelers pay its share of defense costs in a letter dated February 1, 2012 is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

55. <u>Travelers Assertion 55</u>: American Employers' Insurance Company ("American Employers") appears to have issued policies to Northrop Grumman from January 1, 1943 through 1950.[93]

**<u>NGSC's Response to Travelers Assertion 55</u>: Not disputed that NGSC has discovered secondary evidence showing that American Employers' Insurance Company may have provided workers' compensation and perhaps other insurance coverage to predecessors of NGSC from 1943 to 1950. Disputed that American Employers' possible issuance of policies to NGSC's predecessors in the 1943 to 1950 time frame is relevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[92] Pashler Decl. Ex. I 0, February 1, 2012 Letter at NGINS000010315, NGINS0000103.

[93] Pashler Decl. Ex. 36, January 16, 2012 Email from Brad Bartholomew to samckay@onebeacon.com at NGINS000010205-000010207.

56. Travelers Assertion 56: Northrop Grumman gave its first notice of environmental claims to American Employers' in January 2011.[94]

**NGSC's Response to Travelers Assertion 56: Not disputed that NGSC provided information about environmental claims to American Employers in January 2011. Disputed that NGSC's provision of information to American Employers in January 2011 is relevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

57. Travelers Assertion 57: Northrop Grumman did not previously inform Travelers of the existence of such coverage.

**NGSC's Response to Travelers Assertion 57: Disputed. On September 12, 2012, NGSC produced to Travelers secondary evidence showing that American Employers may have provided workers' compensation and perhaps other insurance coverage to predecessors of NGSC from 1943 to 1949. (*See* documents bearing Bates numbers 000001618-63.)[95] NGSC further disputes that the possible existence of insurance coverage provided by American Employers is relevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

---

[94] Pashler Decl. Ex. 36, January 16, 2012 Email from Brad Bartholomew to samckay@onebeacon.com at NGINS000010207.

[95] NGSC has not attached all such secondary evidence to this filing because the documents are voluminous. Upon request, NGSC will make such documents available to the Court.

58. Travelers Assertion 58: Northrop Grumman may have also purchased "aviation" coverage applicable to certain of its operations at the Bethpage Facility.[96]

**NGSC's Response to Travelers Assertion 58: Not disputed that predecessors of NGSC purchased aviation insurance that provided insurance coverage for certain risks at the Bethpage Facility. Disputed that the purchase of aviation coverage by predecessors of NGSC is relevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

59. Travelers Assertion 59: Northrop Grumman did not previously inform Travelers of the existence of any such coverage.

**NGSC's Response to Assertion 59: Disputed. On September 12, 2012, NGSC produced to Travelers primary and secondary evidence of aviation coverage issued to NGSC's predecessors, and, by letter dated December 12, 2012, NGSC specifically directed Travelers to such documents by providing Bates ranges for them. (*See* Calland Decl. Ex. 7 at 4 ("Northrop Grumman will identify . . . the aviation policies produced, *see* NGINS000000001 to NGINS000001617, NGINS001109110 to NGINS001109534, and NGINS001882323 to NGINS001882817.").) NGSC further disputes that the purchase of aviation coverage by predecessors of NGSC is relevant to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

60. Travelers Assertion 60: Northrop Grumman asserted in its Crossclaim that Century had coverage at various times from 1951 to 1987.[97]

---

[96] Pashler Decl. Ex. 37, Aviation Liability Insurance Form at NGINS000001040-000001082.

**<u>NGSC's Response to Travelers Assertion 60</u>: Not disputed that, in its Crossclaim, NGSC alleged that Century had provided insurance coverage to NGSC's predecessors from 1951 to 1968. Disputed that the existence of insurance coverage provided by Century is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

61. <u>Travelers Assertion 61</u>: Northrop Grumman asserted in its Motion that Century had coverage from 1955 to 1962.[98]

**<u>NGSC's Response to Travelers Assertion 61</u>: Disputed to the extent that Assertion 61 states that NGSC asserted in its motion for partial summary judgment that predecessors of Century issued primary general liability policies to NGSC's predecessors only during the 1955 to 1962 time period. In its motion for partial summary judgment, NGSC moved under only certain of the policies that predecessors of Century issued to predecessors of NGSC, but NGSC never stated that those were the only policies issued by predecessors of Century to predecessors of NGSC. (*See* NGSC Mem. at 2-4.) NGSC further disputes that the existence of insurance coverage provided by Century is material to a determination of whether Travelers has a duty to defend NGSC in the TOB Action.**

62. <u>Travelers Assertion 62</u>: Travelers intends to pursue discovery on the following topics that bear on Northrop Grumman's entitlement to coverage, Travelers' obligation to defend, and Travelers' entitlement to recoup defense costs:

---

97 Answer at Cross-Claim ¶ 9, Dkt. 11.

98 Northrop Grumman's Mem. of Law at 2-3, Jan. 4, 2013.

a. When the contamination at the Bethpage Facility, the Bethpage NWIRP Site and the Bethpage Community Park occurred and whether associated property damage implicates Travelers' Policies;

b. When Northrop Grumman became aware of the contamination at the Bethpage Facility, the Bethpage NWIRP Site and the Bethpage Community Park and whether the property damage was expected or intended by Northrop Grumman;

c. The timing and substance of Northrop Grumman's communications with Travelers and Northrop Grumman's purported notice to Travelers concerning claims or suits related to the Bethpage Facility, the Bethpage NWIRP Site and the Bethpage Community Park;

d. The facts surrounding Northrop Grumman's interactions with various governmental agencies and third party claimants, including the circumstances giving rise to Northrop Grumman's agreement to pay remedial costs and the nature and scope of those remedial costs;

e. Whether any damages claimed by Northrop Grumman are the result of voluntary payments or obligations that Northrop Grumman incurred without Travelers' consent;

f. Whether the claims for which Northrop Grumman seeks coverage are "suits" within the meaning of the Policies;

g. The sources and origins of the contamination at the Bethpage Facility, the Bethpage NWIRP Site and the Bethpage Community Park;

h. he nature of Northrop Grumman's industrial waste disposal practices and whether there were any conditions at the Bethpage Sites in violation of, or in non-compliance with, any governmental rule, regulation, or law that contributed to the property damage;

i. Whether the injuries or damage at issue in the underlying claims arise out of deliberate or intentional conduct by Northrop Grumman;

j. Whether the injuries or damage at issue in the underlying claims fall within the scope of any pollution exclusion under the Policies;

k. Whether the injuries or damage at issue in the underlying claims arise from damage to property owned. rented or used by Northrop Grumman;

l. Whether the injuries or damage at issue in the underlying claims arise out of operations at locations other than those covered by Travelers' Policies;

m. Whether Northrop Grumman failed to perform the conditions precedent or subsequent to coverage under Travelers' Policies;

n. Whether Northrop Grumman misrepresented or omitted material information in connection with its application for insurance or in making claims for coverage;

o. Whether any damages claimed by Northrop Grumman were sustained by organizations, entities or persons that do not qualify as named insureds or insureds;

p. Whether any damages claimed by Northrop Grumman arise out of liability assumed by Northrop Grumman under any contract or agreement;

q. Whether any damages claimed by Northrop Grumman are for criminal fines or sanctions, civil fines, penalties, sanctions, punitive damages or other matters deemed uninsurable by applicable state law;

r. Whether any occurrence, accident, injury or damage for which Northrop Grumman seeks coverage was known or should have been known or was in progress prior to any period of Travelers' Policies, rendering them uninsurable;

s. The existence of potentially applicable insurance from other insurers. including but not limited to American Employers' Insurance Company or any insurers that provided aviation insurance applicable to operations at the Bethpage Sites; and

t. Whether Northrop Grumman has met its duties to cooperate with Travelers in pursuing any settlement or suits and enforcing any rights of indemnity or contribution against any person relating to Northrop Grumman's claims under Travelers' Policies.

**NGSC's Response to Travelers Assertion 62: NGSC lacks a basis to know what Travelers "intends to pursue" in discovery. Disputed that the topics listed in Assertion 62 are material to NGSC's motion for partial summary judgment, or that any additional discovery is needed to resolve NGSC's motion. NGSC further disputes Assertion 62 on the ground that it constitutes a legal conclusion, not a statement of fact, insofar as it states that certain topics "bear on Northrop Grumman's entitlement to coverage, Travelers' obligation to defend, and Travelers' entitlement to recoup defense costs."**

Respectfully submitted,

COVINGTON & BURLING LLP

By: ______________________
John (Fritz) Scanlon

William F. Greaney
Georgia Kazakis
Laird Hart
Shelli L. Calland
John (Fritz) Scanlon
COVINGTON & BURLING
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004-2401
(202) 662-6000
fscanlon@cov.com

*Attorneys for Northrop Grumman Systems Corporation*